IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

DAVID ZINK, et al., )
 )
    Plaintiffs, )
 )
v. ) No. 2:12-CV-4209
 )
GEORGE LOMBARDI, et al., )
 )
    Defendants. )

## MOTION TO DISMISS

### Procedural History

Each of the 21 plaintiffs is under sentence of death due to convictions for first degree or capital murder in the state courts of Missouri (Complaint, paragraphs 9-94). On June 26, 2012, plaintiffs filed a petition for declaratory and injunctive relief in the Circuit Court of Cole County. After removal to the federal court on August 1, 2012, the petition should now be dismissed for failure to state a claim for which relief can be granted.

The petition contains four claims: 1) lethal injection with propofol violates the Eighth Amendment's prohibition against cruel and unusual punishment (Complaint, paragraphs 177-80); 2) the Department of Corrections' use of lidocaine conflicts with the Food, Drug and Cosmetics Act, violating the Supremacy Clause; 3) use of propofol in the lethal injection violates the Ex Post Facto Clause; and 4) the Missouri Department of Corrections' execution protocol

violates the separation of powers provision of the Missouri Constitution, Mo. Const. art. II, §1.

## Standard of Review

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

A complaint that fails to satisfy these requirements may be dismissed for failure to state a claim for which relief can be granted. Federal Rule of Civil Procedure 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." <u>Benton v. Meryll Lynch and Co.</u>, 524 F.3d 866, 870 (8th Cir. 2008).

To determine whether an action fails to state a claim upon which relief can be granted, the court must engage in a two-step inquiry. First, the court must

2

identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. at 680. These include "legal conclusions" and "threadbare recitations of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 678. Second, the court must determine whether the complaint states a plausible claim for relief. Id. at 680. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 680. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." The court must review the factual allegations in the complaint to determine if it plausibly suggests an entitlement to relief. Id. at 680-82. When plaintiffs' allegations are viewed in this light, the complaint fails to state a claim for which relief can be granted.

### I. Complaint Fails To State An Eighth Amendment Claim

Plaintiffs' first count contends that the Missouri Department of Corrections' protocol creates either a substantial risk of pain or an objectively intolerable risk of severe pain that could be significantly reduced by adopting readily available alternative procedures (Complaint, paragraph 178 citing Baze v. Rees, 553 U.S. 35, 52 (2008). In paragraph 179, plaintiffs recite the Eighth Amendment standards developed and used by concurrences in Baze that speak of an "untoward, readily avoidable risk of inflicting severe and unnecessary

3

suffering." Id. at 107 (Breyer, J., concurring); id. at 123 (Ginsberg, J., dissenting). But the plaintiffs failed to allege facts that if true, would show an objectively intolerable risk of severe pain for which there is an alternative.

Plaintiffs allege that propofol is used on a daily basis in operating rooms from coast to coast as the anesthesia for surgery (Complaint, paragraph 143). Plaintiffs seem to contend that despite propofol's general acceptance and widespread use, the means of execution must have zero pain and zero risk of pain (Complaint, paragraphs 144, 148). Plaintiffs offer no alternative to propofol that satisfies these criteria (Complaint, paragraphs 142-58).

Plaintiffs assert that the level of risk of pain tolerated by the Eighth Amendment is zero. The zero risk of pain standard is expressly rejected by the United States Supreme Court in Baze v. Rees, 553 U.S. at 47 ("it is clear then the Constitution does not demand the avoidance of all risk of pain in carrying out execution"). Instead, the Supreme Court sets out a high standard that a plaintiff must allege before the means of execution violate the Eighth Amendment. The offender must allege facts that show "a substantial risk of serious harm" that is "sure or very likely." Id. at 50. Pain that is "an unescapable consequence of death" does not meet this standard. Id.

Also missing from the complaint is an allegation that there is an alternative to propofol, a basic prerequisite to the successful assertion of an

4

Eighth Amendment claim. Id. at 51. Not only must there be an alternative, it must effectively address a substantial risk of serious harm. Id. at 52. The alternative must be "feasible, readily implemented and in fact, significantly reduce a substantial risk of severe pain." Id. at 52. Plaintiffs hint at the unavailability of sodium thiopental, the chemical defendants formerly used with the lethal injection protocol (Complaint, paragraph 136). In Ringo v. Lombardi, 677 F.3d 793, 797 (8th Cir. 2012), the United States Court of Appeals noted that Missouri's supply of sodium thiopental had expired, thiopental was no longer manufactured in the United States, a federal court had barred the importation of thiopental, and Missouri had been unsuccessful in obtaining pentobarbital. See also Beaty v. Food and Drug Administration, 2012 WL 1021048 (D.D.C. 2012) ("Beginning in the 1980s, thiopental use decreased dramatically as anesthesiologists began using propofol - - a drug approved by the FDA in 1989 - - to achieve the same results."). Ironically, thiopental is not approved by the FDA for anesthesiology, but propofol is. Id. Sodium thiopental and pentobarbital are no longer available and plaintiffs do not allege the existence of a feasible, readily implemented alternative that significantly reduces a substantial risk of severe pain. Baze, 553 U.S. at 52. The complaint fails to state a claim for which relief can be granted.

## II. No standing to assert challenge to federal statute

Plaintiffs' second ground contends that defendants' use of lidocaine conflicts with the Food, Drug and Cosmetic Act and therefore, violates the Supremacy Clause of the United States Constitution (Complaint, paragraph 183). Plaintiffs complain about the use of lidocaine to anesthetize the condemned during the administration of propofol[1] (Complaint, paragraph 182).

During the previous litigation, the Department's use of a scheduled substance during a lethal injection, the Court concluded that plaintiffs did not establish standing to challenge the action because there was no injury-in-fact. Ringo v. Lombardi, 2011 WL 3584476 (W.D. Mo. 2011). In reviewing the allegations of the current complaint, plaintiffs do not contend that lidocaine, a numbing agent, is painful. Moreover, plaintiffs do not allege that there is a risk of pain from the use of lidocaine. Plaintiffs do not make allegations that suggest

---

[1] Lidocaine is but one of two features of the Missouri protocol that are designed to reduce the risk of pain at the injection site. In Missouri, the lethal injection will go into the condemned's femoral vein via an intravenous line established by a board certified anesthesiologist, not through an IV in the hand or arm as generally as done during surgery. The use of the femoral vein, which is much larger and has greater blood flow to gain access to the circulatory system, avoids the risk of pain suggested by the plaintiffs. The anesthesiologist has extensive training and experience in placing central venous lines for the administration of anesthesia and specifically administering propofol via a femoral central venous line. Even if the risk of pain were the same as for general surgery, that risk would not constitute an Eighth Amendment violation.

The secondary safeguard about which plaintiffs complain in Count 2 is the use of lidocaine as a numbing agent. The use of lidocaine with propofol is the same combination of drugs used by many patients as they undergo surgery with

6

an injury-in-fact that gives rise to Article III jurisdiction allowing for consideration of this claim.[2] Therefore, it is proper to dismiss this claim under Fed. R. Civ. Pr. 12(b)(1) or 12(b)(6).

It is well established that it is contrary to federal law for private individuals to bring suits seeking to use the FDCA or Controlled Substances Act to prevent their lawful execution by state authorities. See e.g., Jones v. Hobbs, 745 F.Supp. 886, 888-94 (E.D. Ark. 2010) (holding that it would flout the intent of Congress to allow a declaratory judgment suit by inmates challenging execution procedures under the Controlled Substances Act and the Food, Drug and Cosmetic Act); Durr v. Strickland, 2010 WL 1610592 (S.C. Ohio April 15, 2010), aff'd, 602 F.3d 788 (6th Cir. 2010); West v. Ray, 2010 WL 3825672 (N.D. Tenn. Sept. 24, 2010) (holding that inmates cannot use the federal statutes to challenge lethal injection procedures because that would violate the intent of Congress in finding that Durr and Jones stand for that proposition.

Moreover, an attempt by Congress to regulate executions would be an exercise of control over an area traditionally left to the states and would alter the usual balance between the states and the federal government. In such a case, the intention of Congress to exercise control over an area traditionally left

---

the added safeguard that a larger vein with greater blood flow will be used as the injection site during an execution.

to the states must be unmistakably clear or it is presumed not to exist. See Oregon v. Ashcroft, 368 F.3d 1118, 1124-25 (9th Cir. 2004) (applying a plain statement rule-standard of unmistakable clarity to reject a claim that Congress intended that the Controlled Substance Act could be used to regulate physician-assisted suicides using controlled substances even though such suicides are permitted by Oregon law) aff'd, Gonzales v. Oregon, 546 U.S. 243, 274 (2006) (concluding that enforcing the prescription requirements of CSA to ban physician assisted suicides would intervene in an area traditionally reserved to the states but that it was unnecessary to reach the level of analyzing "clear statement requirements" to reject the claim that the CSA authorizes a ban on physician-assisted suicide); see also Gregory v. Ashcroft, 501 U.S. 452, 460-61 (1991) (applying the unmistakable clarity standard to reject the idea that the Age Discrimination in Employment Act applies to state judges in the face of a state statute mandating judicial retirement at age 70); Nixon v. Municipal League, 541 U.S. 125 (2004) (using the plain statement requirement of unmistakable clarity in rejecting a claim that the term "any entity" in the Telecommunications Act of 1996 included municipalities that sought to provide telecommunications services).

---

[2] Propofol is not a controlled substance so the only drug at issue with this claim is lidocaine (Complaint, paragraph 182).

8

The plain statement rule controls in the area of the mechanics of constitutional legal executions of criminals, because that area has traditionally been left to the states by Congress, and there is no plain statement in the FDCA that the Act is meant to regulate executions by lethal injection. The analysis by the Ninth Circuit Court of Appeals in <u>Oregon v. Ashcroft</u> rejecting a claim that the CSA could be used to regulate or prohibit physician assisted suicide is particularly instructive. <u>See</u> <u>Oregon</u> 368 F.3d at 1125 (finding that unless the authorization by Congress is "unmistakably clear" the Attorney General cannot exercise control under the CSA over an area traditionally reserved for state authority and that Congress has provided no unmistakably clear indication it intended the Attorney General to be able to use the CSA to regulate physician assisted suicides); <u>see</u> <u>id</u>. at 1126 (stating that physician assisted suicide is an unrelated general medical practice to be regulated by state law makers in the first instances and that "We know Congress intended to limit federal authority under the CSA to the field of drug abuse"). Plaintiffs cannot state a claim that survives only because it is brought against state actors, when the plain statement rule would not allow the federal officials charged with enforcing the statute from asserting the same claim against the same defendants.

The same bar applies to Plaintiffs. The lack of a plain statement by Congress that it intended the FDCA to be enforced in the context of executions

9

for state criminal convictions, an area traditionally left to the states by Congress, reinforces the conclusion that plaintiffs have no cause of action to pursue.

Even without the plain statement rule, the clear intent of Congress that the FDCA be enforced only by the federal executive would bar a preemption suit that seeks to enforce the Act against state officials as well as suits against private individuals. See 21 U.S.C. §337(a) (proceedings must be by and in the name of the United States); <u>Buckman Co. v. Plaintiffs' Legal Comm.</u>, 531 U.S. 341, 349 n.4 (2001) (statute leaves no doubt it is the federal government rather than private litigants who can sue for non-compliance).

Further, the statute the plaintiffs seek to enforce, 21 U.S.C. §353(b)(1), defines dispensing a drug that should only be used under the supervision of a physician without a prescription as a subclass of the conduct prohibited by 21 U.S.C. §331(K), misbranding a drug while holding it for sale. Carrying out a lethal injection simply does not fall within the category misbranding a drug while holding it for sale. Plaintiffs have taken a provision aimed at prohibiting the sale of prescription medications that are misbranded and attempted to apply it out of context. Plaintiffs' claim fails under 12(b)(6) as well as 12(b)(1).

### III. Complaint fails to state an Ex Post Facto Claim

Plaintiffs' third claim is that the Department of Corrections' development of a new protocol violates the prohibition against ex post facto laws (Complaint, paragraph 185-87). Plaintiffs' theory is that there is allegedly more risk of pain from the use of propofol than there was from the use of sodium thiopental, potassium chloride, and pancuronium bromide. Capital punishment was an available punishment for these offenders when they committed their crimes. The current version of §546.720.1, RSMo. provides for execution "by means of the administration of lethal gas or means of the administration of lethal injection." The same language exists in §546.720, RSMo. Cum. Supp. 1988, which was adopted when lethal injection was added to lethal gas as an alternate means of execution.

Missouri inmates have never had a statutory right to be executed by any particular lethal chemical so long as the execution complies with the Eighth Amendment ban on cruel and unusual punishment. With the adoption of lethal injection in 1988, the choice of lethal chemicals and the choice of whether to use lethal injection or lethal gas has always been left to the discretion of the Department of Corrections.

The Supreme Court reviewed an Ex Post Facto Clause contention in <u>Malloy v. South Carolina</u>, 237 U.S. 180 (1915). In <u>Malloy</u>, the State of South Carolina statutorily changed the method of execution from hanging to

11

electrocution. The Supreme Court rejected the claim that there was a violation of the Ex Post Facto Clause by the change in method of execution. The Supreme Court noted that the statutory change did not change the penalty for murder, which was death, but only the mode of producing this result. Accordingly, the contention would be meritless. Id. at 185. The Missouri Supreme Court reached the similar conclusion with the Missouri statutory change from hanging to lethal gas in the 1930s. See State v. Brown, 112 S.W.2d 568 (Mo. 1937).

## IV. Complaint fails to state a state law claim

Plaintiffs allege that §546.720, RSMo. violates the principle of separation of powers in the Missouri Constitution because it places the choice of the chemicals to be used in execution in the discretion of the Missouri Department of Corrections. To support this argument, plaintiffs rely on Hobbs v. Jones, 2012 WL 2362712 (Ark. June 22, 2012). The Arkansas decision is an anomaly. As the dissent in Hobbs points out, similar challenges have been rejected by Texas, Delaware, Idaho and Florida. Numerous other states, including Ohio, Kentucky, Kansas, Virginia, Oklahoma, Georgia, Indiana, Louisiana and Nevada statutorily grant similar discretion to their directors. Id. (Baker, J., dissenting). Plaintiffs' legal analysis has been rejected by every other court that has considered it. See e.g. Cook v. State, __ P.3d __, 2012 WL 3055981 (Ariz. App. Div. 1, July 26, 2012).

12

Specifically, as to Missouri, although a legislative body cannot delegate its authority, it may empower officers, boards and commissions to carry out in detail legislative purposes and to promulgate rules. Ex Parte Williams, 139 S.W.2d 485, 491 (Mo. 1940). The Missouri Legislature may enact a basic purpose or rule leaving matters of detail in administering the act to a board or executive, even though an exercise of discretion by the board of executive is involved. State ex rel. Priest v. Gunn, 326 S.W.2d 314, 320 (Mo. 1959); State ex rel. Wagner v. St. Louis County Port Authority, 640 S.W.2d 592, 598 (Mo. 1980) (Missouri follows the modern tendency towards greater liberality in permitting legislative grants of discretion); State v. Cushmann, 451 S.W.2d 17, 20-21 (Mo. 1970) (upholding discretion of Director of Revenue to determine the types of helmets that must be worn by motorcyclists subject to criminal penalties as a permissible delegation to the executive).

Alternatively, plaintiffs are estopped from complaining about the perceived violation of the Missouri Constitution. In particular, in Taylor v. Crawford, 2006 WL 1779035 (W.D. Mo. 2006), Plaintiff Taylor complained that there was not a written lethal injection protocol that implemented §546.720, RSMo. The district court found the Missouri process was unconstitutional in part because there was no written protocol by the Missouri Department of Corrections. Id. at *7. Part of the relief ordered by the federal district court was

13

for the Department of Corrections "to prepare a written protocol for implementation of lethal injection." Id. at *8. It did so, and the federal court of appeals found the protocol was constitutional. Taylor v. Crawford, 487 F.3d 1072 (8th Cir. 2007). Plaintiffs are estopped from complaining that the Department's compliance with a court order to create written protocols violates the Missouri Constitution.

## Conclusion

WHEREFORE, for the foregoing reasons, respondents pray the court dismiss the complaint for failure to state a claim for which relief can be granted.

Respectfully submitted,

CHRIS KOSTER
Attorney General


/s/ Michael J. Spillane
MICHAEL J. SPILLANE
Assistant Attorney General
Missouri Bar No. 40704


\s\ Stephen D. Hawke
STEPHEN D. HAWKE
Assistant Attorney General
Missouri Bar No. 35242

P. O. Box 899
Jefferson City, MO  65102
(573) 751-3321
(573) 751-3825 fax
stephen.hawke@ago.mo.gov

14

Attorneys for Defendants

15

**CERTIFICATE OF SERVICE**
I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system on August 8, 2012. This Court's electronic filing system should serve counsel for the plaintiffs listed below, as all are electronic filers.

Charles M. Rogers
Attorney at Law
1000 Walnut, Suite 1600
Kansas City, MO  64106

Joseph W. Luby
Attorney at Law
6155 Oak Street, Suite C
Kansas City, MO  64113

Cheryl A. Pilate &
Rebecca L. Kurz
Attorneys at Law
142 North Cherry
Olathe, KS  66061

Lowell D. Pearson
Attorney at Law
235 East High Street
Jefferson City, MO  65101

John W. Simon
Attorney at law
7801 Delmar Blvd., Suite 201
St. Louis, MO  63130

Elizabeth U. Carlyle
Attorney at Law
P.O. Box 30418
Kansas City, MO  64112

16

Jennifer A. Herndon
Attorney at law
224 Hwy. 67 North, #122
Florissant, MO  63031

Michael J. Gorla
Attorney at Law
555 Washington Ave., Suite 600
St. Louis, MO   63101

Susan M. Hunt
Attorney at Law
819 Walnut
Kansas City, MO   64106

Richard Sindel &
Kathryn B. Parish
Attorneys at Law
8000 Maryland, Suite 350
Clayton, MO   63105

Eric W. Butts
Attorney at Law
555 Washington Ave., Suite 600
St. Louis, MO   63101

S. Paige Canfield
Attorney at Law
3889 Juniata
St. Louis, MO   63116

Gary E. Brotherton
Attorney at Law
601 West Nifong Blvd., Suite C
Columbia, MO   65203

Kevin L. Schreiner
Attorney at Law
141 N. Meramec Ave., #314

17

Clayton, MO   63105


Gino F. Battisti
Attorney at Law
1001 Highlands Plaza Dr., Ste. 400
St. Louis, MO   63110

Phillip M. Horwitz
Attorney at Law
640 Cepi, Suite A
Chesterfield, MO   63005

Jessica E. Sutton
Attorney at Law
6155 Oak Street, Suite C
Kansas City, MO   64113

Kent E. Gipson
Attorney at Law
121 E. Gregory Blvd.
Kansas City, MO   64114


/s/ Michael J. Spillane
MICHAEL J. SPILLANE
Assistant Attorney General