IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

DAVID ZINK, et al.,                    )
                                       )
        *Plaintiffs*,                  )
                                       )
    v.                                 )
                                       )  No. 2:12-CV-4209-NKL
                                       )
GEORGE A. LOMBARDI, et al.,            )
                                       )
        *Defendants*.                  )

## **SUGGESTIONS IN OPPOSITION TO MOTION TO DISMISS**

COME NOW the plaintiffs, by and through counsel, and in opposition to the

defendants' pending motion to dismiss (Doc. No. 3), respond that the motion contains

averments raising new questions of fact not addressed in the underlying substantive

pleading, advocates a nonexistent legal standard to support dismissal, and fails to

sustain its burden even under that standard.

Plaintiffs address the applicable standard first, and the respective counts of their

substantive pleading in turn.

# Table of Contents

Caption and Introduction ................................................................................................ i

Table of Contents ........................................................................................................... ii

Table of Authorities ....................................................................................................... v

Standard of Adjudication ............................................................................................... 1

Discussion of Individual Counts .................................................................................... 2

    I.     Defendants' threatened unprecedented use of their lidocaine-
           propofol protocol would violate the Eighth and Fourteenth
           Amendments. ................................................................................................2

           A.     Plaintiffs' pleadings allege unconscionable pain without
                  reliable mitigation under the defendants' new execution
                  protocol ................................................................................................3

           B.     Defendants' disputes of the plaintiffs' allegations do not
                  constitute grounds for dismissal ..........................................................4

           C.     Defendants' construction of a straw-man is of no merit and
                  rejects long-standing Supreme Court precedent ...............................6

           D.     Neither *Baze* nor any other authority requires these plaintiffs
                  to propose an "alternative" that would solve the
                  constitutional problems in the defendants' new execution
                  protocol ................................................................................................7

            E.     Defendants improperly seek dismissal by introducing
                  "facts" and allegations *not* contained in plaintiffs' pleading,
                  demonstrating that their objections to the plaintiffs' claims
                  could only be accepted, if at all, after discovery. ............................12

    II.    Because the defendants' principal argument for dismissal of the
           Supremacy-Clause grievance is one of standing, the plaintiffs need
           not make a freestanding showing that the lidocaine-propofol
           protocol would violate the Eighth and Fourteenth Amendments,

Case 2:12-cv-04209-NKL   Document 9-3   Filed 08/29/12   Page 2 of 45

but only the showing their pleadings and exhibits have already made..................................................................................16

    A.    Defendants mischaracterize this count in claiming that the plaintiffs argue that they must allege lidocaine is painful in order to state a claim for relief. ............................................................16

    B.    Defendants' argument from their intention to use central line access does not detract from the plaintiffs' evidence regarding lidocaine, and is in any event an assertion of a factual nature beyond the scope of the plaintiffs' pleadings............17

    C.    Defendants' failed arguments from *Ringo v. Lombardi* will not serve them here any more than they did in the latter case. ..............18

III.    Defendants fail to justify dismissal of the plaintiffs' ex post facto law claim because the cases on which the defendants rely support (at least inferentially) the plaintiffs' position that a change in the method of execution from less painful to more painful would be a greater punishment, and are part of the legal landscape to which the defendants' pain-enhancing conduct is foreign......................................22

    A.    The precedents the defendants cite do not hold that changes in methods of execution are exempt from the ex post facto law guaranties of the United States and Missouri Constitutions..........................................................................................22

    B.    The Missouri Constitutional guaranty against retrospective legislation sweeps more broadly than U.S. Const. art. I, § 10. .........26

IV.    Defendant Lombardi's enactment of the state's new execution protocol—as the statute purports to allow him to do—violates the Missouri constitutional guaranty of separation of powers, because the statute which purports to give a jailer broad legislative authority to establish whatever method of "lethal injection" or "lethal gas" he desires, and twenty-one plaintiffs cannot be "estopped" to interpose this grievance because one plaintiff defended the requirement by another Division of this Court that a written protocol be promulgated when state constitutional limitations were not at issue...........................................................................26

Case 2:12-cv-04209-NKL   Document 9-3   Filed 08/29/12   Page 3 of 45

A.    Defendants' protocol originates from a statute that delegates unbounded legislative authority to an unelected administrative official, his unelected bureaucrats, and his unelected lawyers. .............................................................................27

B.    Defendants have failed to plead a plausible basis for enforcing any estoppel against the plaintiffs' assertion of their state constitutional grievance based on an intervening change of law. ........................................................................30

Conclusion ....................................................................................................... 34

Certificate of Service ........................................................................................ 37

# Table of Authorities

## Constitutional Provisions

Ark. Const. art. IV, §§ 1-2 ................................................................. 32

Mo. Const. art. I, § 13 ..................................................................... 28

Mo. Const. art. I, § 21 .................................................................. 3, 15

Mo. Const. art. II, § 1 ................................................................ 30, 32

U.S. Const. amend. VIII (Cruel & Unusual Punishments Clause) ........................... passim

U.S. Const. amend. XIV, § 1 (Due Process Clause) .................................... 3, 7, 15

U.S. Const. art. I, § 10 (Ex Post Facto Clause Applicable to States) ................... 28

U.S. Const. art. VI, cl. 2 (Supremacy Clause) ...................................... 18, 21

## Statutes

21 U.S.C. § 353(b) ......................................................................... 22

21 U.S.C. §337(a) .......................................................................... 21

42 U.S.C. § 1983 ............................................................................ 4

Ark. Code Ann. § 5-4-617(a) (Supp. 2011) ................................................. 32

Mo. Rev. Stat. § 546.720 .................................................................. 32

## Rules

Fed. R. Civ. P. 12(b) ..................................................................... 20

Fed. R. Civ. P. 12(d) ..................................................................... 13

Fed. R. Civ. P. 56(d) ..................................................................... 13

<u>Judicial Decisions</u>

*Arthur v. Thomas*, 674 F.3d 1257 (11th Cir. 2012) .................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................... 1, 2, 13

*Beaty v. Brewer*, 649 F.3d 1071 (9th Cir. 2011) ......................................................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 14

*Borntrager v. Central States Southeast & Southwest Areas Pension Fund*, 577 F.3d 913
    (8th Cir. 2009) ......................................................... 14

*Brown v. United States*, 250 F.2d 745 (5th Cir. 1958) ......................................................... 22

*Clemons v. Crawford*, 585 F.3d 1119 (8th Cir. 2009), *cert. denied*, 130 S.Ct. 3507
    (2010) ......................................................... 15

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................... 1

*Cosada Villa of Missouri v. Missouri Dept. of Social Services*, 868 S.W.2d 157 (Mo. Ct.
    App. W.D. 1994) ......................................................... 29

*Creech v. Reinke*, --- F.Supp.3d ---, 2012 WL 1995085, No. 1:12-CV-00173-EJL (D.
    Idaho June 4, 2012) ......................................................... 16

*DR Acquisition Corp. v. Flour Corp.*, 2012 WL 2367407 (E.D.Mo. June 21, 2012) ............... 14

*F.R. v. St. Charles County Sheriff's Dept.*, 301 S.W.3d 56 (Mo. 2010) (en banc) ................... 29

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ......................................................... 22

*Fierro v. Gomez*, 77 F.3d 301 (9th Cir. 1995), *vacated on other grounds sub nom. Fierro
    v. Turhune*, 147 F.3d 1158 (9th Cir. 1998) ......................................................... 27

*Garner v. Jones*, 529 U.S. 244 (2000) ......................................................... 25

*Gregg v. Georgia*, 428 U.S. 153 (1976) ......................................................... 7

*Hobbs v. Jones*, --- S.W.3d ---, No. 11-1128, 2012 WL 2362712 at *15 (Ark. Jun. 22,
    2012) ......................................................... 31, 32

*Holmes v. Cheney*, 234 Ark. 503, 352 S.W.2d 943 (1962) .......................................... 31

*In re Kemmler*, 136 U.S. 436 (1890) ............................................................ 8, 26

*Jackson v. Danberg*, 656 F.3d 157 (3d Cir. 2011) ...................................................... 16

*Lustgraaf v. Behrens*, 619 F.3d 867 (8th Cir. 2010) ...................................................... 1

*Malloy v. South Carolina*, 237 U.S. 180 (1915) .......................................... 24, 25, 26, 27

*McArthur v. Smallwood*, 225 Ark. 328, 281 S.W.2d 428 (1955) ...................................... 31

*Menorah Medical Center v. Health and Educational Facilities Authority*, 584 S.W.2d 73 (Mo. 1979) (en banc) .......................................................... 31

*Plouffe v. Ligon*, 606 F.3d 890 (8th Cir 2010) ............................................................ 1

*Powell v. Thomas*, 784 F.Supp.2d 1270 (M.D. Ala. 2011) ........................................... 16

*Rentschler v. Nixon*, 311 S.W.3d 783 (Mo. 2010) (en banc) ...................................... 28

*Ringo v. Lombardi*, 2010 WL 3310240 (W.D.Mo. Aug. 19, 2010) .............................. 15, 20, 21

*Ringo v. Lombardi*, 2011 WL 3584476 (W.D. Mo. Aug. 15, 2011), *vacated on other grounds*, 677 F.3d 793 (8th Cir. 2012) .......................................................... 18

*Ringo v. Lombardi*, 706 F. Supp. 2d 952 (W.D. Mo. 2010) ........................................ 24

*Ritchie v. St. Louis Jewish Light*, 630 F.3d 713 (8th Cir. 2011) .................................... 1

*Romine v. Acxiom Corp.*, 296 F.3d 701 (8th Cir. 2002) ............................................... 14

*Speaks Family Legacy Chapels, Inc., & Lawlor Funeral Home, Ltd. v. National Heritage Enterprises, Inc., et al.*, 2009 WL 2391769 (W.D. Mo. Aug. 3, 2009) .......................... 1

*State ex rel. Wagner v. St. Louis County Port Authority*, 604 S.W.2d 592 (Mo. 1980) (en banc) .......................................................... 30, 33

*State ex rel. Western Outdoor Advertising Co. v. State Highway and Transp. Comm'n*, 813 S.W.2d 360 (Mo. Ct. App. W.D. 1991) ................................................ 29

*State v. Brown*, 342 Mo. 53, 112 S.W.2d 568 (1937) .......................................... 26, 27

Case 2:12-cv-04209-NKL   Document 9-3   Filed 08/29/12   Page 7 of 45

*State v. Mata*, 275 Neb. 1, 745 N.W.2d 229, *cert. denied*, 129 S.Ct. 228 (2008) ...................... 27

*Syverson v. FirePond, Inc.*, 383 F.3d 745 (8th Cir. 2004) ........................................................ 20

*Taylor v. Crawford*, 487 F.3d 1072 (8th Cir. 2007), *cert. denied*, 553 U.S. 1004 (2008)...passim

*Terrell v. Loomis*, 235 S.W.2d 961 (Ark. 1951) ......................................................................... 31

*United States v. Amin Boutros*, No. 19,304-CR (W.D. Mo. Dec. 23, 1955)............................... 23

*United States v. Nazir*, 211 F. Supp. 2d 1372 (S.D. Fla. 2002).................................................. 23

*United States v. Smith*, 573 F.3d 639 (8th Cir. 2009) ................................................................ 23

*Valle v. Singer*, 655 F.3d 1223 (11th Cir. 2011) ....................................................................... 16

*Wescott v. City of Omaha*, 901 F.2d 1486 (8th Cir. 1990) ........................................................ 20

*Wilkerson v. Utah*, 99 U.S. 130 (1879) ................................................................................... 7, 8

*Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011) ..................................................................... 25

## Other Authorities

F. JAMES & G. HAZARD, CIVIL PROCEDURE (2d ed. 1977) ........................................................ 13

J.H. MCBURNEY & GLEN E. MILLS, ARGUMENTATION & DEBATE: TECHNIQUES OF A
    FREE SOCIETY (2D ED. 1964).................................................................................................. 10

## Standard of Adjudication

Defendants ask the Court to apply the laws erroneously, by asserting incorrect standards by which a federal court reviews a motion to dismiss. Defendants cite *Ashcroft v. Iqbal*,[1] for the general and unremarkable proposition that the complaint must be "plausible." Plaintiffs agree that this is what *Iqbal* says. But it does not change the fact that on a motion to dismiss, a court is required to construe the allegations in a complaint broadly and in the light most favorable to the nonmoving party.[2]

---

[1] 556 U.S. 662, 680 (2009).

[2] *See, e.g., Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011); *Plouffe v. Ligon*, 606 F.3d 890, 893 (8th Cir 2010) ("We generally review the grant of a motion to dismiss de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the non-moving party."); *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010) (semble); *Speaks Family Legacy Chapels, Inc., & Lawlor Funeral Home, Ltd. v. National Heritage Enterprises, Inc., et al.*, 2009 WL 2391769 (W.D. Mo. Aug. 3, 2009) (No. 2:08-CV-04148-NKL) (slip opinion): "In 2007 the Supreme Court issued a new standard for evaluating motions to dismiss under Federal Rule 12(b)(6) but cautioned that it had not created a heightened pleading standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 569 n.14 (2007) (finding that the well-known "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), had "earned its retirement"). Under *Twombly*, for complaints to be viable they must contain enough facts to 'nudge [them] across the line from conceivable to plausible.' 550 U.S. at 570. The Supreme Court recently clarified the *Twombly* standard, giving two important pieces of guidance to district courts ruling on 12(b)(6) motions: first, 'threadbare allegations' and 'the-defendant-unlawfully-harmed-me accusation[s]' are insufficient to survive a motion to dismiss; second, district courts should rely on their own 'judicial experience and common sense' in making the 'context-specific' determination of whether factual allegations make a right to relief plausible. *See Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949-50 (2009). Without such factual allegations, 'it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.' *Twombly*, 550 U.S. at 554 n. 3. That said, the factual allegations of a complaint are still presumed to be true and construed in

- 1 -

Defendants rely on *Iqbal* to suggest that the Eighth Amendment requires the plaintiffs to plead the complete elimination of pain or, alternatively, to plead with specificity how the defendants could comply with the law.  But that is not the plaintiffs' burden:  the plaintiffs need only plead a ***plausible*** theory of harm that the law prohibits. That appears on the face of the plaintiffs' initial pleading and exhibits, and they demonstrate the fact in detail in the bulk of the present pleading.

Defendants have also attempted to insert "facts" not contained in the state-court petition.  By implication, they have converted their motion into one for summary judgment.  But the plaintiffs need no additional facts to survive a motion to dismiss. The affidavit of Dr. Heath and the article he cites and incorporates in his affidavit are salient ***parts*** of the pleadings.  If the defendants wish to meet these facts, they must do so in a summary-judgment motion or at trial, after discovery.

### Discussion of Individual Counts

**I.      Defendants' threatened unprecedented use of their lidocaine-propofol protocol would violate the Eighth and Fourteenth Amendments.**

In support of Count I of the state-court petition—which the state-affiliated defendants have removed to this federal Court—the plaintiffs allege that (1) propofol causes pain on injection in the overwhelming majority of instances, even as used in

---

the light most favorable to the plaintiff, 'even if it strikes a savvy judge that actual proof of those facts is improbable and that recovery is very remote or unlikely.'  *Id.* at 556 (quotation omitted).  *But see Iqbal*, 129 S.Ct. at 1949 (clarifying that the presumption of truth and favorable construction applied to factual allegations does not apply to legal allegations)."

ordinary medical practice; (2) the defendants' protocol calls for a rapid injection of a massive dosage of propofol far exceeding what is used in surgical settings; and (3) the lidocaine the defendants plan to inject as the drug to mitigate the pain they admit that the propofol will cause is an unreliable means of counteracting the unconscionable pain caused by the propofol. Petition ¶¶ 142-58. For these reasons, the plaintiffs plead that the defendants' intended use of lidocaine and propofol as set forth in their new protocol creates a substantial, objectively intolerable, or untoward risk of severe pain. *Id.* ¶¶ 178-79.

### A. Plaintiffs' pleadings allege unconscionable pain without reliable mitigation under the defendants' new execution protocol.

Based on the foregoing averments—supported by the affidavit and article of Dr. Mark Heath and the admissions of Dr. Mark Dershwitz—the plaintiffs have placed before the courts a well-pleaded claim that the defendants' intended actions violate the Cruel and Unusual Punishments Clauses of Mo. Const. art. I, § 21, and of the Eighth Amendment to the United States Constitution, as applied to the states by its Fourteenth Amendment, and enforceable through 42 U.S.C. § 1983. ¶ 180.

Plaintiffs have supported their averments with detailed sworn expert evidence, including a peer-reviewed article incorporated as an exhibit, indicating that patients treated with even 1/15 of the quantity of propofol which the defendants intend to administer would suffer pain, and they are aware of no studies to evaluate the effect on the human body of the quantity of propofol the defendants intend to use in their

execution protocol.  Plaintiff's Exhibit 1 & Heath Affidavit Exhibits 1 & 3.  Plaintiffs'

petition further details that the defendants' expert in prior lethal-injection litigation, Dr.

Mark Dershwitz, had testified that "[p]ain on injection [of propofol] occurs in two-

thirds to three-quarters of patients[,]" and that "many patients, the last thing they

remember doing before falling asleep is screaming at the top of their lungs because

propofol burns."  Plaintiffs' Exhibit 4 at 92-93.

> **B.    Defendants' disputes of the plaintiffs' allegations do not constitute grounds for dismissal.**

Defendants deny that these facts, documented by an expert affidavit and by their

own expert from *Taylor v. Crawford*,[3] "if true, would show an objectively intolerable risk

of severe pain . . . ."  Doc. No. 3 at 4.

But the defendants' argument fails under either of the two formulations each

commanding three votes on the Supreme Court in *Baze v. Rees*.[4]  There can be no dispute

that the plaintiffs have more than alleged—they have amply documented—that the

defendants' threatened use of the new execution protocol would be a cruel and unusual

punishment under *Baze*.

*Baze* dealt with the conventional form of execution in the United States at the

time of the decision.  It proceeded on the premise that the history of methods of

---

[3]487 F.3d 1072 (8th Cir. 2007), *cert. denied*, 553 U.S. 1004 (2008).

[4]553 U.S. 35 (2008).

execution in this country have been marked by a trend of increasing humaneness.[5]  The

Chief Justice noted that the *Baze* petitioners acknowledged that the protocol at issue

***there***, "if applied as intended, will result in a humane death."[6]

But that is not what the plaintiffs ***here*** allege.  These plaintiffs have averred that

the defendants' new execution protocol "if applied as intended," will with almost

certainty result in excruciating pain.  The relevant harm here is not, as in *Baze*, a risk

that a mistake might prevent the protocol from being carried out as written.  It is the

known pain inherent in the protocol itself.

Defendants cite the fact that real physicians use propofol routinely as anesthesia

during surgery as if it rendered the averments of the state-court petition "implausible."

Doc. No. 3 at 4.  Defendants appear to assume the Court will ignore the disparity in

***quantities*** between their new execution protocol and the quantities in which physicians

use propofol to induce anesthesia.  Plaintiffs pleaded this disparity and its

consequences in ¶¶ 143 & 150, and supported their averments by the sworn expert

testimony in Plaintiffs' Exhibit 1, the affidavit of Mark J.S. Heath, M.D. ¶¶ 31, 35,

explaining, among other things, that the state's execution protocol, when carried out as

written over the course of multiple executions, will "inevitably" cause "excruciating

pain."

---

[5]553 U.S. at 40-41 (Roberts, C.J., with Kennedy, J., and Alito, J., joining).

[6]*Id.* at 41.

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/29/12   Page 13 of 45

## C. Defendants' construction of a straw-man is of no merit and rejects long-standing Supreme Court precedent.

Instead of dealing with the facts the plaintiffs have pleaded and documented in the state-court petition, the defendants create a straw-man of "zero pain and zero risk of pain" (Doc. No. 3 at 4) to attack rather than to defend their new protocol under the law which the plaintiffs set forth correctly.

For example, the witness the defendants' predecessors in office held out as a qualified expert in *Taylor* testified under oath in *Jackson v. Danberg*, No. 06-CV-300 (D. Del. Sept. 10, 2007) (deposition transcript excerpted as Exhibit 4 to state-court petition here), that "[p]ain on injection [of propofol] occurs in two-thirds to three-quarters of patients[,]" and that of these, "Many patients . . . scream at the top of their lungs from propofol[,]" and "the last thing they remember doing before falling asleep is screaming at the top of their lungs because propofol burns."  Only under the "100% chance of pain" standard which the defendants evidently wish in vain that even a single Justice in *Baze* had adopted would the plaintiffs' documented averments fail to state a claim.

*Baze* dealt with the method of execution commonly used at that time in the states that were then inflicting the death penalty.[7]  Here, by contrast, the defendants are on the fringe attacking the status quo.  Saying that their protocol is lethal injection, and lethal injection is not unconstitutional, therefore, their protocol is not unconstitutional, ignores the substance of *Baze* and the history behind it.  The outward and visible incidents of

---

[7]553 U.S. at 42 & n.1 (Roberts, C.J.).

lethal injection do not mask the substance of this new, untested form of execution.

Defendants' threatened conduct is subject to the Eighth and Fourteenth Amendments'

requirement—enforced in *Gregg v. Georgia,*[8] that the plaintiffs' executions be free from

"the unnecessary and wanton infliction of pain."

  **D. Neither *Baze* nor any other authority requires these plaintiffs to propose an "alternative" that would solve the constitutional problems in the defendants' new execution protocol.**

  Defendants also assert that under *Baze,* a plaintiff threatened with a form of

execution that would have violated the Constitution at least since *Wilkerson v. Utah*[9] or

*In re Kemmler*[10] must bid against himself and propose that he be killed in another way—

in effect figuring out how to solve the defendants' problems for them.  Doc. No. 3 at 4-5.

Plaintiffs will not be parties to state-assisted suicide.  *Baze* does not require it, the

plaintiffs explain at 7-11 *infra*.

  Defendants assert that pleading for one's own death is "a basic prerequisite to

the successful assertion of an Eighth Amendment claim."  Doc. No. 3 at 4-5.  They cite

the opinion of Chief Justice Roberts (for himself and two other Justices).[11]  Defendants

present a shield for corrections officials seeking to defend against a proposed

_____

 [8]428 U.S. 153, 173 (1976) (plurality opinion).

 [9]99 U.S. 130 (1879).

 [10]136 U.S. 436 (1890).

 [11]553 U.S. at 51-52.

alternative as a sword against condemned prisoners invoking the Constitution and the

Supreme Court's construction of it.

The Chief Justice frames the issue in *Baze* as including the *Baze* plaintiffs'

assertion of an alternative as part of what a majority of Justices (albeit in no one

opinion) would reject. After noting that they conceded the Kentucky protocol would be

constitutional if carried out as written—which the plaintiffs here would never

concede—the Chief Justice characterizes the proposal of an alternative as at the core of

the *Baze* plaintiffs' position:

> They nevertheless contend that the lethal injection protocol
> is unconstitutional under the Eighth Amendment's ban on
> "cruel and unusual punishments," because of the risk that
> the protocol's terms might not be properly followed,
> resulting in significant pain. They propose an alternative
> protocol, one that they concede has not been adopted by any
> State and has never been tried.[12]

Rather than encouraging plaintiffs to propose alternative methods of execution,

the Chief Justice's opinion puts the burden on the state to adopt a proposed alternative

if it workably reduces a substantial risk of severe pain:

> the alternative procedure must be feasible, readily
> implemented, and in fact significantly reduce a substantial
> risk of severe pain. If a State refuses to adopt such an
> alternative in the face of these documented advantages,
> without a legitimate penological justification for adhering to
> its current method of execution, then a State's refusal to

---

[12]*Id.* at 41.

change its method can be viewed as "cruel and unusual" under the Eighth Amendment.[13]

In the context of a motion for stay, the Chief Justice would require an alternative when, as in *Baze*, the plaintiffs had based their own claim on an alternative they had proposed. If that were how they had initiated their claim on the merits, they would obviously have to provide an alternative to get a stay, but the Chief Justice did not impose even this aspect of the stay standard on cases except "such as those asserted here," and what he said was limited to three-chemical sequence protocols, not new, untried protocols like the one at issue in the instant case:

> A stay of execution may not be granted on grounds **such as those asserted here** unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives. A State with a lethal injection protocol **substantially similar to the protocol we uphold today** would not create a risk that meets this standard.[14]

Defendants' invocation of this three-Justice opinion attempts to stand it on its head. The passage the defendants cite is a **refutation** of the *Baze* petitioners' tendering of an alternative. Rather than imposing a Sophie's Choice on plaintiffs and their counsel, the Chief Justice's opinion sets **limits** on plaintiffs' use of proffered alternatives, rejecting the *Baze* petitioners' attempt to obtain relief on this basis. Far from demanding such an averment, it discourages it. The opinion **declines** to get the

---

[13]553 U.S. at 52.

[14]553 U.S. at 61 (emphasis supplied).

courts involved in monitoring the practices of states to adjudicate these actual disputes as "comparative advantage" cases in academic debate.[15]

Even if the defendants' proposed "alternative method" requirement could be supported by the Chief Justice's *Baze* opinion, it finds no support among the Court's other Justices, and thus, cannot reflect the views of five or more Justices. Justices Thomas and Scalia wholly rejected, "as both unprecedented and unworkable[,] any standard that would require the courts to weigh the relative advantages and disadvantages of different methods of execution or of different procedures for implementing a given method of execution."[16] Justices Ginsburg and Souter (in dissent) and Justice Breyer (in his concurrence) endorse the consideration of alternative methods as a relevant factor in a particular method's constitutionality;[17] but there is no per se requirement, and even these three Justices' reasoning was not in the abstract but rather in the context of the case before the Court: the particular claims brought by the Kentucky prisoners in *Baze*. Justice Stevens declined to pick sides between the two

---

[15]553 U.S. at 51-52 & nn.2-3. *See* J.H. MCBURNEY & GLEN E. MILLS, ARGUMENTATION & DEBATE: TECHNIQUES OF A FREE SOCIETY 195-96 (2D ED. 1964).

[16]553 U.S. at 106 (Thomas, J., concurring, and joined by Scalia, J.) (emphasis added).

[17]*Id.* at 116 (Ginsburg, J., joined by Souter, J.: "I agree with petitioners and the plurality that the degree of risk, magnitude of pain, and availability of alternatives must be considered. I part ways with the plurality, however, to the extent its "substantial risk" test sets a fixed threshold for the first factor. The three factors are interrelated; a strong showing on one reduces the importance of the others."); *id.* at 108 (Breyer, J., concurring, and endorsing Justice Ginsburg's view).

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/27/12   Page 18 of 45

variants of the approach taken by the Chief Justice on the one hand, and Justices Breyer and Ginsburg, on the other, observing only that the prisoners in *Baze* failed to prove that Kentucky's protocol violates the Eighth Amendment.[18]  Thus, even if the Chief Justice's opinion meant what the defendants say it means, the "alternative method" test that they would make an element in any Eighth-Amendment plaintiffs' cause of action has never commanded a majority of votes in the Supreme Court.

In this case, *Zink v. Lombardi*, the plaintiffs are not making a "comparative advantage" case.  They have averred and documented facts showing that the lidocaine-propofol protocol violates the Constitution of the State of Missouri and the Constitution of the United States in several ways.  *Baze* did not impose a duty on them to mitigate damages by creating less painful ways of carrying out the state's protocol.  Neither these plaintiffs nor any others are under a duty to tell state actors what to do affirmatively when they have shown that state action violates the Constitution, laws, and treaties of the United States.  If the only forms of execution available to the state were those which violated the Eighth Amendment's prohibition of cruel and unusual punishment, then the remedy would be to cease executions until constitutional means could be found, not to turn to unconstitutional means.

---

[18]*Id.* at 87 (Stevens, J., concurring).

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/27/12   Page 19 of 45

**E. Defendants improperly seek dismissal by introducing "facts" and allegations *not* contained in plaintiffs' pleading, demonstrating that their objections to the plaintiffs' claims could only be accepted, if at all, after discovery.**

Defendants make an assertion of fact: "Sodium thiopental and pentobarbital are no longer available[.]" Doc. No. 3 at 5. This averment goes beyond the facts in the petition which they removed from the state courts. It falls within Fed. R. Civ. P. 12(d)'s definition of "matters outside the pleadings." Defendants have therefore rendered their motion a pleading for summary judgment, with the consequence that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

In light of the defendants' assertions of what purport to be facts, the plaintiffs are entitled to proceed with discovery and other fact-finding under Fed. R. Civ. P. 56(d)(2), and reserve their right to engage in it before any summary judgment is entered against them.[19] Ultimately, discovery will be necessary if the Court considers any of the representations about what the defendants have done and why they have done it, because absent order of this Court, they have exclusive control over this information.[20]

Neither *Twombley*[21] nor *Iqbal*[22] disturb the longstanding expectation under the Federal Rules of Civil Procedure,[23] that discovery is the principal means of pretrial

---

[19]Fed. R. Civ. P. 12(d).

[20]*See* Mo. Rev. Stat. § 546.720.2-3.

[21]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

ascertainment of the facts on which a cause of action depends. In general, the two recent Supreme Court decisions exist side-by-side with the historic reform that the Federal Rules wrought, as they do spatially in Judge Sippel's opinion in *DR Acquisition Corp. v. Flour Corp.*,[24] where immediately after quoting *Twombly*, he quotes the Eighth Circuit's decision in *Romine v. Acxiom Corp.*,[25] for the rule of law that "[t]his simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."[26]

Specifically, this Court's and the Eighth Circuit's experience with previous Missouri lethal-injection litigation shows that it is a fact-intensive matter, one in which both this Court and the Eighth Circuit have relied on the fruits of discovery. This Court ordered the defendants to submit to discovery notwithstanding its grant of judgment on the pleadings on one aspect of the case and its certification of the case for interlocutory appeal.[27] The Eighth Circuit relied extensively on discovery in deciding

---

[22]*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[23]*E.g.*, F. JAMES & G. HAZARD, CIVIL PROCEDURE § 2.11 at 85 (2d ed. 1977).

[24]2012 WL 2367407 at *2 (E.D.Mo. June 21, 2012).

[25]296 F.3d 701, 711 (8th Cir. 2002).

[26]*See also Borntrager v. Central States Southeast & Southwest Areas Pension Fund*, 577 F.3d 913, 917-18 (8th Cir. 2009) (before and after *Twombly*, even partial judicial agreement with party resisting discovery does not obviate general duty to proceed with discovery).

[27]*Ringo v. Lombardi*, 2010 WL 3310240 at *6 (W.D.Mo. Aug. 19, 2010).

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/27/12   Page 21 of 45

*Clemons v. Crawford*, relying on discovery from *Taylor v. Crawford*[28] as well.[29]  In *Taylor*,

of course, the discovery after remand disclosed the use of a dyslexic surgeon to prepare

chemicals without rhyme or reason, the dark working conditions effectively precluding

even minimal monitoring at a lay level of the condemned person's consciousness, and

other flaws which triggered an evidentiary hearing and the district court's order that

the defendants prepare a written protocol; it was only on the basis of this protocol that

the Eighth Circuit held the defendants' new practices not unconstitutional.[30]

The fact, if it is a fact, that the defendants cannot get thiopental or pentobarbital

does not entitle them to use a means of lethal injection or other method of execution

which would violate the Eighth and Fourteenth Amendments and Mo. Const. art. I,

§ 21.  If this Court were to find that the availability of sodium thiopental or of

pentobarbital is relevant to the defendants' decision to use propofol, plaintiffs are

entitled to at least the following discovery before the Court rules on this motion:[31]

- Plaintiffs are entitled to discovery on what efforts the defendants
  have made to obtain sodium thiopental and/or pentobarbital.
  Without conceding the validity of defendants' claims, ***other*** states

---

[28]*Taylor v. Crawford*, 487 F.3d 1072 (8th Cir. 2007), *cert. denied*, 553 U.S. 1004 (2008

[29]*Clemons v. Crawford*, 585 F.3d 1119, 1123, 1127 n.8 (8th Cir. 2009), *cert. denied*, 130 S.Ct. 3507 (2010).

[30]487 F.3d at 1075 & 1080-85.

[31]Plaintiffs reserve the right to conduct further discovery as the case progresses.

appear to be able to obtain ***at least*** pentobarbital.[32]  Plaintiffs deny

the allegation of the defendants' response that they cannot get

pentobarbital, and demand strict proof of this premise of a factual

nature.

- Assuming the truth of the defendants' statement that they made

  one unsuccessful attempt to obtain pentobarbital, that fact does not

  establish as a matter of law that it was impossible to obtain

  pentobarbital when so many other states are able to do so. Neither

  does it establish that other barbiturates are less suitable than

  pentobarbital or unavailable.

- Plaintiffs are also entitled to discovery on why—when other states

  can get pentobarbital—these defendants are the only ones to have

  chosen propofol as their lethal agent, what other drugs they

  considered, and why the defendants rejected them in favor of

  propofol.

Defendants present a caricature of *Baze* that does not reflect a single vote on the

Supreme Court.  But even assuming arguendo that the defendants were correct in their

characterization of what *Baze* requires of Eighth-Amendment plaintiffs, the defendants'

---

[32]*E.g.*, *Arthur v. Thomas*, 674 F.3d 1257 (11th Cir. 2012); *Jackson v. Danberg*, 656 F.3d
157 (3d Cir. 2011); *Valle v. Singer*, 655 F.3d 1223 (11th Cir. 2011); *Beaty v. Brewer*, 649 F.3d
1071 (9th Cir. 2011); *Creech v. Reinke*, --- F.Supp.3d ---, 2012 WL 1995085, No. 1:12-CV-
00173-EJL (D. Idaho June 4, 2012); *Powell v. Thomas*, 784 F.Supp.2d 1270 (M.D. Ala. 2011).

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/27/12   Page 23 of 45

motion reflects an elementary misapplication of the scope of review on a motion to dismiss.  The Court must construe the underlying pleading in the light most favorable to the nonmoving parties, and must take as true the pleaded facts unless they are completely ridiculous or conclusory.

**II.     Because the defendants' principal argument for dismissal of the Supremacy-Clause grievance is one of standing, the plaintiffs need not make a freestanding showing that the lidocaine-propofol protocol would violate the Eighth and Fourteenth Amendments, but only the showing their pleadings and exhibits have already made.**

For their second count, the plaintiffs present evidence and law showing that the defendants intend to use lidocaine for the ***medical purpose*** of mitigating the pain they know is caused by propofol (though the plaintiffs dispute that the lidocaine would be ***adequate*** to this purpose); that the defendants intend to use the lidocaine without a prescription; that federal law requires a prescription to obtain, dispense, and administer lidocaine; and that their behavior in conflict with federal law violates the Supremacy Clause of the United States Constitution.  Petition ¶¶ 159-67 & 182-83.

**A.     Defendants mischaracterize this count in claiming that the plaintiffs argue that they must allege lidocaine is painful in order to state a claim for relief.**

Defendants miss the point (and mischaracterize the underlying pleading) when they say, "Plaintiffs do not allege that there is a risk of pain from the use of lidocaine." Count I primarily focuses on propofol; Count II focuses on lidocaine.  As the plaintiffs have pleaded and demonstrated, lidocaine does not adequately address or treat the pain which the defendants know (and in effect admit) the propofol will cause.

Defendants' reliance on this Court's standing ruling in *Ringo v. Lombardi*[33] is severely misplaced. In its *Ringo* summary-judgment ruling, the Court relied heavily on the premises that Missouri had had a large number of executions using the three-chemical sequence commencing with sodium thiopental. In light of this fact, the Court reasoned that the *Ringo* plaintiffs had not shown a risk of pain **from the three-chemical sequence** because there was no record evidence that any previous execution resulted in the requisite quantum of pain.[34] In the instant case, by stark contrast, there is a protocol new not only Missouri but to the world, and the only available evidence shows that the risk of pain is, to say the least, significant. There is no countervailing evidence of apparently pain-free executions.

**B.     Defendants' argument from their intention to use central line access does not detract from the plaintiffs' evidence regarding lidocaine, and is in any event an assertion of a factual nature beyond the scope of the plaintiffs' pleadings.**

At least equally unavailing is the defendants' reliance on their plan to use the "central line access" to **reduce** pain, when that was one of the chief grievances in *Taylor*,

---

[33]2011 WL 3584476 (W.D. Mo. Aug. 15, 2011), *vacated on other grounds*, 677 F.3d 793 (8th Cir. 2012).

[34]Such a showing would be virtually impossible because the former protocol paralyzed the prisoner so that he could not demonstrate pain before he died. *Baze v. Rees*, 553 U.S. at 44 (Roberts, C.J.) (pancuronium bromide "is a paralytic agent that inhibits all muscular-skeletal movements . . . ."); 553 U.S. at 71 (Stevens, J., concurring) ("Because it masks any outward sign of distress, pancuronium bromide creates a risk that the inmate will suffer excruciating pain before death occurs.").

*i.e.*, a femoral vein rather than a peripheral injection.[35]  Defendants produce **no evidence** that such a procedure would solve the known (and in effect admitted) problem of pain incident to propofol injection.

Even if they had produced evidence on this issue, on a motion to dismiss the Court cannot weigh competing evidence or inferences.  Plaintiffs' evidence to date—which is part of their pleading—already incorporates the premise that the injection is through the femoral vein, and yet Dr. Heath **still** renders the opinion that the new protocol causes pain.  This evidence—which is the only evidence besides the Dershwitz admissions in support of it—should be afforded the deference the law requires, and defendants' armchair anesthesiology is not a proper basis for dismissal under Fed. R. Civ. P. 12(b)(6).

**C.**      **Defendants' failed arguments from *Ringo v. Lombardi* will not serve them here any more than they did in the latter case.**

This Court has already rejected the defendants' point about the absence of a private right of action (Doc. No. 3 at 7) in its Order denying, in pertinent part, the *Ringo* defendants' motion for judgment on the pleadings.[36]  Motions for judgment on the

---

[35]*E.g.*, *Taylor v. Crawford*, 487 F.3d at 1076 (summarizing testimony of Dr. Stephen Johnson).  *See also* page 28, *infra* (text and footnote discussing pleadings on central line access).

[36]*Ringo v. Lombardi*, No. 09-4095-CV-C-NKL, 2010 WL 3310240, at *4-*5.

pleadings must stand or fall by the same standards as motions to dismiss.[37]  This Court

properly allowed the *Ringo* plaintiffs to go forward on their Supremacy-Clause claim

even though the Court had held that the statute did not provide a private right of

action.  Although the Court later opined on summary judgment that it was not certain

about the preemption theory (Doc. No. 263 at 19), it repeatedly held that the claim made

enough sense for the *Ringo* plaintiffs to be allowed to continue the case, including to

conduct discovery.  Neither this Court nor the Eighth Circuit ruled against the *Ringo*

plaintiffs on the merits.

    Similarly, the defendants recycle their *Ringo* allegations about the "plain

statement" rule at 7-9 of Doc. No. 3.  The *Ringo* plaintiffs briefed this issue earlier on

summary judgment and need not belabor it here.[38]

    At page 10, citing 21 U.S.C. §337(a), the defendants assert that a statute "leaves

no doubt" that the plaintiffs cannot proceed except under the aegis of the federal

government.  But again, the district court was already aware of this statute, and

specifically discussed it, in allowing the *Ringo* plaintiffs go forward despite defendants'

motion for judgment the pleadings.[39]  Like the claim in *Ringo*, this claim does not sound

---

[37]*E.g., Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004); *Wescott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

[38]*Ringo v. Lombardi*, Doc. Nos. 210 at 37-39 & 226 at 20-24.

[39]*See Ringo*, 2010 WL 3310240, at *2 (noting section 337(a)); *id.* at *5 ("Defendants point to nothing indicating that either statute (i.e. the FDCA or CSA) divests the Court of jurisdiction over such a claim (i.e. a preemption claim)").

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/29/12   Page 27 of 45

directly in the regulatory statutes but in the Supremacy Clause. It is constitutional, not statutory.

At page 10, as well, the defendants recycle the *Ringo* defense that their violation of part of the Food, Drug & Cosmetic Act,[40] is not "misbranding." But in relevant part, the FDCA requires that a "drug," which is unsafe for use without medical supervision, "shall be dispensed only" on a valid prescription issued by a medical practitioner who is "licensed by law to administer such drug."[41] The FDCA exists to ensure that such "drugs" are "safe and effective" for their intended medical use.[42] In spite of the statute's language, history, and authoritative construction, the defendants persist in arguing that the prescription requirement of 21 U.S.C. § 353(b)(1) targets pharmacists who dispense prescription drugs over-the-counter, and not physicians who dispense such drugs without a prescription.[43]

Once again, the courts have long since rejected the defendants' argument. In *Brown v. United States*,[44] the Fifth Circuit upheld the conviction of a physician for dispensing harmful drugs without a prescription. It specifically rejected Dr. Brown's argument that the FDCA does not apply to physicians, and it noted the statute's broad

---

[40] 21 U.S.C. § 353(b)(1).

[41] 21 U.S.C. § 353(b)(1).

[42] *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

[43] *See Ringo*, Doc. No. 213, at 26-27.

[44] 250 F.2d 745 (5th Cir. 1958).

language that the relevant drugs "***shall*** be dispensed" only upon a prescription.[45]  The court also observed that a similar FDCA conviction was overseen by future Supreme Court Justice Charles Evans Whittaker when he was serving on the United States District Court for the Western District of Missouri.[46]  Then-Judge Whittaker observed as follows when sentencing a physician on a no-contest plea:

> Now, there seems to be some concept among the members of the medical profession that to have a license to deal in medicine carries a license to deal in barbiturates.  That is not the law.  The medical profession might just as well understand it.  If I come to you for treatment and you, in your medical capacity examine me, and after examination determine that certain barbiturates would be beneficial to me, then you have a right to write a prescription to me, and then I have a right to get them and use them, but not otherwise.[47]

Courts today continue to recognize that the FDCA applies to physicians as fully as it does to pharmacists, or to anyone else who dispenses prescription drugs without a prescription.[48]

In *Ringo*, this Court recognized that one of the purposes of the FDCA is to ensure that a drug is "safe and effective for its intended use," and that the requirement of a

--------

[45]*Id.* at 746.

[46]*Id.*

[47]*Id.*, quoting transcript from *United States v. Amin Boutros*, No. 19,304-CR (W.D. Mo. Dec. 23, 1955).

[48]*E.g.*, *United States v. Smith*, 573 F.3d 639, 650-52 (8th Cir. 2009); *id.* at 646 (noting conviction of doctor who conspired with businessman Smith); *United States v. Nazir*, 211 F. Supp. 2d 1372, 1374-75 (S.D. Fla. 2002).

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/27/12   Page 29 of 45

prescription tends to ensure medical oversight so that a pain suppressant works to suppress pain.[49]  Then as now, "If the statutes apply to lethal injection, ignoring those safeguards, as Plaintiffs allege Defendants intend to do, places Plaintiffs at risk."[50]

> **III.     Defendants fail to justify dismissal of the plaintiffs' ex post facto law claim because the cases on which the defendants rely support (at least inferentially) the plaintiffs' position that a change in the method of execution from less painful to more painful would be a greater punishment, and are part of the legal landscape to which the defendants' pain-enhancing conduct is foreign.**

Plaintiffs' third count avers that because changing from the three-chemical sequence to the lidocaine-propofol protocol would increase the likelihood of excruciating pain and suffering relative to the practices of the defendants and their predecessors in office at the time of the offenses for which they were sentenced to death, the defendants' use of the lidocaine-propofol protocol would be an increased punishment in violation of the federal and state constitutional guaranties against the application of ex post facto laws.  Petition ¶¶ 168-70 & 185-87.

> **A.     The precedents the defendants cite do not hold that changes in methods of execution are exempt from the ex post facto law guaranties of the United States and Missouri Constitutions.**

In citing *Malloy v. South Carolina*[51] and *State v. Brown*,[52] the defendants are basically arguing that a change in the method of execution that aggravates the quantum

---

[49]*Ringo v. Lombardi*, 706 F. Supp. 2d 952, 961-62 (W.D. Mo. 2010).

[50] *Id.* at 958.

[51]237 U.S. 180 (1915).

[52]342 Mo. 53, 112 S.W.2d 568 (1937).

of pain, humiliation, disfigurement, and desecration of the corpse is **never** an ex post facto violation. Plaintiff's state-court petition cited and relied on *Garner v. Jones*,[53] and explained that an ex post facto violation required a showing of a "significant risk" of an increased punishment, by which the court meant a more severe punishment. The Eighth Circuit has endorsed this same premise for lethal injection claims.[54] If changes in the method of execution were per se insufficient to create an ex post facto violation, then the tribunals in *Malloy* and *Brown* would not have needed to make the point that **they believed** the new methods of execution they approved in the face of ex post facto law challenges were less painful. Therefore, the blanket statement for which the defendants contend is simply not the law.

In *Malloy* the Supreme Court put the claim from a South Carolina prisoner into historical context:

> Impressed with the serious objection to executions by hanging, and hopeful that means might be found for taking life 'in a less barbarous manner,' the governor of New York brought the subject to the attention of the legislature in 1885. A commission thereafter appointed to ascertain the most humane and practical method of inflicting the death sentence reported in favor of electrocution. This was adopted by the statute of 1888, and, with the approval of the courts, has been in continuous use since that time. *[In] Re Kemmler*, 136 U. S. 436 [().]

---

[53]529 U.S. 244, 255 (2000).

[54]*Williams v. Hobbs*, 658 F.3d 842, 848 (8th Cir. 2011).

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/27/12   Page 31 of 45

> Influenced by the results in New York, eleven other states
> [n.2: Ohio, 1896; Massachusetts, 1898; New Jersey, 1907;
> Virginia, 1908; North Carolina, 1909; Kentucky, 1910; South
> Carolina, 1912; Arkansas, Indiana; Pennsylvania, and
> Nebraska, 1913] have adopted the same mode for inflicting
> death in capital cases; and, as is commonly known, ***this
> result is the consequent of a well grounded belief that
> electrocution is less painful and more humane than
> hanging.***[55]

If the Supreme Court had meant that a change in the method of execution could ***never*** create an ex post facto law, the Court would not have taken the trouble to make these observations about the purpose—and its own view of the effect—of the change from hanging to electrocution.

In *Brown*, the Missouri Supreme Court quoted *Malloy* at length, including its finding that "some of the odious features incident to the old method were abated."[56] *Brown* further opined that "[t]he changes are intended to be a benefit and not a detriment." It relied on the out-of-state cases upholding the change from hanging to electrocution that *Malloy* had cited. In addition, it cited out-of-state cases upholding lethal gas versus hanging as a boon to condemned prisoners: "In these cases the courts held that the substitution was made in an effort to provide a method of inflicting the death penalty in the most humane manner known to modern science."[57]

---

[55]237 U.S. at 184-85 (footnote moved into text; emphasis supplied).

[56]342 Mo. at 56-57.

[57]*Id.* at 57.

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/29/12   Page 32 of 45

Although contemporary jurisprudence would question both of these decisions,[58] the Supreme Court of the United States and the Missouri Supreme Court expressed their own belief that the changes they approved against ex post facto law challenges were *diminutions of pain* in the method of execution. They are, therefore, part of the secular trend which the defendants are attempting to evade because of their procurement problems or for whatever other reasons discovery may unearth. Both *Malloy* and *Brown* are consistent with the legal basis for Count III set forth in the state-court petition at 40.

Both *Malloy* and *Brown* point in the direction opposite to what the defendants are about. They have not adopted their new protocol in order to abate "odious features incident to the old method," but, in the case of central line access, to replace at least one of them, in that it made the execution last longer for the prisoner, was more invasive, resulted in substantial bleeding, and—without necessarily provoking a freestanding Eighth-Amendment violation thereby—*added* at least some pain.[59] The ostensible reason for the switch is *not* that they admit the three-chemical sequence is unnecessarily painful, but that they say they cannot get the sodium thiopental the former protocol

_____

[58]See *State v. Mata*, 275 Neb. 1, 745 N.W.2d 229, *cert. denied*, 129 S.Ct. 228 (2008) (electrocution) and *Fierro v. Gomez*, 77 F.3d 301 (9th Cir. 1995), *vacated on other grounds sub nom. Fierro v. Turhune*, 147 F.3d 1158 (9th Cir. 1998) (lethal gas).

[59]*Taylor v. Crawford*, No. 2:05-CV-04173-FJG, Doc. No. 36, ¶¶ 61-70 (amended complaint); Doc. No. 183 at 1 (plaintiff's pretrial brief); Doc. No. 202 at 5-6 (objections to defendants' protocol); Doc. No. 210 at 5 n.3 (defendants eventually disclaim reliance on central line access). *See also* n.23 (footnote to Dr. Stephen Johnson's testimony).

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/27/12   Page 33 of 45

relies on to render their victim unconscious—as the Supreme Court says they must[60]—before injecting the pancuronium bromide and potassium chloride.

**B.    The Missouri Constitutional guaranty against retrospective legislation sweeps more broadly than U.S. Const. art. I, § 10.**

In this count, the plaintiffs also invoke art. I, § 13, of the Missouri Constitution, which provides that "no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted." The state constitutional protection against retrospective laws is broader than the federal constitutional prohibition against ex post facto laws.[61] It applies to administrative enactments as well as legislative ones.[62] In either context, a law operates "retrospectively" when it creates a new "legal effect" for a previous conviction.[63] Thus, the plaintiffs plead a viable state-law claim even if their ex post facto claim were somehow insufficient.

**IV.    Defendant Lombardi's enactment of the state's new execution protocol—as the statute purports to allow him to do—violates the Missouri constitutional guaranty of separation of powers, because the statute which purports to give a jailer broad legislative authority to establish whatever method of "lethal injection" or "lethal gas" he desires, and twenty-one plaintiffs cannot be "estopped"**

---

[60]*Baze v. Rees,* 553 U.S. at 53 (opinion of Roberts, C.J.); *id.* at 114 (Ginsburg, J., dissenting) (two opinions reflecting five out of nine votes for the same proposition).

[61]*Rentschler v. Nixon*, 311 S.W.3d 783, 788 (Mo. 2010) (en banc).

[62]*E.g., Cosada Villa of Missouri v. Missouri Dept. of Social Services*, 868 S.W.2d 157, 160 (Mo. Ct. App. W.D. 1994); *State ex rel. Western Outdoor Advertising Co. v. State Highway and Transp. Comm'n*, 813 S.W.2d 360, 363 (Mo. Ct. App. W.D. 1991).

[63]*F.R. v. St. Charles County Sheriff's Dept.*, 301 S.W.3d 56, 63 (Mo. 2010) (en banc).

to interpose this grievance because one plaintiff defended the requirement by another Division of this Court that a written protocol be promulgated when state constitutional limitations were not at issue.

Relying on a recent opinion of the supreme court of an adjacent state with a virtually identical separation-of-powers provision in its state constitution, the plaintiffs aver that the Missouri statute purporting to confer on defendant Lombardi the power to select any form of execution falling within either of the two categories of "lethal gas" and "lethal injection" is an abdication of the legislative power to an official of the executive branch, in violation of Mo. Const. art. II, § 1. Petition ¶¶ 171-76 & 189-91.

### A. Defendants' protocol originates from a statute that delegates unbounded legislative authority to an unelected administrative official, his unelected bureaucrats, and his unelected lawyers.[64]

Defendants seem to suggest that Missouri lacks any means of enforcing its own constitution's separation-of-powers provision in the face of purported delegation of the legislative power to an official of the executive branch. (Doc. No. 3 at 13.) That is not the law. As the Missouri Supreme Court has construed it, the Missouri Constitution

---

[64]Plaintiffs have filed a motion to remand the entire action to state court, where they filed it. Doc. No. 6 at 22 ("mov[ing] that the Court (1) abstain from the prisoners' state law claims, and (2) remand the entirety of this case to the Circuit Court of Cole County"). The case for federal-court abstention is nowhere stronger than with respect to claims which are not so much claims of individual rights (though in the long run protective of them) but are internal to the structuring of the state's own government in an area where the United States Constitution does not mandate one way of dividing powers as opposed to another. *Id.* at 15.

permits agencies to craft "details" that implement or "flesh out" a statute, but not the broad power to "legislate."[65]

The Arkansas Supreme Court was speaking truth to all states with similar constitutions when it said "the legislature has abdicated its responsibility and passed to the executive branch . . . the unfettered discretion to determine all protocol and procedures, most notably the chemicals to be used, for a state execution."[66]  In making such decisions about the meaning of state constitutional provisions, Missouri courts look to Arkansas and other states for guidance.[67]

To that end, it is highly relevant that the Arkansas Supreme Court, the highest state court of an adjacent jurisdiction, recently invalidated its lethal injection statute on the same grounds as those the plaintiffs now urge.[68]  The Arkansas Supreme Court examined the same distinction that is at issue here under Missouri law, that is, the distinction between the permissible act of bureaucrats acting to clarify or implement the

---

[65]*State ex rel. Wagner v. St. Louis County Port Authority*, 604 S.W.2d 592, 598 (Mo. 1980) (en banc).

[66]*Hobbs v. Jones*, --- S.W.3d ---, No. 11-1128, 2012 WL 2362712 (Ark. Jun. 22, 2012).

[67]*E.g.*, *Menorah Medical Center v. Health and Educational Facilities Authority*, 584 S.W.2d 73, 84 & n.3 (Mo. 1979) (en banc) (citing, inter alia, *McArthur v. Smallwood*, 225 Ark. 328, 281 S.W.2d 428, 431 (1955), and *Holmes v. Cheney*, 234 Ark. 503, 352 S.W.2d 943, 946 (1962), in nondelegation case).

[68]*Hobbs*, 2012 WL 2362712, at *10-*16.

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/27/12   Page 36 of 45

law as opposed to broadly making the law.[69]  The two states have all but identical

guarantees of separated powers.[70]  And, of the two lethal-injection statutes at issue, it is

Missouri's that purports to confer far broader legislative authority.  Mo. Rev. Stat.

§ 546.720.1 would permit defendant Lombardi to select **any** method of "lethal injection"

or "lethal gas," so long as the execution takes place within a prison and outside the

public's view.  Arkansas's "Method of Execution Act" actually required lethal

injection;[71] but the Arkansas Supreme Court held it unconstitutional because it allowed

the department of corrections to select any chemical or chemicals it wished to, without

any standards to guide that choice.[72]  Such standards are likewise absent from

---

[69]*Id.* at *10 ("We have held that [t]he true distinction is between the delegation of power to make the law, which necessarily involves the discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and in pursuance of the law.  The first can not be done.  To the latter no valid objection can be made,'" quoting *Terrell v. Loomis*, 235 S.W.2d 961, 963 (Ark. 1951)).

[70]*Compare* Mo. Const. art. II, § 1 ("The powers of government shall be divided into three distinct departments--the legislative, executive and judicial--each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted."), *with* Ark. Const. art. IV, §§ 1-2 ("The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to-wit: Those which are legislative, to one, those which are executive, to another, and those which are judicial, to another. . . . No person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.").

[71]Ark. Code Ann. § 5-4-617(a) (Supp. 2011).

[72]*Hobbs*, 2012 WL 2362712, at *13-*15.

Missouri's statute, despite the constitutional requirement for them.[73]  Defendants insist that other state courts have rejected similar arguments (Doc. No. 3 at 12); but other states have other state constitutions, other state-law precedents, and any other state's decisions are therefore distinguishable.

Whereas the United States Constitution embodies one version of separation of powers as between the three branches of the federal government, it does not mandate any one version of this doctrine as a requirement on the state governments.  The Eighth and Fourteenth Amendments set a nationwide ceiling on the quantum of pain in a state's executions; but the distribution of lawmaking power between the three branches of government is a subject on which the Constitution and the caselaw construing it allow for variance according to the desires of the people of each state.  Just as a state may have a more protective reading of the words "cruel and unusual punishments," it may impose requirements of express legislative action in order for state law to be thus-and-so which the federal courts would not impose on Congress.

> **B.**     **Defendants have failed to plead a plausible basis for enforcing any estoppel against the plaintiffs' assertion of their state constitutional grievance based on an intervening change of law.**

Defendants do not say what type of estoppel they seek to invoke, nor do they cite any law in support of it.  It is a throw-away argument, and that is precisely what this Court should do with it.

---

[73]*See Wagner*, 604 S.W.2d at 599-600.

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/29/12   Page 38 of 45

The most obvious problem with the defendants' "estoppel" theory is that is that only one of the twenty-one plaintiffs here, Michael Anthony Taylor, was a party to the previous litigation. And as to this count of the pending action, Mr. Taylor's case and this one are completely dissimilar. In *Taylor*, another division of this Court responded to challenges by Michael Taylor to the way defendants' predecessors in office conducted lethal injections in Missouri. Among the flaws the district court found were that a dyslexic surgeon varied the quantity of sodium thiopental he administered when he was supposed to be rendering the condemned man unconscious before the pancuronium bromide made it impossible for him to communicate his pain.[74] In response, ***the district court required*** the defendants to submit a written protocol. In objecting to being required to prepare a written protocol as the Court directed them, the *Taylor* defendants did not argue that they lacked the power to do so under the state constitution.[75]

Neither Mr. Taylor nor this Court ever accepted the defendants' three-chemical protocol: on appeal, Mr. Taylor defended the district court's ***rejection*** of the protocol (initially filed July 14, 2006), as putting in writing—for the district court's review—what

---

[74]*Taylor v. Crawford*, 487 F.3d 1072, 1075 (8th Cir. 2007), *cert. denied*, 553 U.S. 1004 (2008).

[75]*Taylor v. Crawford*, No. 2:05-CV-04173-FJG, Doc. No. 198.

the *Taylor* defendants intended to do.[76]  This Court found the draft protocol

insufficient,[77] but the defendants refused to alter it in response to the Court's order.[78]  In

the end, the Eighth Circuit upheld the defendants' conduct on the basis of the protocol.

*Taylor* arose under the Eighth and Fourteenth Amendments, and the precise issue on

appeal was whether the district court had exceeded ***its*** remedial jurisdiction in rejecting

a previous version of the protocol on which the Eighth Circuit relied.  Here, the

question is whether defendant Lombardi had the power as a matter of state law to issue

a new (lidocaine-propofol) protocol ***changing*** the chemicals and other essential facts

from the protocol which his predecessor in office adopted only by order of a federal

court and approved by the Eighth Circuit on the basis of the protocol this Court ordered

the Taylor defendants to produce but that neither this Court nor Mr. Taylor accepted.

 In *Taylor*, therefore, the director of the Department of Corrections was under a

duty to act per an order of this Court, issued to enforce the Eighth and Fourteenth

Amendments as the district judge understood them.  He had not undertaken to create a

new protocol varying from what the Court ordered him to do.  The instant case and

*Taylor* are ships crossing in the night.

---

 [76]*See Taylor v. Crawford*, No. 2:05-CV-04173-FJG, Doc. No. 198 & Exhibit A.  *See generally* No. 06-3651 (8th Cir. Jan. 2, 2007), Brief of Appellee, at 45-49.

 [77]*Taylor v. Crawford*, No. 2:05-CV-04173-FJG, 213 (W.D. Mo. Sept. 12, 2006).

 [78]*Id.*, Doc. No. 217 (W.D. Mo. Oct. 6, 2006).

Taken alone, the lack of identity of the issues and parties would be fatal to any serious application of any legally-recognized doctrine of estoppel. In addition, the intervening change of law reflected in the adjacent-state Arkansas Supreme Court's *Hobbs* decision under substantially the same state constitutional language would render any application of judicial estoppel inequitable if not unconscionable.

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/29/12   Page 41 of 45

## Conclusion

WHEREFORE, the plaintiffs pray the Court

(1)  for its order that the pending motion to dismiss (Doc. No. 3) be denied, or, in the alternative,

(2)  if the Court were to determine that there are pleading deficiencies in the plaintiffs' petition, for leave to amend the petition to correct those deficiencies, or, in the alternative,

(3)  for leave to conduct discovery to meet the defendants' assertions of fact not included in the plaintiffs' petition.[79]

Respectfully submitted,

/s/ John William Simon

| | |
|---|---|
| Joseph W. Luby, Mo. 48951 | John William Simon, Mo. 34535 |
| Death Penalty Litigation Clinic | Constitutional Advocacy, L.L.C. |
| 6155 Oak Street, Suite C | 7801 Delmar Blvd, Suite 201 |
| Kansas City, Missouri  64113 | St. Louis, Missouri  63130-4106 |
| 816-363-2795 • FAX 816-363-2799 | 314-645-1776 • FAX 314-754-2605 |
| *Counsel for Plaintiffs Winfield* | *Counsel for Plaintiffs Bucklew,* |
| *and Cole* | *Ringo, and M.A. Taylor* |
| | |
| Elizabeth Unger Carlyle, Mo. 41930 | Cheryl Ann Pilate, Mo. 42266 |
| P.O. Box 30418 | Morgan Pilate LLC |
| Kansas City, Missouri  64112 | 142 North Cherry |
| 816-525-6540 • FAX 866-764-1249 | Olathe, Kansas  66061 |
| *Counsel for Plaintiffs Barnett,* | 913-829-6336 • FAX 913-829-6446 |
| *Clayton, L. Taylor, and Zink* | *Counsel for Plaintiffs Bucklew and* |
| | *Smulls* |

---

[79]This prayer for alternative relief is without prejudice to the plaintiffs' entitlement to proceed with discovery generally.

Charles M. Rogers, Mo. 25539
Wyrsch Hobbs & Mirakian, P.C.
1000 Walnut, Suite 1600
Kansas City, Missouri 64106
816-221-0080 • FAX -816-221-3280
*Counsel for Plaintiff Smulls*

Jennifer Herndon, Mo. 37921
224 Hwy 67 North, # 122
Florissant, Missouri 63031
314-831-5531 • FAX 314-831-5645
*Counsel for Plaintiffs Franklin,*
*Ferguson, Goodwin,*
*Nicklasson, Nunley,*
*and Storey*

Michael J. Gorla, Mo. 26399
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
314-621-1617 • FAX (314) 621-7448
*Counsel for Plaintiffs Ferguson,*
*Goodwin, and Nunley*

Susan M. Hunt, Mo. 36130
819 Walnut
Kansas City, Missouri 64106
816-221-4588 • FAX 816-220-0856
*Counsel for Plaintiff Clayton*

Gary E. Brotherton, Mo. 38990
Legal Writes, LLC 640
601 West Nifong Blvd.
Building 1, Suite C
Columbia, Missouri 65203
573-875-1571 • FAX 573-875-1572
*Counsel for Plaintiff L. Taylor*

Kevin L. Schriener, Mo. 35490
Law & Schriener, LLC
141 N. Meramec Ave. # 314

Lowell D. Pearson, Mo. 46217
Husch Blackwell LLP
235 East High Street
Jefferson City, Missouri 65102-1251
573-761-1115 • FAX 573-634-7854
*Counsel for Plaintiff Clemons*

Richard H. Sindel, Mo. 23406
Kathryn B. (Kay) Parish #61781
Sindel Sindel & Noble, P.C.
8000 Maryland, Suite 350
Clayton, Missouri 63105
314-721-6040 • FAX -314-721-8545
*Counsel for Plaintiffs Barnett,*
*Middleton, Ringo, and Zink*

Eric W. Butts, Mo. 36184
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
314-621-1617 • FAX 314-621-7448
*Counsel for Plaintiffs Christeson*
*and Rousan*

S. Paige Canfield, Mo. 36777
3889 Juniata
St. Louis, Missouri 63116
314-664-7635 • *canfieldlaw@yahoo.com*
*Counsel for Plaintiffs Franklin*
*and Nicklasson*

Phillip M. Horwitz, Mo. 38493
640 Cepi, Suite A
Chesterfield, Missouri 63005
636-536-9644 • FAX 636-536-7729
*Counsel for Plaintiffs Christeson*
*and Rousan*

Jessica E. Sutton, Mo. 63660
Death Penalty Litigation Clinic
6155 Oak Street, Suite C

Clayton, Missouri  63105-3705
314-480-3389 • FAX 314-863-7096
*Counsel for Plaintiff Storey*

Gino F. Battisti, Mo. 33148
Foley & Mansfield, PLLP
1001 Highlands Plaza Dr. W. # 400
St. Louis, Missouri  63110
314-925-5700 • FAX 314-925-5701
*Counsel for Plaintiff Worthington*

Kansas City, Missouri  64113
816-363-2795 • FAX 816-363-2799
*Counsel for Plaintiff Cole*

Kent E. Gipson, Mo. 34524
121 E. Gregory Boulevard
Kansas City, Missouri  64114
816-363-4400 • *kent.gipson@kentgipsonlaw.com*
*Counsel for Plaintiff Worthington*

Case 2:12-cv-04209-NKL   Document 9-1   Filed 08/27/12   Page 44 of 45

## Certificate of Service

I hereby certify a true and correct copy of the foregoing was forwarded for transmission via Electronic Case Filing (ECF) this twenty-seventh day of August 2012, to the offices of:

> Stephen David Hawke, Esq.
> Michael Joseph Spillane, Esq.
> Assistant Attorneys General
> P.O. Box 899
> Jefferson City, Missouri  65102

> /s/ John William Simon
> *Attorney for Plaintiffs Bucklew,*
> *Ringo, and M.A. Taylor*