**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION**

| | | |
|---|---|---|
| DAVID ZINK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:12-CV-4209-NKL |
| | ) | |
| GEORGE A. LOMBARDI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This case involves a challenge by twenty-one Plaintiffs, prisoners on death row in Missouri, to the execution protocol issued by the Missouri Department of Corrections on May 15, 2012. Plaintiffs filed a petition for declaratory and injunctive relief on June 26, 2012, and Defendants removed to federal court on August 1, 2012. Pending before the Court is Plaintiffs' Motion to Remand [Doc. # 6]. For the reasons set forth below, Plaintiff's Motion is DENIED.

## I. Background

Plaintiffs, twenty-one prisoners under sentence of death due to convictions for first degree or capital murder in the state courts of Missouri, bring suit against the following Defendants in their official capacity: George Lombardi, Director of the Missouri Department of Corrections; David Dormire, Director of the Division of Adult Institutions at the Missouri Department of Corrections; Terry Russell, Warden of the Eastern Reception Diagnostic & Correctional Center, where Missouri executions are currently conducted; and John Does 2-40, Anonymous Executioners for the state of Missouri.

Plaintiffs allege that the execution protocol issued by Defendant Lombardi on May 15, 2012, stating that executions shall be carried out via injection of 2 g of the anesthetic propofol and 10 cc of the pain-suppressant lidocaine, violates the state and federal Constitutions by creating an unprecedented, substantial likelihood of foreseeable infliction of excruciating pain during execution. Count I alleges that this method of execution, the first of its kind, violates the prohibition on cruel and unusual punishments of the Eighth and Fourteenth Amendments and the Missouri Constitution, Art. I § 21, by inflicting unconscionable pain without reliable mitigation. Count II alleges that administering lidocaine without a prescription, as required by the Food, Drug & Cosmetic Act, violates the Supremacy Clause of the United States Constitution, Art. VI clause 2. Count III alleges that application of the newly promulgated protocol to Plaintiffs violates the *ex post facto* Clauses of the Missouri Constitution, Art. I § 13, and the United States Constitution, Art. I § 10, by creating a significant risk of increased punishment. Finally, Count IV alleges that Missouri statute § 546.720, which authorizes Defendant Lombardi to prescribe the means by which the Department of Corrections carries out executions by lethal injection or lethal gas, violates the separation of powers guaranty of the Missouri Constitution, Art. II § 1.

Plaintiffs have moved to remand to state court on the grounds that this case merits the exercise of federal court abstention.

## II. Discussion

### A. Pullman Abstention

In "exceptional circumstances," when the state law is unclear, a federal court may abstain from deciding cases that are based on both federal and state law claims. *Allegheny County v. Frank Mashuda Co*., 360 U.S. 185, 189, 79 S. Ct. 1060, 1063 (1959); *Railroad Comm'n of Texas v. Pullman Co*., 312 U.S. 496 (1941). For such "Pullman abstention" to be appropriate, two conditions must be met. First, there must be substantial uncertainty or ambiguity as to the meaning of a potentially controlling state law. *Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S. Ct. 507, 511 (1971); *Robinson v. City of Omaha, Neb*., 866 F.2d 1042 (8th Cir. 1989). Second, there must be a reasonable possibility that the state court's clarification of state law would obviate the need for a ruling on the federal constitutional issue. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244 (1976); *see also Bellotti v. Baird*, 428 US 132, 146-47 (1976). The purpose of abstention is twofold; on the one hand, to show respect for the principle of federal-state comity, and on the other, to minimize unnecessary Constitutional rulings. *See, e.g., County of Allegheny*, 360 U.S. at 189, 79 S. Ct. at 1063.

Abstention, however, is "the exception, not the rule." *Colorado River Water Conservation Dist*., 424 U.S. at 813, 96 S. Ct. at 1244. Abstention is not appropriate merely because the state has not yet considered the law's constitutionality under the state's constitution. *Constantineau*, 400 U.S. at 439, 91 S. Ct. at 511. Where the state and federal Constitutions are identical, abstention is not required. *Reetz v. Bozanich*, 397 U.S. 82 (1970). However, where the state constitutional provision is different and unique, or extends protection beyond what the federal constitution affords, abstention

may be proper. *Id.*; *see also Fields v. Rockdale County*, 785 F.2d 1558, 1562 (11th Cir. 1986).

Plaintiffs argue that the lethal injection statute: 1) violates the separation of powers principles of Article II § 1of the Missouri Constitution; 2) operates as a retrospective law in violation of Article I § 13 of the Missouri Constitution; 3) violates the ban on cruel and unusual punishment of Article I § 21 of the Missouri Constitution. [Doc. # 6] It is clear that these state law claims, if decided in favor of the Plaintiffs, would ameliorate the need for a federal Constitutional ruling. However, to satisfy the high standards required for Pullman abstention, the meaning of the state laws in question must also be substantially uncertain or ambiguous, or the state constitutional provisions unique. In cases of ambiguous or unique state law, federal courts should abstain in order to avoid causing "needless friction with state policies." *Pullman Co.,* 312 U.S. at 500, 61 S. Ct. at 645; *see also Reetz,* 397 U.S. at 87, 90 S. Ct. at 790. The Court finds that state constitutional jurisprudence on the above provisions is not so unique or ambiguous as to justify abstention in this case.

1**.** ***Separation of Powers Claim***

Article II § 1 of the Missouri Constitution states,

> The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in instances in this constitution expressly directed or permitted.

The Missouri Supreme Court has well developed case law on the subject of unconstitutional delegations of power to executive branch officials. Although "a legislative body cannot delegate its authority," the Court has held that "it may empower certain officers, boards and commissions to carry out in detail the legislative purposes and promulgate rules by which to put in force legislative regulations." *Auto. Club of Mo. v. City of St. Louis*, 334 S.W.2d 355, 358 (Mo. 1960). This is particularly so where the executive agency possesses special expertise. *State Tax Comm'n v. Admin. Hearing Comm'n*, 641 S.W.2d 69, 74 (Mo. 1982). Delegation is constitutional provided that the delegating statute or ordinance "contains sufficient criteria or guidelines" to guide the executive official's decision-making. *Ruggeri v. City of St. Louis*, 441 S.W.2d 361, 363 (Mo. 1969); *see also Auto. Club of Mo.*, 334 S.W.2d at 358. Conversely, an ordinance or statute is unconstitutional when it "attempts to clothe an administrative officer with arbitrary discretion, without a definite standard or rule for his guidance." *Porporis v. City of Warson Woods*, 352 S.W.2d 605, 607 (Mo. 1962) (internal quotes omitted); *see also Howe v. City of St. Louis*, 512 S.W.2d 127, 133 (Mo. 1974). However, "as a qualification of the general rule," the Court has held that where an executive official requires flexible discretion for the exercise of police regulations for the protection of the public, such delegation may be valid. *Milgram Food Stores, Inc. v. Ketchum*, 384 S.W.2d 510, 514 (Mo. 1964). Regarding the delegation of law-making functions in particular, the Court has recognized that "the duty and power to define crimes and ordain punishment is exclusively vested in the legislature," *State v. Brown*, 660 S.W.2d 694, 698 (Mo. 1983), but that "the General Assembly, having established a sufficiently definite

policy, may authorize an administrative officer to make rules, regulations or orders relating to the administration of enforcement of the law." *State v. Cushman*, 451 S.W.2d 17, 20 (Mo. 1970).

Given the extensive case law interpreting the Missouri Constitution's separation of powers provision, including the scope permissible discretionary decision-making by executive officials, a federal court will have sufficient guidance to address Plaintiff's state law claim. Therefore, abstention on the basis of the Art. II § 2 claim is inappropriate.

**2. *Ex Post Facto Claim***

Case law on the Missouri Constitution's *ex post facto* clause is also quite extensive, and is not unclear or ambiguous. Article I § 13 of the Missouri Constitution states

> That no *ex post facto* law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted.

The Supreme Court of Missouri has defined *ex post facto* laws as those that "are retroactive and that either alter the definition of crimes or increase the punishment for criminal acts already committed." *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 136 (Mo. 1995); *see also F.R. v. St. Charles County Sheriff's Dep't*, 301 S.W.3d 56, 63 (Mo. 2010) ("A new criminal law operates retrospectively if it changes the legal effect of a past conviction."). The Supreme Court of Missouri has stated that the state constitution's prohibition on retrospective laws is "broader than the federal proscription of *ex post facto* laws," prohibiting a law that "creates a new obligation, imposes a new

duty, or attaches a new disability with respect to transactions or considerations already past." *Rentschler v. Nixon*, 311 S.W.3d 783, 788 (Mo. 2010), *as modified on denial of reh'g* (May 11, 2010). In addition to applying to laws enacted by the legislature, the *ex post facto* clause also applies "to an agency's duly-promulgated substantive regulations" (although not an agency's written or unwritten policies or procedures). *Miller v. Mitchell*, 25 S.W.3d 658, 663 (Mo. Ct. App. 2000).

However, aside from its application to substantive agency regulations, the difference between the federal and state *ex post facto* clauses does not appear to be significant. The Supreme Court of Missouri has adopted the definition of "*ex post facto*" used by the United States Supreme Court. *See State ex rel. Cavallaro*, 908 S.W.2d at 136 (citing *California Dep't of Corr. v. Morales*, 514 U.S. 499, 504, 115 S. Ct. 1597, 1601 (1995)). Additionally, Missouri state courts regularly cite to federal constitutional cases when interpreting the state provision. *See, e.g.*, *Fults v. Missouri Bd. of Prob. & Parole*, 857 S.W.2d 388, 391 (Mo. Ct. App. 1993); *Miller*, 25 S.W.3d at 663; *Brown*, 912 S.W.2d at 645. Therefore, apart from the fact that the state *ex post facto* prohibition extends to regulation as well as legislation, the *ex post facto* clause of the Missouri Constitution is not so unique or ambiguous as to justify abstention.

### 3. *Cruel and Unusual Punishment Claim*

The Plaintiffs' final state claim is brought under the prohibition on cruel and unusual punishment in the state constitution. Article I § 21 of the Missouri Constitution reads in its entirety, "That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." The Missouri Constitution's ban

on cruel and unusual punishment is coextensive with that of the Eighth Amendment; as the Supreme Court of Missouri stated, "This Court follows the approach announced in *Harmelin v. Michigan*…, which clarified that reviewing courts are to determine, as a threshold matter, whether a sentence is 'grossly disproportionate'" to the crime committed. *State v. Pribble*, 285 S.W.3d 310, 314 (Mo. 2009) (quoting *Harmelin*, 501 U.S. 957, 995, 111 S. Ct. 2680, 2701 (1991)); *see also State v. Newlon*, 627 S.W.2d 606, 612 (Mo. 1982), *overruled on other grounds by State v. Carson*, 941 S.W.2d 518 (Mo. 1997) (stating that "we refused to extend the reach of Art. I, s 21" beyond the federal scope); *Burnett v. State*, 311 S.W.3d 810, 814 (Mo. Ct. App. 2009). Case law on the application of the *ex post facto* clause under the Missouri Constitution is therefore neither ambiguous nor unique, and so abstention on the basis of this state law is not appropriate.

Because the state constitutional claims brought by Plaintiffs involve state law that is clear and unambiguous, and does not involve unique state constitutional provisions, Pullman abstention is not proper.

**B. Burford Abstention**

Abstention may also be appropriate as an exercise of judicial discretion "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361, 109 S. Ct. 2506, 2514, 105 L. Ed. 2d 298 (1989) (quoting

*Colorado River Water Conservation Dist*., 424 U.S. at 814, 96 S. Ct. at 1245) (internal quotes omitted); *see also Burford v. Sun Oil Co*., 319 U.S. 315, 63 S. Ct. 1098 (1943). The purpose of this " Burford abstention" is to ensure that where complex state regulations have been created in order to achieve "uniformity in the treatment of an 'essentially local problem,'" states are protected from federal interference. *Id*. (quoting *Alabama Pub. Serv. Comm'n v. S. Ry. Co*., 341 U.S. 341, 347, 71 S. Ct. 762, 767 (1951)). The Eighth Circuit has applied Burford abstention "when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws." *Casey v. F.D.I.C*., 583 F.3d 586, 592 (8th Cir. 2009) (quoting *Melahn v. Pennock Ins., Inc*., 965 F.2d 1497, 1506 (8th Cir.1992) (holding that Missouri's prohibition on the unauthorized practice of law did not constitute a complex regulatory scheme for the purposes of Burford abstention); *see also Heartland Hosp. v. Stangler*, 792 F. Supp. 670, 672 (W.D. Mo. 1992) (holding that Burford abstention was justified because "state by state regulation of Medicaid reimbursement was an area of comprehensive state regulation based upon predominantly local factors.").

There is no complex regulatory scheme governing Missouri's execution protocol; in fact, Plaintiffs' delegation complaint is based on the very lack of regulation governing Defendant Lombardi's discretion over the lethal injection procedure. Additionally, as discussed above, there is nothing particularly difficult or abstruse about the state law in question. Furthermore, there is no indication that a federal court's ruling on the state constitutionality of the method of execution will disrupt Missouri's efforts to establish a

coherent policy in this matter. For these reasons, the Court finds that Burford abstention is likewise inappropriate in this case.

## III. Conclusion

On the basis of the above analysis, the Plaintiffs' Motion to Remand [Doc. # 6] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: October 9, 2012
Jefferson City, Missouri