# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| DAVID ZINK, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 2:12-CV-4209-NKL |
| GEORGE A. LOMBARDI, et al., | ) |
| Defendants. | ) |

## ORDER

This case involves a challenge by twenty-one Plaintiffs, prisoners on death row in Missouri, to the execution protocol issued by the Missouri Department of Corrections on May 15, 2012. Plaintiffs filed a petition for declaratory and injunctive relief on June 26, 2012, and Defendants removed to federal court on August 1, 2012. Pending before the court is Defendants' Motion to Dismiss [Doc. # 3]. For the reasons set forth below, the Motion to Dismiss is DENIED in part and GRANTED in part.

## I.    Background

Plaintiffs, twenty-one prisoners under sentence of death due to convictions for first degree or capital murder in the state courts of Missouri, bring suit against the following Defendants in their official capacity: George Lombardi, Director of the Missouri Department of Corrections; David Dormire, Director of the Division of Adult Institutions at the Missouri Department of Corrections; Terry Russell, Warden of the Eastern Reception Diagnostic & Correctional Center, where Missouri executions are currently conducted; and John Does 2-40, Anonymous Executioners for the state of Missouri.

1

Plaintiffs allege that the execution protocol issued by Defendant Lombardi on May 15, 2012, which mandates execution via injection of 2 g of the anesthetic propofol and 10 cc of the pain-suppressant lidocaine, violates the state and federal Constitutions by creating an unprecedented, substantial likelihood of foreseeable infliction of excruciating pain during execution.  Count I alleges that this method of execution, the first of its kind, violates the prohibition on cruel and unusual punishments of the Eighth and Fourteenth Amendments and the Missouri Constitution, Art. I § 21, by inflicting unconscionable pain without reliable mitigation.  Count II alleges that administering lidocaine without a prescription, as required by the Food, Drug & Cosmetic Act, violates the Supremacy Clause of the United States Constitution, Art. VI clause 2.  Count III alleges that application of the newly promulgated protocol to Plaintiffs violates the *Ex post facto* Clauses of the Missouri Constitution, Art. I § 13, and the United States Constitution, Art. I § 10, by creating a significant risk of increased punishment.  Finally, Count IV alleges that Missouri statute § 546.720, which authorizes Defendant Lombardi to prescribe the means by which the Department of Corrections carries out executions by lethal injection or lethal gas, violates the separation of powers guaranty of the Missouri Constitution, Art. II § 1.

Defendants have moved to dismiss for failure to state a claim.

## II. Discussion

### A. Facts

The facts in this section are taken from Plaintiffs' Complaint and attached documentation [Doc. # 1].  Plaintiffs allege that 1) propofol causes pain on injection in

the overwhelming majority of instances, even as used in ordinary medical practice; 2) the defendants' protocol calls for a rapid injection of a massive dosage of propofol far exceeding what is used in surgical settings; and 3) the lidocaine defendants plan to inject will not provide sufficient or reliable mitigation of the pain caused by the propofol.

In support of these allegations, Plaintiffs have submitted the sworn affidavit of Dr. Mark Heath, Assistant Professor of Clinical Anesthesiology at Columbia University. Dr. Heath attests that although propofol is widely used to induce general anesthesia, a subset of patients experience significant pain at the time of injection. Dr. Heath also states that the two grams of propofol called for in the new lethal injection protocol is fifteen times the dose normally given to adult patients to induce anesthesia. He avers that as it is unlikely that a dosage this large has ever been deliberately injected into a conscious person, clinical studies documenting the severity of pain caused by this amount of propofol have likely not been performed. Dr. Heath also attests that based on his research, the Missouri Department of Corrections is the first and currently only such entity to propose the administration of propofol in lethal injections.

Plaintiffs also include in their pleadings a peer-reviewed article, *Prevention of pain on injection of propofol: systematic review and medical analysis*, by L. Jalota, et al., published by the British Medical Journal in 2011. According to this article, the overall risk of pain caused by propofol injection is 60%. Although the article states that lidocaine has been effective in reducing this pain, Dr. Heath avers that the amount of lidocaine called for in the protocol is not sufficient to reliably prevent the occurrence of pain from such a large dose of propofol.

In addition, Plaintiffs submit the deposition of Dr. Mark Dershwitz taken in the case of *Jackson v. Danberg*, in the District Court of Delaware. Dr. Dershwitz was the expert used by the Missouri Department of Corrections in the lethal injection challenge presented in *Taylor v. Crawford*, 487 F.3d 1972, 1076 (8th Cir. 2007). In his deposition in the Delaware case, Dr. Dershwitz testified that propofol causes pain in two-thirds to three-quarters of patients, and that a subset of patients "literally scream at the top of their lungs as they are falling asleep" because "propofol burns." [Doc. # 1, Ex. 4].

Finally, Plaintiffs contend that Defendants know, or in the exercise of reasonable diligence should know, that propofol causes pain and that the amount of lidocaine in the protocol is insufficient to anesthetize Plaintiffs from that pain.

### B. Standard of Review

To survive a motion to dismiss, a pleading must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For the purposes of a motion to dismiss, a court is required to construe the allegations in a complaint broadly and in the light most favorable to the nonmoving party. *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011). Plaintiffs must assert sufficient facts in their pleading that, if accepted as true, would "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *see also Northstar Indus., Inc. v. Merrill Lynch & Co., Inc.*, 576 F.3d 827, 832 (8th Cir. 2009). District courts should rely on their own "judicial experience and common sense" in making the "context-specific" determination of whether factual allegations make a right to relief plausible. *Ashcroft v. Iqbal*, 556 U.S.

662, 679, 129 S. Ct. 1937, 1950 (2009). A complaint that fails to satisfy these requirements may be dismissed for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> **C.** **Discussion**
>> **1.** *Eighth Amendment*

Defendants contend that Plaintiffs fail to state a claim under the Eighth Amendment because they have not alleged facts that present an objectively intolerable risk of harm.

There are two components to an Eighth Amendment challenge, which is applied to the States through the Fourteenth Amendment: "First, the punishment must not involve the unnecessary and wanton infliction of pain. Second, the punishment must not be grossly out of proportion to the severity of the crime." *Taylor v. Crawford*, 487 F.3d 1072, 1079 (8th Cir. 2007). The Eighth Circuit has concluded that an "unnecessary *risk* of causing the wanton infliction of pain" may satisfy the first prong. *Taylor v. Crawford*, 487 F.3d 1072, 1079 (8th Cir. 2007). A plurality of the Supreme Court has similarly held that "subjecting individuals to a risk of future harm—not simply actually inflicting pain—can qualify as cruel and unusual punishment," but that "the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Baze v. Rees*, 553 U.S. 35, 49-50, 128 S. Ct. 1520, 1530-31 (2008) (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34–35, 113 S. Ct. 2475 (1993)) (emphasis in original); *see also Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). When assessing the constitutionality of a written lethal injection protocol,

5

the court must determine whether it "presents a substantial risk of inflicting unnecessary pain." *Nooner v. Norris*, 594 F.3d 592, 599 (8th Cir. 2010) *cert. dismissed*, 130 S. Ct. 2432 (U.S. 2010), *cert. denied*, 131 S. Ct. 569 (U.S. 2010) (quoting *Taylor*, 487 F.3d at 1080).

Defendants read Plaintiffs' complaint to assert that the risk of pain must be zero under the Eighth Amendment. However, Plaintiffs do not make that claim. Rather, Plaintiffs allege that the Department of Corrections' protocol creates a substantial, objectively intolerable risk of severe pain. They have offered expert affidavits attesting that pain experienced as a result of the injection of propofol is widely acknowledged by the medical community, and that whereas lidocaine has been found to mitigate this pain, it is unlikely to be effective here given the untoward amount of propofol the protocol requires. In contrast to the lethal injection protocols challenged in recent similar litigation, the Plaintiffs' challenge addresses the risk of pain inherent in the execution method itself, not the risk of pain that could possibly result from maladministration of the protocol. *See, e.g.*, *Baze*, 553 U.S. at 49; *Clemons v. Crawford*, 585 F.3d 1119, 1127 (8th Cir. 2009); *Nooner*, 594 F.3d at 603; *Taylor*, 487 F.3d at 1080. As the Eighth Circuit has explained, "The cruelty against which the Constitution protects a convicted man is cruelty inherent in the method of punishment . . . " *Taylor*, 487 F.3d at 1080 (quoting *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 464, 67 S. Ct. 374, 376 (1947) (plurality opinion)). Unlike *Taylor*, in the instant case there is no admission by Plaintiffs that if the procedure is properly administered, the risk of pain is virtually nil. *Id*. at 1083.

Defendants also assert that Plaintiffs have failed to offer a reasonable alternative to propofol, citing *Baze*. However, Plaintiffs are not required to propose an alternative method of execution as an element of their Eighth Amendment claim. The Chief Justice's opinion in *Baze* simply stated that where the contested method creates a substantial risk of serious harm and the plaintiffs proffer a feasible, readily-implemented alternative, the state's refusal to adopt the alternative may constitute "cruel and unusual punishment" under the Eighth Amendment. *Baze v. Rees*, 553 U.S. 35, 52, 128 S. Ct. 1520, 1532. There is no requirement that Plaintiffs propose an alternative as part of their pleadings.

Plaintiffs have pled sufficient facts that, taken as true, indicate that a substantial risk of pain is likely to result from administration of the propofol-lidocaine cocktail. As such, dismissal prior to discovery is improper.

### 2. *Supremacy Clause Claim*

In their second claim, Plaintiffs allege that the use of lidocaine in the execution protocol is not prescribed by a doctor in contravention to the Food, Drug & Cosmetic Act ("FDCA"), and is therefore a violation of the Supremacy Clause. Both parties acknowledge, however, that the Food, Drug & Cosmetic Act ("FDCA") does not provide a private right of action to enforce the terms of the FDCA. Yet Plaintiffs seek a declaratory judgment that the execution protocol adopted by Defendants which uses a drug that has not been prescribed pursuant to Missouri statutory authority conflicts with the FDCA, and therefore violates the Supremacy Clause. The Court need not address the

viability of such a claim which is questionable, because it finds the Plaintiffs have no standing to raise it.

### a. Standing

Defendants assert that Plaintiffs lack standing to bring their Supremacy Clause claim. A plaintiff has standing when she has a) suffered a "concrete and particularized" injury, which is b) "actual or imminent, not conjectural or hypothetical," and c) "fairly traceable to the challenged action of the defendant" such that limiting the defendant will remedy the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (internal quotes omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561, 112 S. Ct. at 2137.

Defendants contend that Plaintiffs have not shown injury because they have not alleged that lidocaine causes pain or any other injury. The Court agrees. This is not a case where the prescription drug is being used to cause death or that the administration of the drug requires supervision by a physician to avoid an unintended result. The only allegation is that the lidocaine is not sufficient to prevent pain under these circumstances. But that merely suggests that another drug should be used, not that the use of lidocaine is causing injury because it is not prescribed. In addition, Plaintiffs have not suggested that another doctor would in fact choose a different pain killer which would be sufficient to meet the pain concerns that they raise. Likewise, they have not alleged that if the drug were prescribed, a doctor would increase the dose of lidocaine to address the concerns raised by the Plaintiffs. In other words, Plaintiffs have not raised any facts to show that

8

the absence of a prescription is somehow responsible for the wrong drug or dose being chosen.

As previously said, district courts should rely on their own "judicial experience and common sense" in making the "context-specific" determination of whether factual allegations make a right to relief plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009). With that in mind, Plaintiffs' Supremacy Clause claim is dismissed.

### 3. *Prohibition on Ex Post Facto or Retrospective Laws*

Plaintiffs argue that changing from the three-chemical sequence previously used in Missouri executions to the lidocaine-propofol protocol would increase the likelihood of excruciating pain experienced by Plaintiffs, and therefore constitutes an increased punishment in violation of the federal and state *ex post facto* prohibitions and Missouri's retrospective operation prohibition. U.S. Const. Art. I § 9, cl. 3, and Art. I, § 10 cl. 1; Mo. Const. Art. I, § 13. Defendants contend that Plaintiffs have failed to state an *ex post facto* claim on the ground that a change in method of execution cannot be a violation of the *ex post facto* clause.

An *ex post facto* penal law is one that retroactively "disadvantages the offender affected by [it]." *Collins v. Youngblood,* 497 U.S. 37, 41 (1990). In other words it is a change in the law post-conviction that disadvantages the defendant. *R.W. v. Sanders*, 168 S.W.3d 65, 68 (Mo. 2005) (quoting *Cooper v. Mo. Bd. of Prob. & Parole*, 866 S.W.2d 135, 137–38 (Mo. banc 1993)); *see also Williams v. Hobbs*, 658 F.3d 842, 848 (8th Cir. 2011) *cert. dismissed*, 2012 WL 1803326 (U.S. Sept. 20, 2012) (internal quotes omitted)

9

(Holding that to state an *ex post facto* claim, the prisoner must allege that a new law or regulation "creates a significant risk of increased punishment.").

Defendants rely on two cases, *Malloy v. S. Carolina,* 237 U.S. 180, 185, 35 S. Ct. 507, 509 (1915), and *State v. Brown,* 112 S.W.2d 568, 571 (Mo. 1937), to support their claim that a change in method of execution does not violate the *ex post facto* clause. In *Malloy*, the Supreme Court noted that the statute changing the method of execution from hanging to electrocution "did not change the penalty – death – for murder, but only the mode of producing this . . . . The punishment was not increased, and some of the odious features incident to the old method were abated." *Malloy*, 237 U.S. at 185, 35 S. Ct. at 509. The Court emphasized that the purpose of the change of execution method in *Malloy* was to find "the most humane and practical method of inflicting the death sentence." *Id*. Similarly, when Missouri changed the execution method from hanging to lethal gas for the purpose of providing a more "humane" death penalty, the Supreme Court of Missouri asked, "why should the new statute not apply to those cases pending at the time the change went into effect?... The changes are intended to be a benefit and not a detriment." *State v. Brown*, 112 S.W.2d at 571.

In contrast to *Malloy* and *Brown*, in the instant case there is no indication that the new lidocaine-propofol protocol was adopted in order to make the administration of the death penalty more "humane" or to abate "odious features incident to the old method." Taking Plaintiff's allegations as true, the Defendants' new method or execution would substantially increase the risk of pain Plaintiffs would endure. *Malloy* and *Brown*

10

therefore do not stand for the proposition that a change in method of execution cannot be a violation of the *ex post facto* clause.

Defendants also argue that there has been no change in the law because the applicable statute, Mo. Rev. Stat. § 546.720.1, has always given the Department of Corrections the responsibility to choose the protocol for an execution. However, the Supreme Court has made it clear that in some circumstances a change in a regulation or policy can be an *ex post facto* violation. There does not have to be a change in a statute. *See, Garner v. Jones,* 529 U.S. 244 (2000); *Levine v. Menifee,* 2005 WL 1384021 (S.D.N.Y. June 9, 2005). Defendants have failed to address the issues raised in *Jones*, and the Court declines to engage in that analysis *sua sponte*.

Further, the retrospective operation clause in the Missouri Constitution "is broader than the federal proscription of *ex post facto* laws." *Rentschler v. Nixon*, 311 S.W.3d 783, 788 (Mo. 2010) (en banc), *as modified on denial of reh'g* (May 11, 2010). It applies the *ex post facto* prohibition not only to laws enacted by the legislature, but also to regulations promulgated by an agency. *Miller v. Mitchell*, 25 S.W.3d 658, 663 (Mo. Ct. App. 2000); *Davis v. Kempker*, 167 S.W.3d 721, 728 (Mo. Ct. App. 2005). This is so, the court in *Miller* explained, "because in promulgating regulations, the agency is exercising delegated legislative authority; thus, the rules are as if made by the legislature." *Miller*, 25 S.W.3d at 663 (internal quotes omitted). The retrospective operation clause prohibits any law or regulation that "creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." *F.R. v. St.*

*Charles County Sheriff's Dep't*, 301 S.W.3d 56, 61 (Mo. 2010) (quoting *Squaw Creek Drainage Dist. v. Turney,* 235 Mo. 80, 138 S.W. 12, 16 (1911)).

Plaintiffs have alleged that the change in the execution protocol[1] promulgated by the Department of Corrections will result in a significant risk of increased pain compared to the prior method of execution. Taking this allegation as true and considering the arguments that have been raised by the Defendants, Plaintiffs have stated a plausible *ex post facto* claim.

### 4. *Separation of Powers*

Plaintiffs have alleged that the statutory delegation to the Department of Corrections to determine the method of execution is unconstitutional because it grants Defendants unbounded authority unconstrained by meaningful guidance from the legislature, and thus constitutes an exercise of legislative power in violation of the Missouri Constitution's guarantee of separation of powers. Article II § 1 of the Missouri Constitution states,

> The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in instances in this constitution expressly directed or permitted.

---

[1] Whether the Department of Corrections protocol is considered an alteration of "substantial personal rights" or a mere change in "modes of procedure which do not affect matters of substance," *State v. Lawhorn*, 762 S.W.2d 820, 824 (Mo. 1988), has not been raised by the Defendants, and the Court will not address it *sua sponte*.

12

Missouri's statute delegating authority to the director of the Department of Corrections to formulate death penalty policies is as follows:

> The manner of inflicting the punishment of death shall be by the administration of lethal gas or by means of the administration of lethal injection. And for such purpose the director of the department of corrections is hereby authorized and directed to provide… the necessary appliances for carrying into execution the death penalty by means of the administration of lethal gas or by means of the administration of lethal injection.

Mo. Rev. Stat. § 546.720.1.

The Missouri Supreme Court has not addressed the issue of the constitutionality of delegating the method of execution to agency officials. However, Missouri has addressed issues of delegation to executive officials in other contexts. *Lux v. Milwaukee Mechanics Ins. Co*., 322 Mo. 342, 15 S.W.2d 343 (1929) set out the "general rule" that any law "which attempts to clothe an administrative officer with arbitrary discretion, without a definite standard or rule for his guidance, is an unwarranted attempt to delegate legislative functions to such officer, and for that reason is unconstitutional." *Lux,* 15 S.W.2d at 345 (finding an ordinance unconstitutional because it gave a city official the power to condemn a building without providing guides, tests, or standards to protect the property owner from arbitrary action); *see also State v. Bridges*, 398 S.W.2d 1, 5 (Mo. 1966) (a law delegating authority "is constitutional if a definite standard is provided and no arbitrary discretion is involved."); *Menorah Med. Ctr. v. Health & Educ. Facilities Auth*., 584 S.W.2d 73, 83 (Mo. 1979) ("An ordinance or a statute which vests discretion in administrative officials must, generally stated, include standards for their guidance in order to be constitutional.") (internal quotes omitted). The standard by which the

executive officer exercises discretion need not be explicitly laid out; rather, depending on "the nature and purpose of the legislation," "the legislature may enact the basic purpose or rule, leaving matters of detail in administering the act to the board or executive, although an exercise of discretion by the latter may thus be involved." *State ex rel. Priest v. Gunn*, 326 S.W.2d 314, 320-21 (Mo. 1959); *see also Menorah Med. Ctr*, 584 S.W.2d at 83. Where a statute establishes "a sufficiently definite public policy" and "merely leaves to the director the administrative duty of filling in the details of the policy in implementation of the law," there has been no constitutional violation. *State v. Cushman*, 451 S.W.2d 17, 21 (Mo. 1970) (holding that a statute allowing the director of revenue to set the standards for protective headgear with no guidelines except that the standards be "reasonable" was constitutional). Delegation is constitutional where the executive agency possesses "particular areas of expertise," *State Tax Comm'n v. Admin. Hearing Comm'n*, 641 S.W.2d 69, 74 (Mo. 1982), or where it is impracticable to "lay[] down a definite, comprehensive rule in the legislation itself." *Priest*, 326 S.W.2d at 321 (internal quotes omitted); *see also Lux,* 15 S.W.2d at 345; *Cushman*, 451 S.W.2d at 20; *Menorah Med. Ctr*, 584 S.W.2d at 83-84; *State ex rel. Mackey v. Hyde*, 315 Mo. 681, 286 S.W. 363, 366 (1926).

Texas, Idaho, Florida, Nebraska, and Arizona state courts have considered whether delegation of execution protocols to an executive official violates their state separation of powers principles, and have determined that it does not. *Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim. App. 1978); *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981); *Sims v. State*, 754 So. 2d 657 (Fla. 2000); *State v. Ellis*, 281 Neb. 571, 799 N.W.2d 267 (Neb.

14

2011) *cert. denied*, 132 S. Ct. 463 (2011); *Cook v. State*, 230 Ariz. 185, 281 P.3d 1053 (Ct. App. 2012).[2]

The separation of powers jurisprudence of these states is fairly similar. The standard in Texas is that "a legislative body may, after declaring a policy and fixing a primary standard, delegate to an administrative tribunal or officer the power to fill up the details so as to carry out and effectuate the legislative purpose." *Margolin v. State*, 151 Tex. Crim. 132, 138, 205 S.W.2d 775, 778 (1947). Florida jurisprudence provides that "the Legislature may enact a law, complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose." *Sims*, 754 So. 2d at 668 (internal quotes omitted). Nebraska's separation of powers principles provide that "[w]here the Legislature has provided reasonable limitations and standards for carrying out the delegated duties, there is no unconstitutional delegation of legislative authority." *Yant v. City of Grand Island*, 279 Neb. 935, 945, 784 N.W.2d 101, 109 (2010) (internal quotes

---

[2] Defendants also point to the Delaware case of *State v. Deputy*, 644 A.2d 411, 420 (Del. Super. 1994) *aff'd*, 648 A.2d 423 (Del. 1994) in support of their argument. However, this case involved an Eighth Amendment challenge to the state death penalty statute, which permitted the Department of Corrections to promulgate the execution protocol. The Petitioner argued that the statute was unconstitutional because it failed "to provide guidelines concerning the appropriate selection and training of the people administering the lethal injection," and as such would constitute cruel and unusual punishment. *Deputy*, 644 A.2d at 420. The state court dismissed the argument without citing sources on the grounds that "[n]o requirement exists that the state statute itself must establish detailed procedures for the administration of the death penalty," and that the procedures promulgated by the Department of Corrections were "conventional and well-planned," "reliable," and there was no evidence that Defendant's "execution will involve unnecessary torture, degradation, terror, pain or disgrace so as to render the Delaware statute unconstitutional." *Id*. at 420-21.

15

omitted). The Arizona Supreme Court has stated that "[a] statute need establish no more than a sufficient basic standard, i.e., a definite policy and rule of action which will serve as a guide for the administrative agency, in order for the delegation of legislative power to be deemed valid." *State v. Arizona Mines Supply Co.*, 107 Ariz. 199, 205-06, 484 P.2d 619, 625-26 (Ariz. 1971). While the Arizona separation of powers jurisprudence appears to be slightly less stringent than Missouri's, the Texas, Nebraska, and Florida standards for delegation align substantially with the contours of Missouri's jurisprudence, as detailed above.[3]

In upholding the death penalty delegation statutes, these state courts considered the following factors:

1) Whether the statute established a general policy to guide administrative action, such that the agency official could reasonably fill in the details. *Granviel*, 561 S.W.2d at 514; *Osborn*, 102 Idaho at 419, 631 P.2d at 201; *Sims*, 754 So. 2d at 668; *Ellis*, 281 Neb. at 593, 799 N.W.2d at 289;

2) Whether the agency official is better qualified to make the determination, and requiring the legislature to detail the policy would be impracticable, as where "the relations to be regulated are highly technical or where regulation requires a course of continuous decision." *Ellis*, 281 Neb. at 592-93, 799 N.W.2d at 289; *see also Sims*, 754 So. 2d at 670; *Cook*, 281 P.3d at 1056.

Because of the similarities between Missouri's separation of powers jurisprudence and that of the above states, the Court concludes that consideration of these factors is likewise appropriate in the instant case.

---

[3] The Idaho court in *Osborn* did not rely on any state law for its nondelegation analysis, only *Granviel*, and so the Court will not discuss Idaho's separation of powers jurisprudence. *Osborn*. 102 Idaho at 419.

Plaintiffs rely on a recent outlier case in support of their claim that the death penalty delegation statute violates separation of powers principles, *Hobbs v. Jones*, 2012 Ark. 293, 2012 WL 2362712 (Ark. 2012). Arkansas' separation of powers jurisprudence provides that "discretionary power may be delegated by the legislature to a state agency as long as reasonable guidelines are provided," including "appropriate standards by which the administrative body is to exercise this power… A statute that, in effect, reposes an absolute, unregulated, and undefined discretion in an administrative agency bestows arbitrary powers and is an unlawful delegation of legislative powers." *Hobbs*, 2012 WL 2362712 at *10. Applying this standard, the Arkansas Supreme Court found the death penalty delegation statute unconstitutional on the grounds that the statute "provides no guidance and no general policy with regard to the procedures for the [corrections official] to implement lethal injections," and "plainly gives absolute and exclusive discretion to the [corrections official] to determine what chemicals are to be used." *Id.* at *15, *14. The dissent in *Hobbs* argued that the delegation of authority in the Arkansas statute was constitutional because it involved "details with which it is impracticable for the legislature to deal directly." *Hobbs*, 2012 WL 2362712 at *28 (Baker, J., dissenting).

Plaintiffs contend that the Missouri Supreme Court gives special weight to the decisions of the Arkansas Supreme Court; however, in support of this claim, they reference only one Missouri case involving a nondelegation challenge to a statute granting commissions the authority to construct and lease buildings, which cites two Arkansas cases in a footnote. *See Menorah Med. Ctr*, 584 S.W.2d at 84 n.3. This is not a sufficient basis for holding that the Arkansas decision is controlling, especially when

17

other state decisions have come to the contrary conclusion. Plaintiffs also point out that the Arkansas death penalty delegation statute, which required lethal injection and enumerated a list of possible chemicals, was more detailed than the Missouri statute in the instant case, which permits either lethal injection or lethal gas and does not recommend specific chemicals to be used. However, this alone is insufficient to merit relying on Arkansas' outlier decision, when there is no indication that Arkansas case law carries any special weight in Missouri.[4]

The Court applies the factors set out in the Texas, Idaho, Nebraska, Florida, and Arizona courts to the instant case. First, the statute in question establishes a general policy – execution shall be conducted via lethal gas or injection – the details of which could be reasonably filled in by the agency official. *See Sims*, 754 So. 2d at 670. The next question is whether the agency official is better qualified to make the policy, and whether it would be impracticable to require a detailed policy of this sort from the legislature. Nebraska's approach to this inquiry, which focuses on whether "the relations to be regulated are highly technical" or the "regulation requires a course of continuous decision," is instructive. *Ellis*, 281 Neb. at 592, 799 N.W.2d at 289. Execution is a highly technical process involving complex drug combinations, to which this case is

---

[4] *Compare* Ark. Code Ann. § 5-4-617(a) (Supp. 2011) ("The sentence of death is to be carried out by intravenous lethal injection of one (1) or more chemicals, as determined in kind and amount in the discretion of the Director of the Department of Correction . . . . The chemical or chemicals injected may include one (1) or more of the following substances: (A) One (1) or more ultra-short-acting barbiturates; (B) One (1) or more chemical paralytic agents; (C) Potassium chloride; or (D) Any other chemical or chemicals, including but not limited to saline solution.") *with* Mo. Ann. Stat. § 546.720(1) ("The manner of inflicting the punishment of death shall be by the administration of lethal gas or by means of the administration of lethal injection . . . .").

testament.  Decisions regarding the method of execution are also ongoing, as drugs become less available or new drugs enter the market.  Furthermore, as other state courts have noted, Department of Corrections officials are better qualified to make these assessments than the legislature.  *See Sims*, 754 So. 2d at 670.  Therefore, Missouri's death penalty delegation statute is not unconstitutional under this test.

Additionally, Missouri law makes clear that a statute is to be presumed to be valid "unless it clearly contradicts a constitutional provision." *State Auditor v. Joint Comm. on Legislative Research*, 956 S.W.2d 228, 231 (Mo. 1997).  "Statutes must, if possible, be construed as consistent with the Constitution." *State Tax Comm'n*, 641 S.W.2d at 73.  In light of this canon of statutory interpretation and the state cases upholding death penalty delegation to executive officials, including the similarities between their separation of powers provisions and that of Missouri, the Court finds that Missouri's delegation of execution methods to the Defendant does not violate separation of powers principles.  As such, Defendant's Motion to Dismiss on this claim is GRANTED.

### 5. *Estoppel*

Finally, Defendants contend that Plaintiffs are estopped from raising a separation of powers challenge on the grounds that one Plaintiff, Plaintiff Taylor, challenged the constitutionality of § 546.720 under the Eighth Amendment in a previous litigation, as a result of which the district court required the Department of Corrections to submit a written lethal injection protocol implementing § 546.720.  *See Taylor v. Crawford*, 2006 WL 1779035 at *8 (W.D. Mo. June 26, 2006) (not reported in F. Supp. 2d).  The written protocol was found not to violate the Eighth Amendment on appeal.  *Taylor*, 487 F.3d at

19

1083. However, at no time was the issue of the constitutionality of the delegation of power under § 546.720 raised or litigated. Furthermore, Defendants introduce no case law showing that any form of estoppel would be appropriate in this instance. Thus, there is no basis for estopping Plaintiffs from proceeding with their claim.

## IV.  Conclusion

As the Supreme Court has made clear, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal quotes omitted). The Plaintiffs have met their burden at this stage with regards to their Eighth Amendment claim, and their *Ex Post Facto* and retrospective law claims. But the Motion to Dismiss must be granted as to their Supremacy Clause claim and their separation of powers claim. For the above stated reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

s/ NANETTE K. LAUGHREY<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  November 16, 2012
Jefferson City, Missouri