

# THE AMERICAN BOARD OF ANESTHESIOLOGY, INC.
A Member Board of the American Board of Medical Specialties

4208 Six Forks Road, Suite 900, Raleigh, North Carolina 27609-5753
Phone: (866) 999-7501    Fax: (866) 999-7503    Website: www.theABA.org

## Commentary (4/2/10)

### Anesthesiologists and Capital Punishment

The majority of states in the United States authorize capital punishment, and nearly all states utilize lethal injection as the means of execution. However, this method of execution is not always straightforward (1), and, therefore, some states have sought the assistance of anesthesiologists (2).

This puts anesthesiologists in an untenable position. They can assuredly provide effective anesthesia, but doing so in order to cause a patient's death is a violation of their fundamental duty as physicians to do no harm.

For decades the American Medical Association (AMA) has been opposed to physician involvement in capital punishment on the grounds that physicians are members of a profession dedicated to preserving life when there is hope of doing so (3). Effective February 15, 2010, the American Board of Anesthesiology (ABA) has incorporated the AMA's position on capital punishment into its professional standing requirements for all anesthesiologists who are candidates for or diplomates of the ABA (4). Thus, anesthesiologists may not participate in capital punishment if they wish to be certified by the ABA. What constitutes participation is clearly defined by the AMA's policy.

The ABA has not taken this action because of any position regarding the appropriateness of the death penalty. Anesthesiologists, like all physicians and all citizens, have different personal opinions about capital punishment. Nonetheless, the ABA, like the AMA, believes strongly that physicians should not be involved in capital punishment. The American Society of Anesthesiologists has also supported the AMA's position in this regard (5), as have others (6). Patients should never confuse the practice of anesthesiology with the injection of drugs to cause death. Physicians should not be expected to act in ways that violate the ethics of medical practice, even if these acts are legal.

In conclusion, the ABA's policy on capital punishment is intended to uphold the highest standards of medical practice and encourage anesthesiologists and other physicians to honor their professional obligations to patients and society.

*Mark A. Rockoff MD*

Mark A. Rockoff, MD
Secretary, ABA

Board of Directors
President
Steven C. Hall, MD
Chicago, IL

Vice President
Glenn P. Gravlee, MD
Aurora, CO

Secretary
Mark A. Rockoff, MD
Boston, MA

Treasurer
Douglas B. Coursin, MD
Madison, WI

J. Jeffrey Andrews, MD
San Antonio, TX

David L. Brown, MD
Cleveland, OH

Daniel J. Cole, MD
Phoenix, AZ

Deborah J. Culley, MD
Boston, MA

Brenda G. Fahy, MD
Lexington, KY

Cynthia A. Lien, MD
New York, NY

James P. Rathmell, MD
Boston, MA

Mark A. Warner, MD
Rochester, MN

Executive Staff
Mary E. Post, MBA, CAE
Executive Director,
Administrative Affairs

References

1. Black L, Sade RM. Lethal injection and physicians: State law vs. medical ethics. JAMA. 2007; 298(23):2779-81.

2. Gawande A. When law and ethics collide: Why physicians participate in executions. N Engl J Med. 2006;354(12):1221-9.

3. American Medical Association Code of Medical Ethics, Opinion E-2.06 - Capital Punishment (June 2000). (Accessed March 9, 2010, at http://www.ama-assn.org/ama/pub/physician-resources/medical-ethics/code-medical-ethics/opinion206.shtml)

4. American Board of Anesthesiology professional standing policy: Anesthesiologists and capital punishment. (Accessed February 15, 2010, at http://www.theABA.org/Home/notices#punishment) and Newsletter of the American Society of Anesthesiologists 2010; 74(3): 49 (ASA Newsletter will be available online after April 1, 2010 at: http://www.asahq.org/Newsletters/NL%20Portal/march10.html)

5. Guidry OF. Message from the President: Observations regarding lethal injection. Newsletter of the American Society of Anesthesiologists. August, 2006. (Accessed March 9, 2010, at http://www.asahq.org/Newsletters/2006/08-06/guidry08-06.html)

6. Truog RD, Brennan TA. Participation of physicians in capital punishment. N Engl J Med 1993; 329: 1346-1350.



# AMA Policy E-2.06 Capital Punishment

An individual's opinion on capital punishment is the personal moral decision of the individual. A physician, as a member of a profession dedicated to preserving life when there is hope of doing so, should not be a participant in a legally authorized execution. Physician participation in execution is defined generally as actions which would fall into one or more of the following categories: (1) an action which would directly cause the death of the condemned; (2) an action which would assist, supervise, or contribute to the ability of another individual to directly cause the death of the condemned; (3) an action which could automatically cause an execution to be carried out on a condemned prisoner.

Physician participation in an execution includes, but is not limited to, the following actions: prescribing or administering tranquilizers and other psychotropic agents and medications that are part of the execution procedure; monitoring vital signs on site or remotely (including monitoring electrocardiograms); attending or observing an execution as a physician; and rendering of technical advice regarding execution.

In the case where the method of execution is lethal injection, the following actions by the physician would also constitute physician participation in execution: selecting injection sites; starting intravenous lines as a port for a lethal injection device; prescribing, preparing, administering, or supervising injection drugs or their doses or types; inspecting, testing, or maintaining lethal injection devices; and consulting with or supervising lethal injection personnel.

The following actions do not constitute physician participation in execution: (1) testifying as to medical history and diagnoses or mental state as they relate to competence to stand trial, testifying as to relevant medical evidence during trial, testifying as to medical aspects of aggravating or mitigating circumstances during the penalty phase of a capital case, or testifying as to medical diagnoses as they relate to the legal assessment of competence for execution; (2) certifying death, provided that the condemned has been declared dead by another person; (3) witnessing an execution in a totally nonprofessional capacity; (4) witnessing an execution at the specific voluntary request of the condemned person, provided that the physician observes the execution in a nonprofessional capacity; and (5) relieving the acute suffering of a condemned person while awaiting execution, including providing tranquilizers at the specific voluntary request of the condemned person to help relieve pain or anxiety in anticipation of the execution.

**American Medical Association**  515 North State Street   Chicago   Illinois   60610
312 464 5000   www.ama-assn.org

Physicians should not determine legal competence to be executed. A physician's medical opinion should be merely one aspect of the information taken into account by a legal decision maker such as a judge or hearing officer. When a condemned prisoner has been declared incompetent to be executed, physicians should not treat the prisoner for the purpose of restoring competence unless a commutation order is issued before treatment begins. The task of re-evaluating the prisoner should be performed by an independent physician examiner. If the incompetent prisoner is undergoing extreme suffering as a result of psychosis or any other illness, medical intervention intended to mitigate the level of suffering is ethically permissible. No physician should be compelled to participate in the process of establishing a prisoner's competence or be involved with treatment of an incompetent, condemned prisoner if such activity is contrary to the physician's personal beliefs. Under those circumstances, physicians should be permitted to transfer care of the prisoner to another physician.

Organ donation by condemned prisoners is permissible only if (1) the decision to donate was made before the prisoner's conviction, (2) the donated tissue is harvested after the prisoner has been pronounced dead and the body removed from the death chamber, and (3) physicians do not provide advice on modifying the method of execution for any individual to facilitate donation. (I)

Issued July 1980. Updated June 1994 based on the report "Physician Participation in Capital Punishment," adopted December 1992, (JAMA. 1993; 270: 365-368); updated June 1996 based on the report "Physician Participation in Capital Punishment: Evaluations of Prisoner Competence to be Executed; Treatment to Restore Competence to be Executed," adopted in June 1995; Updated December 1999; and Updated June 2000 based on the report "Defining Physician Participation in State Executions," adopted June 1998.

## Important Notices

- Spring 2013 Part 2 Examination Hotel Reservations
- Update on Subspecialty Certification in Pediatric Anesthesiology
- New ABA Policy on Duration of Candidate Status
- Maintenance of Certification and Physician Quality Reporting System Requirements
- Anesthesiologists and Capital Punishment
- Information Regarding Status Designations
- Alternate Path for Entry into ABA Examinations for Primary Certification
- Data Privacy and Security Policy
- Request for Duplicate Certificate Form

### Update on Subspecialty Certification in Pediatric Anesthesiology

The first Pediatric Anesthesiology Examination will be administered on October 19, 2013. All physicians interested in subspecialty certification in pediatric anesthesiology can apply for this examination via their ABA portal accounts. The application deadline for the 2013 examination is February 15, 2013. All physicians, including those who qualify via "grandfathering" criteria, must satisfactorily complete the subspecialty examination. Please visit the Pediatric Anesthesiology Certification section of the **Examinations & Certifications** page for more information on the examination, application criteria and frequently asked questions.

**Click here to access Pediatric Anesthesiology Examination sample questions.**

### New ABA Policy on Duration of Candidate Status for Primary Certification in Anesthesiology

The ABMS is striving to establish consistency amongst its 24 Member Boards regarding the time frame in which a physician must complete the requirements for certification relative to the physician's satisfactory completion of an ACGME-accredited residency program. On September 21, 2011, the ABMS created a new policy mandating that no more than seven (7) years can elapse between a physician's completion of residency training and achievement of Board Certification.

**Revised ABA Policy on Duration of Candidate Status**

In order to meet the requirements of the ABMS policy, the ABA's policy on the duration of candidate status has been modified. Effective January 1, 2012:

- Candidates completing residency training prior to January 1, 2012, must satisfy all requirements for certification by January 1, 2019.
- Candidates finishing residency training on or after January 1, 2012, must satisfy all requirements for certification within 7 years of the last day of the year in which residency training was completed.
- The ABA will declare the candidate's application void if the candidate does not satisfy the certification requirements within the time described above.

Further, at its Spring 2012 meeting, the ABA Board of Directors approved eliminating all limitations on the number of opportunities to satisfy the Part 1 and Part 2 Examination requirements for all candidates currently in the ABA's Primary Certification Examination System. Candidates now have one examination appointment a calendar year until January 1, 2019 to successfully complete the ABA's Part 1 and Part 2 Examinations and satisfy all other requirements for ABA certification.

**"Board Eligible" Status Not Recognized by the ABA**

The ABA does not recognize "Board Eligible" as a physician status relative to the ABA examination system for primary certification in anesthesiology. Physicians with an active application are considered candidates in the ABA examination system, not "Board Eligible." Therefore, physicians should refrain from making any representations of being "Board Eligible."

Case 2:12-cv-04209-NKL   Document 99-1   Filed 05/21/13   Page 5 of 10

The American Board of Anesthesiology is a Member Board of the American Board of Medical Specialties.
Phone: (866) 999-7501 | Fax: (866) 999-7503
Copyright © 2013 The American Board of Anesthesiology - All rights reserved.

## Anesthesiologists and Capital Punishment

**Professional Standing**

The ABA has incorporated the AMA's Code of Medical Ethics, **Opinion E-2.06** (June 2000) in its Professional Standing Policy.

ABA certification includes more than passing examinations; it also includes maintaining high professional and ethical standards. Specifically, it is the **ABA's Professional Standing Policy** that diplomates should use their clinical skills and judgment for promoting an individual's health and welfare. To do otherwise would undermine a basic ethical foundation of medicine which is – first do no harm.

If diplomates of the ABA participate in an execution by lethal injection, they may be subject to disciplinary action, including revocation of their ABA diplomate status.

Click **here** for additional information on Anesthesiologists and Capital Punishment.

## Information Regarding Status Designations

The ABA routinely reports through its web site or by mail, whether a physician is a Candidate in the ABA examination system or an ABA Diplomate. The ABA Diplomate and Candidate Directory will display these new status designations to the public and others interested in obtaining information about Board Certified anesthesiologists.

Diplomate status is limited to the period of time the physician's certification or application for certification is valid.

The ABA has expanded its diplomate status designations to include three new designations:

- **Certified-Not Clinically Active**
  Active Diplomate holds a valid ABA certificate but has not performed, taught or supervised anesthesia in the operating room or other anesthetizing areas an average of one day per week during 12 consecutive months over the previous three years. Additionally, they do not plan to be clinically active for at least three years.

- **Certified-Retired**
  Diplomate holds a valid ABA certificate, no longer is actively performing, teaching or supervising the practice of anesthesiology, and no longer has a professional responsibility to the specialty of anesthesiology.

- **Retired**
  A Retired Diplomate no longer holds a valid ABA certificate, no longer is actively performing, teaching or supervising the practice of anesthesiology, and no longer has a professional responsibility to the specialty of anesthesiology.

Instructions to changing status designations to:

- Retired
- Not Clinically Active for Primary Certification
- Not Clinically Active for Subspecialty Recertification
- Not Clinically Active for MOCA-SUBS
- Clinically Active
- Certified Post Retirement

## Alternate Path for Entry into ABA Examinations for Primary Certification

The ABA has approved a 7-year pilot program that would allow international medical graduates, certified by the national anesthesiology organization in the country where they trained in the specialty and practicing anesthesiology in the United States, to qualify for entrance into the ABA examination system for initial certification in the specialty at most once via an alternate entry path. The objective of the pilot program is to encourage outstanding foreign trained and certified anesthesiologists, who come to the United States, to become productive members of U.S. academic anesthesiology programs.

📄 **Alternate Entry Path into ABA Primary Exam System**

📄 **Alternate Entry Path Plan**

## Data Privacy and Security Policy

The American Board of Anesthesiology exists to advance the highest standards of the practice of anesthesiology. To fulfill our mission, the ABA must collect and utilize personal and professional information pertaining to our applicants and diplomates. We are aware of the trust you place in us to protect your privacy. The ABA has published a **Data Privacy and Security Policy** describing how we

approach data privacy and information security. Our goal is to assure all persons disclosing information to the ABA of the sensitivity and care utilized in protecting this information.

**RETURN TO THE TOP >>**

## Important Notices

- Spring 2013 Part 2 Examination Hotel Reservations
- Update on Subspecialty Certification in Pediatric Anesthesiology
- New ABA Policy on Duration of Candidate Status
- Maintenance of Certification and Physician Quality Reporting System Requirements
- Anesthesiologists and Capital Punishment
- Information Regarding Status Designations
- Alternate Path for Entry into ABA Examinations for Primary Certification
- Data Privacy and Security Policy
- Request for Duplicate Certificate Form

### Update on Subspecialty Certification in Pediatric Anesthesiology

The first Pediatric Anesthesiology Examination will be administered on October 19, 2013. All physicians interested in subspecialty certification in pediatric anesthesiology can apply for this examination via their ABA portal accounts. The application deadline for the 2013 examination is February 15, 2013. All physicians, including those who qualify via "grandfathering" criteria, must satisfactorily complete the subspecialty examination. Please visit the Pediatric Anesthesiology Certification section of the **Examinations & Certifications** page for more information on the examination, application criteria and frequently asked questions.

**Click here to access Pediatric Anesthesiology Examination sample questions.**

### New ABA Policy on Duration of Candidate Status for Primary Certification in Anesthesiology

The ABMS is striving to establish consistency amongst its 24 Member Boards regarding the time frame in which a physician must complete the requirements for certification relative to the physician's satisfactory completion of an ACGME-accredited residency program. On September 21, 2011, the ABMS created a new policy mandating that no more than seven (7) years can elapse between a physician's completion of residency training and achievement of Board Certification.

**Revised ABA Policy on Duration of Candidate Status**

In order to meet the requirements of the ABMS policy, the ABA's policy on the duration of candidate status has been modified. Effective January 1, 2012:

- Candidates completing residency training prior to January 1, 2012, must satisfy all requirements for certification by January 1, 2019.
- Candidates finishing residency training on or after January 1, 2012, must satisfy all requirements for certification within 7 years of the last day of the year in which residency training was completed.
- The ABA will declare the candidate's application void if the candidate does not satisfy the certification requirements within the time described above.

Further, at its Spring 2012 meeting, the ABA Board of Directors approved eliminating all limitations on the number of opportunities to satisfy the Part 1 and Part 2 Examination requirements for all candidates currently in the ABA's Primary Certification Examination System. Candidates now have one examination appointment a calendar year until January 1, 2019 to successfully complete the ABA's Part 1 and Part 2 Examinations and satisfy all other requirements for ABA certification.

**"Board Eligible" Status Not Recognized by the ABA**

The ABA does not recognize "Board Eligible" as a physician status relative to the ABA examination system for primary certification in anesthesiology. Physicians with an active application are considered candidates in the ABA examination system, not "Board Eligible." Therefore, physicians should refrain from making any representations of being "Board Eligible."

The American Board of Anesthesiology is a Member Board of the American Board of Medical Specialties.
Phone: (866) 999-7501 | Fax: (866) 999-7503
Copyright © 2013 The American Board of Anesthesiology - All rights reserved.

### Anesthesiologists and Capital Punishment

**Professional Standing**

The ABA has incorporated the AMA's Code of Medical Ethics, **Opinion E-2.06** (June 2000) in its Professional Standing Policy.

ABA certification includes more than passing examinations; it also includes maintaining high professional and ethical standards. Specifically, it is the **ABA's Professional Standing Policy** that diplomates should use their clinical skills and judgment for promoting an individual's health and welfare. To do otherwise would undermine a basic ethical foundation of medicine which is – first do no harm.

If diplomates of the ABA participate in an execution by lethal injection, they may be subject to disciplinary action, including revocation of their ABA diplomate status.

Click **here** for additional information on Anesthesiologists and Capital Punishment.

### Information Regarding Status Designations

The ABA routinely reports through its web site or by mail, whether a physician is a Candidate in the ABA examination system or an ABA Diplomate. The ABA Diplomate and Candidate Directory will display these new status designations to the public and others interested in obtaining information about Board Certified anesthesiologists.

Diplomate status is limited to the period of time the physician's certification or application for certification is valid.

The ABA has expanded its diplomate status designations to include three new designations:

- **Certified-Not Clinically Active**
  Active Diplomate holds a valid ABA certificate but has not performed, taught or supervised anesthesia in the operating room or other anesthetizing areas an average of one day per week during 12 consecutive months over the previous three years. Additionally, they do not plan to be clinically active for at least three years.
- **Certified-Retired**
  Diplomate holds a valid ABA certificate, no longer is actively performing, teaching or supervising the practice of anesthesiology, and no longer has a professional responsibility to the specialty of anesthesiology.
- **Retired**
  A Retired Diplomate no longer holds a valid ABA certificate, no longer is actively performing, teaching or supervising the practice of anesthesiology, and no longer has a professional responsibility to the specialty of anesthesiology.

Instructions to changing status designations to:

- **Retired**
- **Not Clinically Active for Primary Certification**
- **Not Clinically Active for Subspecialty Recertification**
- **Not Clinically Active for MOCA-SUBS**
- **Clinically Active**
- **Certified Post Retirement**

### Alternate Path for Entry into ABA Examinations for Primary Certification

The ABA has approved a 7-year pilot program that would allow international medical graduates, certified by the national anesthesiology organization in the country where they trained in the specialty and practicing anesthesiology in the United States, to qualify for entrance into the ABA examination system for initial certification in the specialty at most once via an alternate entry path. The objective of the pilot program is to encourage outstanding foreign trained and certified anesthesiologists, who come to the United States, to become productive members of U.S. academic anesthesiology programs.

📄 Alternate Entry Path into ABA Primary Exam System

📄 Alternate Entry Path Plan

### Data Privacy and Security Policy

The American Board of Anesthesiology exists to advance the highest standards of the practice of anesthesiology. To fulfill our mission, the ABA must collect and utilize personal and professional information pertaining to our applicants and diplomates. We are aware of the trust you place in us to protect your privacy. The ABA has published a **Data Privacy and Security Policy** describing how we

Case 2:12-cv-04209-NKL   Document 99-1   Filed 05/21/13   Page 9 of 10

approach data privacy and information security. Our goal is to assure all persons disclosing information to the ABA of the sensitivity and care utilized in protecting this information.

**RETURN TO THE TOP >>**