**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

DAVID ZINK, et al.,                     )
                                        )
      Plaintiffs,                    )
                                        )
v.                                      )     Case No. 2:12-CV-4209-NKL
                                        )
GEORGE A. LOMBARDI, et al.,             )
                                        )
      Defendants.                    )

**ORDER**

This case involves a challenge by twenty-one Plaintiffs, prisoners on death row in

Missouri, to the new execution protocol issued by the Missouri Department of

Corrections. The current issue involves a discovery dispute regarding the production of

the execution protocol. Pending before the Court is Defendants' Motion for a Protective

Order regarding portions of the execution protocol. [Doc. # 83]. For the reasons stated

below, the Motion is GRANTED in part and DENIED in part.

**I.      Background**

Plaintiffs have requested discovery of "All documents relating to or containing

any internal DOC [Department of Corrections] policies, procedures, rules, guidelines or

directives for the purchase, procuring, prescribing, administering, or using of lidocaine

and propofol." Defendants have produced the part of the protocol relating to the

administration of lethal chemicals, but decline to produce any other documents relating to

the protocol, citing Missouri's death penalty statute's confidentiality provision. Plaintiffs

contend that the requested documents are relevant and that any privileged status they

1

have cannot be used to limit or defeat discovery.  The Court has reviewed the full

execution protocol in camera.

## II.    Discussion

Defendants ask this Court to issue a protective order limiting Plaintiffs' request for

production of the protocol only to those portions of the protocol related to the

administration of lidocaine and propofol during executions.  In support of this request,

they assert that the remaining portions of the protocol should be produced because 1) they

are not responsive to Plaintiffs' request for production; 2) they are not relevant to any

issue in Plaintiffs' case nor reasonably calculated to lead to the discovery of admissible

evidence; and 3) their production poses security risks.

### A.    Responsiveness

Defendants first argue that the execution protocol was never requested by

Plaintiffs because their discovery demand was for  "all documents relating to… the

purchase, procuring, prescribing, administering or using lidocaine and propofol."

Defendants claim that the execution protocol sought by Plaintiffs has nothing to do with

purchasing, procuring, prescribing, administering or using lidocaine or propofol because

it has not been updated to reflect the new drugs being used for execution.  However,

Defendants responded to the discovery request by providing the part of the protocol "that

directly relates to the administration of lethal chemicals and is an open record," and

objected to producing the remainder of the protocol because it was a closed record under

Missouri law.   [Doc. # 85 Ex. 1 – Defendants' Answers to Plaintiffs' First Request for

Production]  Thus, Defendants treated the protocol as if it were responsive to the

2

Plaintiffs' request, contrary to their present argument. Further, as discussed below, the protocol relates to the administration of the execution drugs and therefore is covered by Plaintiffs' discovery request, regardless of Defendants' action.

## B. Relevance

The Federal Rules provide that the parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action…" Fed. R. Civ. P. 26(b)(1). "Relevance" "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389 (1978). Defendants claim that the withheld portion of the protocol is not relevant to any issue in this case or likely to lead to the discovery of admissible evidence. In response, Plaintiffs argue that the withheld portions of the protocol, including the security-related and logistical aspects, are relevant to the overarching question of whether the administration of these new drugs is cruel and unusual punishment in violation of the Fourth Amendment. They point out that the circumstances leading up to and surrounding the administration of the drugs may influence the prisoner's state of anxiety at the time of execution and thus could affect the difficulty with which the attending doctor places the central IV line to administer the drugs. For this reason, knowing the circumstances surrounding the prisoner and the execution process, including the presence of victim witnesses, attorneys, media, security restraints, etc., could have a bearing on how the drugs are administered to the prisoner. In an adversarial system, it is difficult for a court to determine what will or will not lead

3

to admissible evidence, especially when an adversary is not permitted to know what is

contained in documents held by another and therefore cannot articulate the exact

relevancy of the material.  Therefore, the Court finds that all parts of the execution

protocol relating to the prisoner or his circumstances of execution are relevant to

Plaintiffs' case.  After a careful in camera review, the Court concludes that the following

sections of the protocol sufficiently relate to the prisoner or the circumstances of his

execution and should be produced by the Defendants.

> p. 3-4 (Special Instructions - Inmate)
> p. 6 (Holding Cell Officer)
> p. 40-41 (Chronological Execution Report)
> p. 42-43 (Security Escort Detail)
> p. 44 (5-Person Response Team)
> p. 61-66 (Chronological Sequence of Execution)
> p. 74 (Offender Witness Approval Letter)
> p. 77 (DAI Director Checklist)
> p. 78 (Warden Checklist)
> p. 79 (Sequence of Chemicals)
> p. 80 (Chemical Log)
> p. 81 (Pre-Execution Summary of Medical History)
> p. 82 (Medical & Nonmedical Personnel Checklist)

## C.    Security Risks

Although Defendants claim that providing the protocol to Plaintiffs' counsel poses

a security risk, they have not elaborated why this would be so.  To justify a protective

order, the moving party must show "a particular and specific demonstration of fact, as

distinguished from stereotyped and conclusory statements."  *Gulf Oil Co. v. Bernard*,

452 U.S. 89, 102 n.16, 101 S. Ct. 2193, 2201 n.16 (1981) (internal quotes omitted).  The

Court has communicated to the parties that any part of the protocol provided would be

4

filed under seal and for attorneys' eyes only. There is no evidence that Plaintiffs' counsel

do not conduct themselves as officers of the Court; indeed, the evidence is to the

contrary. For this reason, production of the protocol under seal for attorneys' eyes only is

sufficient to address any security concerns. *See, e.g., Taiyo Int'l, Inc. v. Phyto Tech*

*Corp.*, 275 F.R.D. 497, 502 (D. Minn. 2011) (designation as "Confidential Attorneys'

Eyes Only" was sufficient to protect trade secret); *White Cap Const. Supply, Inc. v.*

*Tighton Fastener & Supply Corp.*, 2009 WL 3836891 at *3 (D. Neb. Nov. 13, 2009) (not

reported) (the attorneys' eyes only provision "serve[s] to reduce the risk" of misuse of

confidential information obtained during discovery); *Northbrook Digital LLC v. Vendio*

*Servs., Inc.*, 2008 WL 2390740 at *13 (D. Minn. Apr. 4, 2008) (not reported) (the

designation "attorneys' eyes only" permits counsel to "advance their party's interests

without the risk that an adverse party will use confidential information for purposes other

than litigation."); *Autotech Technologies Ltd. P'ship v. Automationdirect.com, Inc.*, 237

F.R.D. 405, 407 (N.D. Ill. 2006) (the "attorneys' eyes only" designation has become "*de*

*rigeur*" to protect confidential information provided to opposing counsel during

discovery).

### D.     Privilege

Defendants also assert that under Missouri law, the execution protocol is a "closed

record," and so should be privileged from discovery. Missouri's death penalty statute

provides in pertinent part,

> "The identities of members of the execution team, as defined in the execution
> protocol of the department of corrections, shall be kept confidential.
> Notwithstanding any provision of law to the contrary, any portion of a record that

5

could identify a person as being a current or former member of an execution team shall be privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for disclosure to any person or entity, the remainder of such record shall not be privileged or closed unless protected from disclosure by law. *The section of an execution protocol that directly relates to the administration of lethal gas or lethal chemicals is an open record, the remainder of any execution protocol of the department of corrections is a closed record.*"

Mo. Rev. Stat. § 546.720.2 (emphasis added).

This argument has no merit for two reasons. First, the law is clear that a state privilege statute cannot limit a federal court's control of discovery in a federal question lawsuit. Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2016 (3d ed.) ("In federal litigation where federal law governs, the principles of common law regarding privileges are to be used."). Federal Rule of Evidence § 501 provides, "The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege," except where "state law supplies the rule of decision," in which case state privilege statutes apply. Fed. R. Evid. § 501. In line with Rule 501, federal courts have regularly applied federal privilege law in civil rights cases. *See, e.g., King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) ("Questions of privilege in federal civil rights cases are governed by federal law."); *Bryant v. Armstrong*, 285 F.R.D. 596, 604 (S.D. Cal. 2012) ("State privilege law does not govern discovery issues in federal § 1983 cases."); *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012) ("where a strong countervailing federal interest exists, courts should not observe a state privilege."). This case involves civil rights claims brought by state prisoners in federal court. As such, federal privilege law, and not state privilege law, applies.

Even under Missouri state law, a state court would not be prevented from ordering the execution protocol produced during litigation.  Missouri's Sunshine Law provides, "It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law," and states that its provisions "shall be liberally construed and their exceptions strictly construed to promote this public policy."  Mo. Ann. Stat. § 610.011.  Missouri courts have held that "the fact that a record is closed to the public under the Sunshine Law does not mean that the record is immune from discovery by a party in litigation."  *State v. Jackson*, 353 S.W.3d 657, 660 n.2 (Mo. Ct. App. 2011), *reh'g and/or transfer denied* (Sept. 6, 2011).  Indeed, the presumption is against immunity from discovery unless the statute creates an explicit "discovery or evidentiary privilege" by "specifically us[ing] the word 'privilege' in that context" or "prohibit[ing] the use of confidential information in evidence."  *State ex rel. Missouri Ethics Comm'n v. Nichols*, 978 S.W.2d 770, 773 (Mo. Ct. App. 1998).  Although the statute designates the execution protocol as a "closed record," this phrase does not explicitly create a discovery or evidentiary privilege, as required by Missouri law.  Furthermore, the fact that a record may be designated "closed" with regards to document requests under the Sunshine Law does not affect its discoverability in a civil lawsuit.  For this reason, the execution protocol is not barred from discovery by Missouri's death penalty statute.

## III. Conclusion

For the above stated reasons, Defendant's Motion for a Protective Order [Doc. # 83] is GRANTED in part and DENIED in part.  After reviewing the protocol in camera,

the Court has determined that the following sections are relevant to Plaintiffs' request

because they relate to the prisoner or the circumstances surrounding his execution:

    p. 3-4 (Special Instructions - Inmate)
    p. 6 (Holding Cell Officer)
    p. 40-41 (Chronological Execution Report)
    p. 42-43 (Security Escort Detail)
    p. 44 (5-Person Response Team)
    p. 61-66 (Chronological Sequence of Execution)
    p. 74 (Offender Witness Approval Letter)
    p. 77 (DAI Director Checklist)
    p. 78 (Warden Checklist)
    p. 79 (Sequence of Chemicals)
    p. 80 (Chemical Log)
    p. 81 (Pre-Execution Summary of Medical History)
    p. 82 (Medical & Nonmedical Personnel Checklist)

The Court orders that the above sections of the protocol be provided to Plaintiffs' counsel

under seal and for attorneys' eyes no later than 7 days from the date of this order.


                                        s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge

Dated:  May 31, 2013
Jefferson City, Missouri