IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| DAVID ZINK, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 2:12-CV-4209-NKL |
| GEORGE A. LOMBARDI, et al., | ) ) ) | |
| Defendants. | ) | |

**ORDER**

This case involves a challenge by twenty-one Plaintiffs, prisoners on death row in Missouri, to a new execution protocol. The current issue primarily involves a discovery dispute regarding the identity of a member of Defendants' execution team, anesthesiologist M3. Pending before the Court is Defendants' Motion for a Protective Order regarding the identity of Missouri's execution team. [Doc. # 94]. For the reasons stated below, the Motion is DENIED as it relates to M3 but GRANTED as to the remaining members of the execution team.

**I.    Background**

M3 is a board-certified anesthesiologist licensed to practice medicine in Missouri, who is under contract to assist with executions of Missouri death row inmates. In this capacity, M3 has provided guidance and expertise to Defendants in revising the execution protocol and will help administer the lethal drugs. [Doc. # 98, Ex. 2 – Defendants' Summary of Facts and Opinions of M3]. In a previous challenge to Missouri's death penalty execution method, *Ringo v. Lombardi*, the Court, with consent of the parties,

1

issued an order protecting the identity of all execution team members, including M3, from discovery. [Doc. # 94, Ex. 1 – *Ringo* Protective Order].

In the instant case, Defendants originally identified M3 as an expert witness. [Doc. # 98, Ex. 2]. Defendants stated that M3 would testify about the execution procedure, the effect of lidocaine at numbing pain, and the use of central line access through the femoral vain to reduce the risk of pain. [Doc. # 98, Ex. 2]. Defendants proposed that the parties use the protective order from *Ringo* to protect M3's identity. Plaintiffs agreed, with the caveat that members of the execution team could not remain anonymous if they were designated as expert witnesses. [Doc. # 98, Ex. 4 – Plaintiffs' Proposed Protective Order]. Defendants rejected Plaintiffs' proposal but withdrew their designation of M3 as an expert, stating they would rely on M3 only as a "fact witness." [Doc. # 87 – Withdrawal of Designation of Expert Witness]. Defendants now move this Court for a protective order "protecting the identities of members of the Missouri execution team, including M3 from disclosure." [Doc. # 99]. Plaintiffs object to this protective order, arguing that M3's identifying characteristics should be discoverable if Defendants plan to call M3 as a witness. It appears that Defendants intends to do so to show that the execution protocol is constitutional.

## II. Discussion

### A. Whether Good Cause Exists for the Protective Order

The trial court has "broad discretion" in granting protective orders. *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 362 (8th Cir. 2003) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199 (1984)). A party moving for a

2

protective order bears the burden of showing "good cause." Fed. R. Civ. P. 26(c); *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973), *cert. denied*, 414 U.S. 1162, 94 S. Ct. 926 (1974). Additionally, the Court must consider any hardship to the non-moving party. *Gen. Dynamics Corp.*, 481 F.2d at 1212.

### 1. *Harm to M3*

Defendants argue that M3 would be subject to professional retaliation if his identity were publicly revealed, pointing to statements by the American Medical Association and the American Board of Anesthesiology that members who assist in carrying out death penalty sentences would be decertified. [Doc. # 99, Ex. 1]. They also state that it is self-evident that M3's life and safety would be jeopardized if his participation in executions were to become known.

Although the Court understands Defendants' concern, it is Defendants who have chosen to put M3's career and safety at risk by making his testimony a part of their defense. Whether M3 testifies as a "fact" witness or an expert witness, he will be discussing his involvement in formulating the protocol and his experience administering propofol and lidocaine as an anesthesiologist. This testimony is only relevant if it will be used to bolster Defendants' argument that the protocol does not cause an unconstitutional risk of pain. Defendants do not have to rely on M3 for this testimony; they could find another expert who is not also an execution team member to testify on the safety of the propofol-lidocaine cocktail they intend to use. By relying on M3, Defendants have chosen to make M3 himself a part of the litigation, and therefore his credibility and any bias is at issue.

3

## 2. *Prejudice to Plaintiffs*

The ability to investigate the backgrounds of witnesses, both fact and expert, is central to the purpose of discovery: to "eliminate surprise" and to allow the parties to reasonably prepare for trial by obtaining "mutual knowledge of all the relevant facts." *Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993) (internal quotes omitted). As the Supreme Court has explained, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S. Ct. 1011, 1021 (1970). Cross-examination cannot be effective where vital information about the witness is withheld. Therefore, Plaintiffs will be prejudiced if they cannot discover the identity of M3 in order to investigat his credibility and any bias.

Here M3's identity is in the hands of Defendants, and Defendants have not shown that it is not possible to establish their defense without the testimony of the person who will administer the lethal drugs. Further, the prejudice to the Plaintiff is self-evident. The equities therefore weigh in favor of the Plaintiffs, and Defendants have failed to show good cause for a protective order keeping M3's identity secret .while still permitting them to call M3 as a witness. [1]

### B. Waiver of Privilege

---

[1] Defendants argue that the identities of execution team members were protected in a previous death penalty case, *Ringo v. Lombardi,* 2:09-CV-04095-NKL, 2011 WL 3584476 (W.D. Mo. Aug. 15, 2011) *vacated as moot,* 677 F.3d 793 (8th Cir. 2012). However, *Ringo* is distinguishable because the parties agreed to the protective order and the litigation was not focused on the constitutionality of the execution protocol.

Defendants also contend that M3's identity is privileged under state law, and therefore should not be revealed under any circumstances. Missouri's death penalty statute provides,

> "The identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential. Notwithstanding any provision of law to the contrary, *any portion of a record that could identify a person as being a current or former member of an execution team shall be privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for disclosure to any person or entity*…"

Mo. Rev. Stat. § 546.720.2 (emphasis added).

Where the plaintiffs have sued the defendants for a violation of federal law, the federal law of privilege applies. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985); *see also* Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2016 (3d ed.) ("In federal litigation where federal law governs, the principles of common law regarding privileges are to be used."); Fed. R. Evid. § 501 (explaining that "[t]he common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege," except where "state law supplies the rule of decision," in which case state privilege statutes apply.). This includes issues regarding the discoverability of evidence in federal question cases. *Baranski v. United States*, 2012 WL 425007 at *3 (E.D. Mo. Feb. 9, 2012) (citing *Ray v. Winslow House, Inc.*, 1999 WL 33655723, at *1 (N.D. Iowa Jan. 15, 1999)). Federal courts have regularly applied federal privilege law in civil rights cases. *See, e.g., King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) ("Questions of privilege in federal civil rights cases are governed by federal law."); *Bryant v. Armstrong*, 285 F.R.D. 596, 604 (S.D. Cal. 2012) ("State privilege law does not govern discovery issues

5

in federal § 1983 cases."); *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012) ("where a strong countervailing federal interest exists, courts should not observe a state privilege."). This case involves civil rights claims brought by state prisoners in federal court. As such, federal privilege law, and not state privilege law, applies.

However, even if the identity of M3 is privileged under federal law, Defendants have waived this privilege through their actions. Missouri state courts have adopted the rule that a waiver of a privilege may occur "where the client places the subject matter of the privileged communication in issue" in the litigation. *Sappington v. Miller*, 821 S.W.2d 901, 904 (Mo. Ct. App. 1992); *State ex rel. St. John's Reg'l Med. Ctr. v. Dally*, 90 S.W.3d 209, 215 (Mo. Ct. App. 2002). Missouri has recognized this doctrine in both statutory and common-law privilege contexts, including attorney-client privilege, *Sappington*, 821 S.W.2d at 904, doctor-patient privilege, *State ex rel. McNutt v. Keet*, 432 S.W.2d 597, 601 (Mo. 1968), statutory hospital-doctor peer review privilege, *State ex rel. Health Midwest Dev. Grp., Inc. v. Daugherty*, 965 S.W.2d 841, 843 (Mo. 1998), statutory privilege accorded juvenile court records, *State ex rel. Rowland v. O'Toole*, 884 S.W.2d 100, 103 (Mo. Ct. App. 1994), and statutory accountant-client privilege. *State ex rel. Sw. Bell Publications v. Ryan*, 754 S.W.2d 30, 32 (Mo. Ct. App. 1988). The "fairness rationale" behind this doctrine is that recognition of a party's ability to waive privilege "preclude[s] a privilege holder from using the privilege strategically to exclude unfavorable evidence while at the same time admitting favorable evidence." *St. John's Reg'l Med. Ctr.*, 90 S.W.3d at 216.

The Eighth Circuit has embraced similar reasoning, stating that in attorney-client privilege cases, a party may implicitly waive a privilege in certain circumstances, such as "when a client places the attorney-client relationship directly at issue" or "asserts reliance on an attorney's advice as an element of a claim or defense." *Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982), *cert. denied*, 459 U. S. 1017, 103 S. Ct. 379 (1982); *see also Hollins*, 773 F.2d at 196; *United States v. Bauer*, 551 F.3d 786, 792 (8th Cir. 2008). This reasoning extends to waiver of other privileged relationships, such as doctor-patient. *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000) ("similar to attorney-client privilege that can be waived when the client places the attorney's representation at issue, a plaintiff waives the psychotherapist-patient privilege by placing his or her medical condition at issue.").

In determining whether a privilege has been implicitly waived, district courts in the Eighth Circuit have relied on the test set out in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975). *Hearn* holds that a party has impliedly waived a privilege where: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Id*. at 581. *See, e.g., Union Cnty., IA v. Piper Jaffray & Co., Inc.*, 248 F.R.D. 217, 220-222 (S.D. Iowa 2008) (discussing various tests of implicit waiver and adopting the *Hearn* test); *Medtronic, Inc. v. Intermedics, Inc.*, 162 F.R.D. 133, 135 (D. Minn. 1995) (adopting the *Hearn* test as consistent with *Sedco*); *St. Louis Convention & Visitors Comm'n v. Nat'l*

7

Case 2:12-cv-04209-NKL   Document 104   Filed 06/18/13   Page 7 of 9

*Football League*, 1997 WL 1419394 at *3 (E.D. Mo. Sept. 10, 1997) (adopting as persuasive the reasoning of *Medtronic*); *Lamar Adver. of S. Dakota, Inc. v. Kay*, 2010 WL 758786 at *10 (D.S.D. Mar. 1, 2010) (relying on the reasoning of *St. Louis Convention*); *Starr Indem. & Liab. Co. v. Cont'l Cement Co., L.L.C.*, 2012 WL 6012904 at *1 (E.D. Mo. Dec. 3, 2012) (applying the *Hearn* test on the agreement of the parties).

The reasoning of the above cases is equally applicable to this case. Here, Defendants have chosen to rely on the testimony of M3 to support their argument that the new execution protocol is not unconstitutional. According to Defendants themselves, M3's testimony will center on his experience with propofol as an anesthesiologist. [Doc. #98, Ex. 2]. Defendants have chosen to rely on M3 rather than a different witness who is unaffiliated with the execution team. They have therefore put M3's background, credibility, and any bias "at issue" in the litigation. Denying Plaintiffs the ability to interrogate M3 before trial through the discovery process would permit Defendants to use M3 as a "sword" while simultaneously "shielding" him from discovery. *St. John's Reg'l Med. Ctr.*, 90 S.W.3d at 216. For this reason, even if Missouri's statutory grant of privilege was federally cognizable, Defendants' decision to use M3 as a witness waives any privilege under both federal and Missouri law.

### C. Other Members of the Execution Team

Because Plaintiffs do not object to Defendants' Motion as it relates to fact evidence by other members of the execution team, Defendants' Motion is granted as to them.

### III. Conclusion

For the reasons explained above, Defendants' Motion for Protective Order is DENIED as it relates to the identity of M3 but GRANTED as it relates to the identity of the other members of the execution team. If Defendants wish to have a separate protective order consistent with this Order, they must submit it no later than seven (7) days from the date of this Order, but it shall be limited to the issue of the identity of the execution team. If the parties are unable to agree on a protective order on any other issues, they are ordered to file their respective versions of the protective order and the Court will resolve any differences. Any such protective order must be filed within 20 days of the date of this order.

                                                s/ Nanette K. Laughrey
                                                NANETTE K. LAUGHREY
                                                United States District Judge

Dated: June 18, 2013
Jefferson City, Missouri