IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DAVID ZINK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) No. 2:12-CV-4209-NKL |
| | ) |
| GEORGE A. LOMBARDI, et al., | ) |
| | ) |
| Defendants. | ) |

PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS

On October 16, 2013, defendants filed a motion to dismiss this action for mootness. (Doc. 143.) The filing followed an announcement on October 11, 2013, by Missouri Governor Jay Nixon that the scheduled October 23, 2013 execution of Allen Nicklasson would be postponed, and that the Missouri Department of Corrections (Department) would modify its execution protocol. At the time the motion to dismiss was filed, no execution protocol existed in Missouri. However, on October 18, 2013, the Department issued a new protocol, which specifies pentobarbital as the execution drug. The defendants informed the court of this development by a status report filed October 22, 2013 (Doc. 144), but have not amended their motion to dismiss. The execution of Joseph Franklin, previously scheduled for November 20, 2013, remains pending. On November 8, 2013, the Missouri Supreme Court issued an order rescheduling the execution of Allen Nicklasson for December 11, 2013.

1

Concurrent with the filing of this response to the motion to dismiss, plaintiffs are filing their motion to amend the complaint, and a proposed amended complaint. Taken together, the original petition and amended complaint demonstrate that this case is not moot. The prisoners' initial state-court petition alleged, among other things, that Missouri's then-proposed method of execution created cruel and unusual punishment and impermissibly increased the punishment over and above the method of execution in effect at the time of the prisoners' crimes. The amended complaint makes these same (and other) allegations against the new protocol. The new protocol, then, does not cure the illegalities of its predecessors. The constitutionality and legality of the new execution protocol is a live controversy which, for the sake of judicial economy, can best be resolved in this pending lawsuit. The motion to dismiss should be denied.

## PROCEDURAL HISTORY

1. On May 15, 2012, the State of Missouri issued a new execution protocol, specifying the use of propofol, an anesthetic, as the execution drug to be administered by lethal injection. Propofol had never before been included in an execution protocol.

2. On June 26, 2012, the plaintiffs in this matter filed a civil action in the Circuit Court of Cole County, Missouri, alleging that their executions using the May 2012 protocol would violate the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution and its Missouri counterpart,

the Ex Post Facto Clause of the United States Constitution and its Missouri counterpart, the Supremacy Clause of the United States Constitution, and the Separation of Powers Clause of the Missouri Constitution.

2.  On August 1, 2012, the defendants in this matter removed the case from the Circuit Court of Cole County to this Court.  The petition filed in the circuit court thus became the complaint in this Court.

3.  This Court established a scheduling order, and discovery and other motion practice followed.  On motion of the defendants (Doc. 3), this Court dismissed the plaintiffs' Supremacy Clause and Separation of Powers claims, but allowed the case to proceed on the Cruel and Unusual Punishments Clause and Ex Post Facto Clause claims.  (Doc. 31.)

4.  During the pendency of this lawsuit, the Missouri Department of Corrections has changed its execution protocol three times.  The first two changes, on August 1, 2013 (Doc. 117, Ex. 1) and September 24, 2013 (Doc. 139, Ex. 1), tinkered with the method by which the killing agent, propofol, would be administered.  The final change, on October 18, 2013, eliminated propofol entirely and substituted another drug, compounded pentobarbital, which has not previously been used for executions in Missouri.  (Doc. 144, Ex. 1).

# ARGUMENT AND AUTHORITIES

## I. A LIVE CONTROVERSY BETWEEN THE PARTIES EXISTS.

In their motion to dismiss, the defendants cite *Ringo v. Lombardi*, 677 F.3d 793 (8th Cir. 2012), where the court dismissed as moot a prior lethal injection challenge concerning the use of sodium thiopental because the state represented that the drug would not be used in future executions. There is a critical distinction between the situation in *Ringo* and the current state of affairs. At the time of the dismissal in *Ringo*, the state had not specified what execution drug it might try to use to kill the plaintiffs in that suit. Thus, there was no point in deciding the legal issues surrounding the use of sodium thiopental, and no other drug was specified. There was no live controversy for the court to consider. Here, on the other hand, the state has not left the court in doubt about its next course of action. And, as the concurrently filed amended complaint and supporting motion amply demonstrate, the new protocol is also subject to constitutional and statutory infirmities.

The new protocol eliminates propofol as the killing agent, but substitutes unregulated pentobarbital, and thus injects another layer of substantially likely pain and suffering into the process. The defendants plan to obtain their propofol from an undisclosed "compounding pharmacy." Such pharmacies often use counterfeit or substandard ingredients and poor manufacturing practices. As a result, their process "often results in drugs which are contaminated, subpotent or super-potent, which do not have the strength, quality or purity . . . required for the safe and effective treatment of patients." Amended Complaint Ex. 6, affidavit of

4

pharmacologist Dr. Larry Sasich, ¶17; see Amended Complaint, ¶80. In light of these hazards, "The potential harm associated with the use of such contaminated or sub-potent drugs is extremely high." Amended Complaint Ex. 6 at ¶14

The fact that the defendants' supplier and manufacturer of propofol is being concealed from plaintiffs and from the public creates even greater uncertainty as to the origins of the drug's ingredients, and especially its active pharmaceutical agent. *Id.* ¶ 20. "Chemicals used in compounding are highly suspect, and there is no practical way to verify their quality, constitution or uniformity in limited pharmacy settings." *Id.* ¶19, Amended Complaint ¶79, It is also unknown, and unlikely, that defendants' chosen pharmacy has the ability to implement scientifically recognized methods of analysis and testing that would identify the chemical as well as any harmful contaminants and agents that often appear in compounded drugs. Ex. 6 ¶¶ 20-22, Amended Complaint ¶79.

Like the old protocols, the new protocol retains the routine use of a central line to obtain venous access that was an important part of plaintiffs' objection to the previous protocols See, *e.g.*, Doc. 122, Ex. 2, Declaration of Mark Heath, p. 5. "Central IV access is inherently more invasive and painful than peripheral IV access, and is associated with much more serious and painful complications."

An execution method violates the Eighth Amendment when it creates "a substantial risk of serious harm, an objectively intolerable risk of harm." *Baze v. Rees*, 553 U.S. 35, 50 (2008) (opinion of Roberts, C.J.); *Nooner v. Norris*, 594 F.3d 592, 599 (8th Cir. 2010. The Amended Complaint includes the claim that the

5

defendant's new protocol presents such a risk. Amended, Complaint, Count I, ¶¶177-179. A discussion of the legal and factual basis for this count of the complaint is included in the Motion to Amend Complaint at pp. 1-5.

## II. THE DEFENDANTS CANNOT MEET THEIR BURDEN TO SHOW MOOTNESS.

In order to obtain dismissal of a case because it is moot, defendants must meet a "heavy burden." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1967); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-633 (1953). In order to meet this burden, defendants must show two things:

> (1) it can be said with assurance that "there is no reasonable expectation . . ." that the alleged violation will recur, [citations omitted], and
>
> (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. [citations omitted.]

*Los Angeles County*, 440 U.S. at 631.

The burden is particularly heavy when the defendants claim mootness based on their own voluntary cessation of the challenged conduct:

> Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '(t)he defendant. . . free to return to his old ways.' *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, . . . (1953). . . . A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. But here we have only appellees' own statement that it would be uneconomical for them to engage in any further joint operations. Such a statement, standing alone, cannot suffice to satisfy the heavy burden of

6

persuasion which we have held rests upon those in appellees' shoes.

*U.S. v. Concentrated Phosphate Export Assn.,* 383 U.S. 199, 203 (1963); *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 609 (2001); *Lowry v. Watson Chapel School District*, 540 F.3d 752, 761 (8th Cir. 2008).

The defendants in this case have not made, and cannot make, this showing. There is no assurance that the Department will permanently and indefinitely refrain from using propofol, and even if there were, the Department's current method of execution also inflicts unconstitutional pain and suffering.

### A. There is a reasonable expectation that the alleged violation will recur.

The governor of the State of Missouri, in his press statement, directed the Missouri Department of Corrections to modify its protocol. It is worth noting that the governor did not commit to NEVER using propofol as an execution drug. He stated simply,

> As Governor, my interest is in making sure justice is served and public health is protected. That is why, in light of the issues that have been raised surrounding the use of propofol in executions, I have directed the Department of Corrections that the execution of Allen Nicklasson, as set for October 23, will not proceed. I have further directed the Department to modify the State of Missouri's Execution Protocol to include a different form of lethal injection. The Attorney General will immediately request a new execution date for Allen Nicklasson from the Missouri Supreme Court.

Doc. 143, Ex. 1, Amended Complaint, Ex. 1.

7

Although the governor did not so acknowledge directly, his decision was apparently based not on an admission that the use of propofol would be cruel and unusual punishment, but on the realization that the use of propofol to execute Missouri prisoners would imperil the supply of that important drug to surgeons and anesthesiologists. See, *e.g.*, Suggestions in Support of Fresenius Kabi U.S.A., LLC's Motion to Appear as *Amicus Curiae* (Doc. 126), p. 4:

> All of Fresenius Kabi's Propofol is manufactured in Europe and European Regulation prevents products that may reasonably be expected to be used in executions from being exported from the European Union. This fact puts the supply of Propofol in danger yet again to the critical detriment of literally millions of patients in the US. Should Propofol be used for lethal injection by one or more departments of corrections in the US, contrary to the approved indications and usages of the drug, this act could put the supply of Propofol in the US at risk for the millions of patients that rely on this drug every year.

Since the governor did not acknowledge any legal or constitutional infirmity in the use of propofol, there is no reason to think that propofol might not be used in the future if this obstacle ceases to exist.

Moreover, the gravamen of the plaintiffs' original petition was not that the use of *propofol* was unconstitutional. It was that they are entitled to be free of cruel and unusual punishment in the manner of their execution. The United States Supreme Court so recognized in *Baze v. Rees*, 553 U.S. 35 (2008). The fact that the State of Missouri has changed from one constitutionally infirm protocol to another does not render this case moot.

### B. The defendants' violation of the Constitution continues to harm plaintiffs.

The new protocol proposes, instead of killing the prisoners with propofol, to use pentobarbital manufactured by an unregulated "compounding pharmacy." This course of conduct will inflict upon the prisoners numerous medical risks that are readily identifiable, documented by expert evidence, and known to be severe.

The new protocol retains the routine use of a central line to obtain venous access that was an important part of plaintiffs' objection to the previous protocols See, *e.g.*, Doc. 122, Ex. 2, Declaration of Mark Heath, p. 5. "Central IV access is inherently more invasive and painful than peripheral IV access, and is associated with much more serious and painful complications." (See Amended Complaint, ¶¶54-58, 180, Motion to Amend Complaint, pp. 3, 5).

The situation here is thus similar to that in *Kennedy Building Associates v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004). There, the defendant entered into a stipulation with a third party to negotiate a resolution to the violation on which the plaintiff's claim was based, and argued that the lawsuit was now moot. Declining to dismiss, the court found, "Viacom did not abate the contamination. Whether abatement ever occurs depends on future events entirely outside Kennedy's control." *Id.* The court went on,

> As the Supreme Court pointed out in *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 191-92. . . (2000), the question of mootness, unlike that of standing, is likely to be raised after years of litigation when the case is far advanced. Because of that societal investment in the case, "to abandon the case at an advanced stage may prove more wasteful than frugal." *Id.*

9

> at 192. . . . If the suit were to be dismissed upon an
> agreement between third parties to perform at some time
> in the future, if "some impediment arises or some
> prolonged delay ensues" in the planned performance, the
> plaintiff would be "at square one."

*Id.*

The Missouri Supreme Court has held that the Missouri Administrative Procedure Act, which requires that state regulations be issued only after notice and comment, does not apply to execution protocols. *Middleton v. Missouri Department of Corrections,* 278 S.W.3d 193 (2009). Thus, as the events of the past year have shown, the Missouri Department of Corrections can change the protocol at will with no notice to the public or to the inmates who will be executed.

Like the plaintiff in *Kennedy*, the plaintiffs here have no way to control the state of Missouri's use of its power to issue unconstitutional execution protocols at will. Only a final judgment in this matter will satisfy the plaintiffs' interest in being free from the constitutional violations at issue in this litigation.

### III. JUDICIAL ECONOMY FAVORS THE CONTINUATION OF THIS SUIT.

The parties in this case have spent the last 16 months conducting discovery and litigating the nature and scope of the right to be free from cruel and unusual punishments and ex post facto laws. The execution of one of the plaintiffs is twelve days away, with another scheduled to be executed less than a month later. As the proposed amended complaint demonstrates, the defendants' most recent execution protocol, like its predecessors, violates the Cruel and Unusual Punishments Clause,

10

the Ex Post Facto Clause, and a number of other state and federal laws and constitutional provisions.

The change in the state's procedure has been fully addressed in the plaintiffs' proposed amended complaint. The right to file such a complaint when the defendants change their practice during the pendency of a lawsuit is discussed in plaintiffs' motion to amend the complaint; it is clear.

When there has been "substantial investment of judicial time and resources in the case," judicial economy militates against dismissal. *Pioneer Hi-Bred International v. Holden Foundation, Inc.,* 35 F.3d 1226, 1242 (8th Cir. 1994). "[T]he interest of judicial economy favors resolving as many legal issues as possible before rendering a final judgment." *Block Financial Corp. v. Lending Tree, Inc.,* 2010 WL 68788*2 (W.D. Mo. 2010).

The initiation of new litigation to attack the same constitutional violations alleged in the pending action is unnecessary, and a poor expenditure of both the resources of the Court and those of the parties. This is particularly true where, as a major consequence of the defendants' violations, the executions of Joseph Franklin and Allen Nicklasson, are imminent. This is, in short, a spectacularly bad time to require the plaintiffs to return to "square one."

For the foregoing reasons, plaintiffs pray the court to deny the defendants' motion to dismiss.

Respectfully submitted,

/s/ <u>Elizabeth Unger Carlyle</u>, MO41930
P.O. Box 30418
Kansas City, MO 64112
816-525-6540
*Counsel for Plaintiffs Barnett, Clayton L. Taylor, and Zink Cole*

John William Simon, Mo. 34535
Constitutional Advocacy, L.L.C.
7201 Delmar Blvd, Suite 201
St. Louis, MO 63130-4106
(314) 604-6982 ·FAX (314) 645-1776
*Counsel for Plaintiffs Bucklew, Ringo and M.A. Taylor*

Lowell D. Pearson, Mo. 46217
Husch Blackwell LLP
235 East High Street
Jefferson City, Missouri 65102-1251
573-761-1115 · FAX 573-634-7854
*Counsel for Plaintiff Clemons*

Jennifer Herndon, Mo. 37921
224 Hwy 67 North, # 122
Florissant, Mo 63031
314-831-5531 · FAX 314-831-5645
*Counsel for Plaintiffs Franklin, Ferguson, Goodwin, Nicklasson, Nunley, and Storey*

Joseph W. Luby, MO48951
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, MO 64113
816-363-2795
*Counsel for Plaintiffs Winfield and*

Cheryl Ann Pilate, Mo. 42266
Morgan Pilate LLC
926 Cherry Street
Kansas City, MO 64106
816-471-6694 · FAX 913-829-6446
*Counsel for Plaintiffs Bucklew and Smulls*

Charles M. Rogers, Mo. 25539
Wyrsch Hobbs Mirakian, P.C.
1000 Walnut, Suite 1600
Kansas City, Missouri 64106
816-221-0080 · FAX -816-221-3280
*Counsel for Plaintiff Smulls*

Richard H. Sindel, Mo. 23406
Kathryn B. (Kay) Parish #61781
Sindel Sindel & Noble, P.C.
8000 Maryland, Suite 350
Clayton, Missouri 63105
314-721-6040 · FAX -314-721-8545
*Counsel for Plaintiffs Barnett, Middleton, Ringo, and Zink*

12

Case 2:12-cv-04209-NKL   Document 148   Filed 11/08/13   Page 12 of 14

Michael J. Gorla, Mo. 26399
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
314-621-1617 · FAX (314) 621-7448
*Counsel for Plaintiffs Ferguson,
Goodwin, and Nunley*

Susan M. Hunt, Mo. 36130
1600 Genessee, Suite 806
Kansas City, Missouri 64102
816-221-4588 · FAX 816-220-0856
*Counsel for Plaintiff Clayton*

Gary E. Brotherton, Mo. 38990
Legal Writes, LLC 640
910 E. Broadway, Ste. 202
Columbia, Missouri 65203
573-875-1571 · FAX 573-875-1572
*Counsel for Plaintiff L. Taylor*

Kevin L. Schriener, Mo. 35490
Law & Schriener, LLC
141 N. Meramec Ave. # 314
Clayton, Missouri 63105-3705
314-480-3389 · FAX 314-863-7096
*Counsel for Plaintiff Storey*

Gino F. Battisti, Mo. 33148
Foley & Mansfield, PLLP
1001 Highlands Plaza Dr. W.
Suite 400
St. Louis, MO 63110
314-925-5700 · FAX 314-925-5701
*Counsel for Plaintiff Worthington*

Eric W. Butts, Mo. 36184
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
314-621-1617 · FAX 314-621-7448
*Counsel for Plaintiffs Christeson
and Rousan*

S. Paige Canfield, Mo. 36777
3889 Juniata
St. Louis, Missouri 63116
314-664-7635
*Counsel for Plaintiffs Franklin
and Nicklasson*

Phillip M. Horwitz, Mo. 38493
640 Cepi, Suite A
Chesterfield, Missouri 63005
636-536-9644 · FAX 636-536-7729
*Counsel for Plaintiffs Christeson
and Rousan*

Jessica E. Sutton, Mo. 63660
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri 64113
816-363-2795 · FAX 816-363-2799
*Counsel for Plaintiff Cole*

Kent E. Gipson, Mo. 34524
121 E. Gregory Boulevard
Kansas City, Missouri 64114
816-363-4400
kent.gipson@kentgipsonlaw.com
*Counsel for Plaintiff Worthington*

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing was forwarded for transmission via Electronic Case Filing (ECF) on :November 8, 2013, for service upon counsel for defendants: Michael J. Spillane and Susan Boresi, Office of the Attorney General, P.O. Box 899, Jefferson City, Missouri 65101.

               <u>/s/ Elizabeth Unger Carlyle</u>