IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

DAVID ZINK, et al.,          )
                              )
      Plaintiffs,         )
                              )
      v.                 )      Case No. 2:12-CV-4209-NKL
                              )
GEORGE A. LOMBARDI, et al.,  )
                              )
      Defendants.     )

## MOTION FOR SANCTIONS

COME NOW, Plaintiffs, by and through counsel and hereby move this honorable Court for sanctions against Defendants for their bad-faith and dilatory conduct specifically calculated to prevent Plaintiffs from accessing information in Defendants' possession which is relevant and probative of fundamental issues in this case and thereby enabling Defendants to kill plaintiffs without Plaintiffs having their day in court or access to information Defendants will say is necessary in order for plaintiffs to prove their claims.   Plaintiffs request as a sanction for this conduct that this Court enter an order enjoining plaintiffs from carrying out any executions until at least such time as Defendants have fully and complied with their discovery obligations in this case and further for attorneys' fees and other costs and expenses incurred by plaintiffs as a result of Defendants' conduct. In support of this motion, Plaintiffs state:

1

## Statement of Facts

1. On May 15, 2012, the Missouri Department of Corrections (Department) announced a new execution protocol using propofol as the lethal agent, and filed motions in the Missouri Supreme Court two days later requesting that execution dates be set in 19 of plaintiffs' cases. Neither the state attorney general nor the Department notified the Missouri Supreme Court of the new protocol's adoption or the basis for doing so. Doc. 31.

2. On June 26, 2012, plaintiffs filed a petition in the Circuit Court of Cole County, Missouri, challenging the protocol under the Eighth and Fourteenth Amendments to the United States Constitution as well as their Missouri counterparts, the ex post facto laws of both Constitutions, the Supremacy Clause, and the separation of powers guaranty provided in Mo. Const. art. II § 1. Three days later, the Missouri Supreme Court issued orders in six of plaintiffs cases, directing plaintiffs to show cause why execution dates should not be set in those cases. In these orders, the Missouri Supreme Court acknowledged that "The United States Supreme Court has established additional procedures by which those sentenced to death can challenge not only whether they committed the crime, *but also whether the method of execution is appropriate.*" Exhibit A, order of June 29 at 2 (emphasis supplied). The Court characterized these lawsuits as a modern development that is part and parcel to capital jurisprudence which, just like direct appeals or habeas corpus actions, often can "necessarily" delay the setting of execution dates when the attorney general requests them. *Id.*

3.   On August 1, 2012, Defendants removed this case to this Court and one week later filed a Motion to Dismiss the case (Doc. 3).   In an order issued November 16, 2012, this Court denied the motion as to the central grounds.

4. On August 14, the Missouri Supreme Court issued an order acknowledging the litigation regarding the new protocol and the legitimate legal concerns that were raised by it.   Exhibit B, August 14 Order.   The Court declared at that time that it would be premature to rule on any motions to set execution dates before such times as "the parties promptly resolve[d]" the issues before this Court.   *Id.*

5.   On December 22, 2012, Plaintiffs served their first set of interrogatories and requests for production on Defendants. Doc. 41.   On February 4, 2013, close to two weeks after the due date for these responses under FRCP Rules 33(b)(2) and 34(b)(2)(a), Defendants served their responses on Plaintiffs' counsel. Docs. 45 -46. The responses were largely incomplete and failed to respond to a number of Plaintiffs' legitimate discovery requests.   On February 21, Plaintiffs' counsel sent Defendants' counsel a letter outlining various deficiencies in the Defendants' February 4 responses.   Exhibit C.   On March 26, 2013, more than a month after Plaintiffs' February 21 letter, Defendants sent Plaintiffs a supplementary response to Plaintiffs' previous interrogatories along with a cover letter further clarifying certain issues raised in Plaintiffs' letter. Doc. 62.   The letter left a number of relevant issues unaddressed and legitimate discovery requests largely unanswered. Plaintiffs immediately requested a phone conference with the Court in order to resolve the discovery issues, and briefed the Court on these issues.

3

6.   In a phone conference held on April 5, 2013, the Court overruled the bulk of Defendants' objections and ordered that Defendants disclose what they had styled as the "non-public portions" of the execution protocol "for attorneys eyes only." Doc. 68.   Defendants did not do so.   Instead, they waited five days, then moved for a stay of this Court's order and simultaneously filed a Petition for a Writ of Mandamus in the 8th Circuit Court of Appeals. Docs. 72 - 73.   On April 16, this Court ordered Defendants to produce the entirety of the execution protocol for in camera review by the Court.   Doc. 78.   On review of this material, this Court ordered relevant portions disclosed to the plaintiffs.   It was disclosed on June 7, 2013.   Doc. 103.

7.   On April 5, this Court ordered Defendants to provide Plaintiffs with their expert report. Doc. 68.   They did not do so.   Instead, on April 8, Defendants disclosed a "summary of the facts and opinions of M3 in another attempt to deny Plaintiffs due process by utilizing M3 as an expert witness without disclosing his identity or subjecting him to any of the scrutiny that expert witnesses are normally and justifiably subject to in disclosing their expert opinions.   Three days later, this Court *again* ordered Defendants to provide Plaintiffs with an expert report of M3, "in accordance with the Court's order of 4/05/2013." Doc. 76.   In a teleconference on April 15, this Court directed the parties to brief the issue of disclosure of M3's identity, and further ordered that Defendant M3 provide further responses to his previously incomplete interrogatory responses within two weeks.   Doc. 78.   On April 22, Plaintiffs filed a motion to compel the same expert report of M3 that this Court had already twice ordered Defendants produce.   On April 25, Defendants

4

withdrew their designation of M3 as an expert witness, claiming their intent to use him as a "fact witness" only. Doc. 87. They later withdrew his designation as witness altogether (Doc. 107), but only after this Court denied their motion for a protective order with regard to his identity (Doc. 105).

9. On August 2, 2013, after the completion of all depositions and barely two months before trial was scheduled, Defendants notified Plaintiffs of their second propofol protocol. Doc. 115. Plaintiffs had attempted to adduce from David Dormire information about whether they intended to amend the protocol just two weeks prior to that when taking Mr. Dormire's deposition. Dormire testified that he believed "we do need to make some amendments" to the protocol. See Ex. D (Dormire Deposition), at 27-28. Plaintiffs' counsel asked Mr. Dormire what amendments might be made and when. *Id.* At that time, just two weeks before the amended protocol was released, Mr. Dormire claimed that he did not know when any changes might be made. Defense counsel specifically instructed Mr. Dormire not to answer when Plaintiffs' counsel asked him to specify the changes themselves, asserting that changes to the protocol amounted to "work product" until such time as Defendants had formally issued an amended protocol. *Id.* at 28. However, even once the amended protocol was released, Defendants provided Plaintiffs with no further discovery as to the amended protocol.

10. Since August 1, Defendants have made no less than three additional changes to their proposed methodology for killing the Plaintiffs. After Defendants notified Plaintiffs of the August 1 protocol, Plaintiffs promptly studied and

5

investigated the new protocol to the greatest extent possible, worked with their experts to obtain affidavits, and filed a motion for a short extension of the discovery deadline and corresponding continuance of the trial date. Doc. 124. Consistent with Defendants' positions throughout this litigation, Defendants stated no objection to re-opening discovery, but objected to giving adequate time to conduct discovery into Defendants' practices and to fully investigate the implications of the new protocol prior to trial. On September 19, while that motion was still pending, Plaintiffs served on Defendants a second set of interrogatories and requests for production. Doc. 138. Along with the second set of interrogatories, Plaintiffs' counsel sent Defendants a letter reminding defendants of their continuing obligations to update their previous discovery responses and requesting updated responses to plaintiffs first set of interrogatories and requests for production. Exhibit E. Defendants have still not responded to this second set of interrogatories or the letter requesting that their previous discovery responses be supplemented.

10. Five days later, Defendants again issued changes to the propofol protocol. After controversy over the use of propofol in executions ensued in the public sphere, Governor Nixon ordered the Department to adopt a different method of lethal injection on October 11, and thereby forego (for the time being) the possibility of using propofol to kill the plaintiffs, as the parties in this case had been litigating for over a year. On October 18th, the Department issued its first pentobarbital protocol. On November 15, 2013, five days before the scheduled execution of Joseph Franklin, Defendants made yet another change to the October

6

18th protocol, which they first announced in their response to former Plaintiff Franklin's motion for stay of execution filed in this Court on November 19, 2013. Doc. 149, Ex. 1.

11.    On October 10, Plaintiff's counsel sent a letter reminding Defendants' counsel of their obligation to supplement their discovery responses and requesting that they do so.    Exhibit F.    Defendants did not respond.    On October 25, in light of the change in protocol for Joseph Franklin's upcoming execution, Plaintiffs served a third set of interrogatories and third request for production on Defendants.    With those interrogatories, Plaintiffs sent a cover letter requesting that responses to these requests be filed within 10 days, as opposed to the normal thirty day time period so that Plaintiffs could have the relevant information in time to utilize it in litigating their motions to stay former Plaintiff Franklins execution.    Exhibit G.    Defendants did not respond.    On November 24, more than two weeks ago, the thirty-day deadline for responding under FRCP Rules 33 and 34 expired.    Defendants have still not responded.    On December 5, Plaintiffs' counsel sent Defendants a letter demanding that they respond to the interrogatories and again requesting that they supplement their previous answers in accordance with their continuing obligation to supplement their discovery.    Exhibit H.    Defendants have still not responded, other than by moving for a protective order to restrict disclosure of the compounding pharmacy that Defendants have dubiously named to their "execution team".

12.    Aside from the interrogatories served already, plaintiffs have made other attempts to get the information they need from Defendants.    On November 5, former

7

State Senator Joan Bray sent on behalf of all plaintiffs a request to the Department of Corrections for information about the source, supply, and potential purity and efficacy of the compounded pharmacy pentobarbital in the Defendant's possession. Exhibit I. A few days later, Ms. Bray received a response dated November 6, stating that it would take three weeks to gather the information. Exhibit J. Despite the Missouri Sunshine law's requirement that the requested documents be provided within three business days, this conveniently, would have put the date that these documents were received after Joseph Franklin's execution date. On November 21, the day after Joseph Franklin was executed, Ms. Bray received a response to her request. The response (dated November 18 and sent via U.S. mail) was notably sparse and highly redacted. Exhibit K. Requests made by individual plaintiffs as well as requests by the ACLU and St. Louis Public Radio were met with similar results.

14. On November 20, 2013, Defendants intentionally killed plaintiff former Plaintiff Joseph Franklin. They did so despite the fact that there was still a motion pending before this Court for a stay of execution in his case based on meritorious issues that had previously been before this Court on another stay motion but remained unresolved. In overruling this Court's well-reasoned order staying the execution, the Eighth Circuit simply stated that plaintiffs had not met their evidentiary burden as to the Eighth Amendment violation on which this Court based its order. This was in direct response to Defendants' argument that Plaintiffs had not produced sufficient evidence of their claims. Defendants vigorously promoted

8

these arguments while completely ignoring discovery deadlines and thereby denying Plaintiffs the evidence they needed to support and further investigate their claims – evidence that was (and remains) in the exclusive possession of the Defendants. The Court justifiably condemned this tactic when it stayed Mr. Franklin's execution. See Doc. 163 at 10-11 ("Defendants cannot repeatedly change the execution protocol, including within five days of a scheduled execution, and rely on Plaintiffs' lack of time to research the protocol's effects when arguing that Plaintiffs have not presented a substantial likelihood of success on the merits.")

15.　On November 26, 2013, this Court directed that motions for stay of Mr. Nicklasson's execution be filed no later than 48 hours before the scheduled execution. Counsel for Mr. Nicklasson filed a motion for stay on December 3. That motion is now pending before this Court. After full briefing, counsel for defendants filed a supplemental response to the motion, citing new evidence, at 12:19 p.m. today, less than twelve hours before the scheduled execution. Counsel for plaintiffs have worked diligently, but have been unable to complete this motion before today because of similar interruptions. Plaintiffs request that it be given expedited consideration since it requests a delay of Mr. Nicklasson's execution as well as that of the other plaintiffs.

<u>Argument</u>

Plaintiffs have done all that they can under the limits of the current protective order to obtain information they need to prosecute their case. The remaining necessary evidence is under the exclusive control of the Defendants, and despite their

obligations under the rules of discovery, the Attorney General's ethical obligations as "administrators of justice" and the rules of this Court and requirements of due process, they have consistently shirked their obligations and refused to provide this information in a timely manner.

In depositions while discovery was still pending, they refused to provide answers to questions aimed at delineating whether there were upcoming changes in protocol. They disclosed those changes only after the discovery deadline in this case. They provided sparse and incomplete answers in their tardy responses to Plaintiffs' first set of interrogatories and requests for production, and forced Plaintiffs and this Court to spend months litigating frivolous objections to Plaintiffs' wholly reasonable and lawful discovery requests. They have completely failed to respond to Plaintiffs' second and third sets of interrogatories and production requests, and ignored Plaintiffs' repeated requests that they supplement their original responses as required. They have done so while attempting to kill Plaintiffs one by one, and, as an argument in support of their right to do so, successfully urged that *Plaintiffs* have failed to produce evidence of their claims, while simultaneously violating the rules of this Court and depriving Plaintiffs of the very evidence they need. They disregarded and ignored a pending motion in this Court and proceeded with Joseph Franklin's execution.

The defendants have tied the hands of Plaintiffs' attorneys even while tying a noose around Plaintiffs' own necks. Their conduct has been intentionally dilatory, unethical, unworthy of the people of the State of Missouri, plainly reprehensible, and

clearly calculated to deprive Plaintiffs of due process of law—their ability to investigate their claims and have them heard in this Court. In its order of May 31, 2012, the Missouri Supreme Court rightly described the setting of execution dates as a "solemn duty." Exhibit A. Defendants have treated the entire process not as a solemn undertaking, but rather, as this Court aptly described it in its order of November 19 "a game of chess" (Doc. 163) to be won at any cost, even at a cost of a disregard for the law, and a loss of integrity of the justice system. As this Court rightly stated in its order of November 19, "[L]itigation is not a game of chess. *Hill* was . . . . never intended to be used as a sword permitting defendants to disrupt and delay the litigation process and then complain that time is up. . . . It would be a substantial departure from the way in which law suits are generally handled by this Court, to allow Defendants to succeed with this strategy." Doc. 163 at 11-12.

I. THIS COURT CAN AND SHOULD SANCTION THIS BEHAVIOR BY PROHIBITING THE DEFENDANTS FROM GOING FORWARD WITH EXECUTIONS UNTIL SUCH TIME AS THEIR DISCOVERY OBLIGATIONS HAVE BEEN MET IN THIS CASE.

The inherent powers of federal courts are those which "are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812). The most prominent of these is the contempt sanction,"which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court . . . ." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752 at 764-765 (citing *Cooke v. United States*, 267 U.S. 517, 539, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925); see 4 W. Blackstone, Commentaries *282–*285). It

11

is long-recognized and "well-acknowledged" that the Court has "inherent power . . . to levy sanctions in response to abusive litigation practices." *Id.* (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962)).

A court's inherent power includes the discretionary "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32,44–45 (1991) .... "[W]hether the extent of a sanction is appropriate is a question peculiarly committed to the district court." *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 268 (8th Cir. 1993). Over the years, the Supreme Court has found inherent power to include the ability to dismiss actions, assess attorneys' fees, and to impose monetary or other sanctions appropriate "'for conduct which abuses the judicial process.'" *Harlan v. Lewis*, 982 F.2d 1255, 1264-1265 (8th Cir. 1993). Additionally, other courts can and have issued a variety of other sanctions, including granting judgment in a party's favor *(Pan American Grain Mfg. Co., Inc. v. Puerto Rico Ports Authority*, 295 F.3d 108, 53 Fed. R. Serv. 3d 593 (1st Cir. 2002); reprimanding the offending attorney or suspending or disbarring him from practice before the court, or referring the offending attorney to the appropriate disciplipary greivance committee (*Smith v. Our Lady of the Lake Hosp., Inc.*, 135 F.R.D. 139(M.D. La. 1991), rev'd on other grounds, 960 F.2d 439 (5th Cir. 1992) (*Orlett v. Cincinnati Microwave*, Inc., 954 F.2d 414, 22 Fed. R. Serv. 3d 124 (6th Cir. 1992)(*In re Snyder*, 472 U.S. 634 (1985); enjoining a party from filing additional pleadings or papers unless he or she meets certain requirements (*Matter of United Markets Intern., Inc.*, 24 F.3d 650 (5th Cir. 1994); *Weissman v. Quail Lodge, Inc.*, 179

12

F.3d 1194 (9th Cir. 1999)); excluding evidence (*Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444 (1st Cir. 1997); and judicial estoppel (barring a litigant from asserting a position that is inconsistent with one he or she previously took before a court or *agency) Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773 (3d Cir. 2001).

When issuing non-monetary sanctions, Courts have consistently aimed to "fashion appropriate sanctions" (Chambers, 501 U.S. at 44–45), based on the conduct of the offender, the harm to the other party, and the need to discourage the offending behavior, or, in other words, to make the punishment fit the crime.   In *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691 (8th Cir. 2001) for example, the Eighth Circuit upheld the district court's very harsh sanction of dismissing the plaintiff's case, where the plaintiff had failed to produce certain information pursuant to discovery requests and misled defendants in answers to questions in depositions.   In upholding the district court's decision, the Eighth Circuit emphasized the lower court's findings that, "[d]ismissal was the only sanction that would effectively punish [plaintiff], lessen the prejudice to [the defendant], and protect the integrity of the proceeding."   *Id.* at 695.   Similarly, in *Coleman v. Smith*, 814 F.2d 1142 (7th Cir. 1987), the Seventh Circuit upheld the entry of default judgment against certain defendants where they had failed to meet the terms of discovery rules and pre-trial orders, and produced certain discovery documents only after the close of discovery. In upholding the order, the Seventh Circuit quoted from the district court's order: Defendants' actions (or more accurately inactions) have stymied plaintiff's ability to

13

proceed with this lawsuit. They and their counsel have repeatedly ignored this Court's orders and warnings regarding non-compliance. It is unreasonable to require [plaintiff], his counsel or this Court to engage in a constant battle against this recalcitrant and obstructionist behavior." *Id.* at 1146. The court further ruled that the fact that the abuses were the attorneys' and not fully the defendants' themselves did not excuse the behavior or make the sanction any less appropriate. *Id.*

The extreme remedies of dismissal and default judgment upheld by the appellate courts in these cases evince the abundant reasonableness of the sanctions Plaintiffs are requesting in this case. As in *Coleman* and *Martin*, the Defendants in this case have evaded, avoided, misled, made frivolous objections, and done everything in their power to obstruct Plaintiffs' attempts to obtain the information they needed in order to litigate this lawsuit.

Defendants' conduct is particularly reprehensible when considered in light of the fact that Defendants in this case are representatives of the State of Missouri, and Defendants' counsel bear the particular ethical duties incumbent on the Attorney General's office as prosecuting attorneys and the defenders of state action. "The prosecutor is an administrator of justice, an advocate, and an officer of the court . . . ." American Bar Association Stds. For Ethical Conduct, Criminal Justice Standards 3 -1.2(b), available at:

http://www.americanbar.org/publications/criminal_justice_section_archive/ crimjust_standards_pfunc_blkold.html. "The duty of the prosecutor is to seek justice, not merely to convict." *Id.* at 3 -1.2(b). "A prosecutor is expected at times to

14

step out of this conventional adversarial role and *to act as a monitor both of substantive and procedural justice in ways not expected [of other attorneys.]*" Peter Joy and Kevin McMunigal, "Why Should Prosecutors "Seek Justice'", 20 Crim.Just ? available at http://www.americanbar.org/publications/criminal_justice_magazine_home/crimjust_cjmag_20_2_ethics.html (emphasis added).

> The government's overarching interest in justice. . . . In representing the government, a prosecutor represents all of the citizenry— including, in a sense, the accused. In this role . . . a prosecutor must decide what is in the public's interest . . . . In making these decisions, courts and ethics rules direct a prosecutor to act fairly and impartially, and *to seek procedural as well as substantive justice for the accused*."

*Id.* at ?.

The procedural and substantive justice for the accused has been of no concern to Defendants or their counsel as they have continued to seek to kill Plaintiffs while intentionally delaying this action and denying them the evidence they need to investigate their case. Defendants' conduct merits sanctions. *See Harlan v. Lewis,* 982 F.2d 1255, 1260 (8th Cir. 1993) (Conduct which violated the Model Rules of Professional Conduct and the Arkansas Rules of Evidence and which reflected, "an intentional effort to obstruct the proper flow of relevant information in the discovery process" merited sanctions.)

The remedy requested by Plaintiffs in this action, an order precluding Defendants from carrying out any executions until such time as they have fulfilled all

of their discovery obligations in this case, is highly reasonable. Defendants have repeatedly moved the target with regard to the action of this lawsuit after the completion of discovery, have not been compliant with their obligations under the discovery rules at any time, and have proceeded with killing at least one Plaintiff without giving this Court an opportunity to address meritorious issues that were before it on a motion for a stay of execution. Entering an order prohibiting the Defendants from proceeding with any executions until all discovery issues are resolved in this case is the least burdensome sanction the Court can impose which would also serve to "effectively punish [defendants], lessen the prejudice to [the plaintiffs]," and perhaps most importantly, "protect the integrity of the[se] proceeding[s]." *Martin,* 251 F.3d at 695. While any harm to Defendants is minimal, as this Court has previously pointed out, "[A]ny harm to Defendants caused by a stay is entirely self-inflicted. . . . In the face of such a grave consequence as that of the death penalty," this Court should not reward Defendants' attempts to prevent Plaintiffs from fully litigating their claims." Doc. 163 at 12-13. It is also the only way to assure that this Court has all of the information and evidence it needs when engaging in one of its most solemn duties of determining whether to stay an execution of an individual or to allow an execution to proceed.[1]

---

[1] An alternative sanction would be for this Court to assume that all information requested by but not yet provided to the plaintiffs would support the plaintiff's claims in the most favorable manner possible. See e.g. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277 (8th Cir. 1995) (As a sanction for plaintiff's bad conduct in destroying certain "tire" evidence, the jury was instructed that the purchase date of the tire was July 6, 1997, a fact that was disputed, but whose resolution in that manner contributed to the Defendants' theory of the case).

While support for the death penalty is waning in this country, it remains the policy in states such as Missouri under the general belief that the unlawful killing of another human being is contemptible behavior that must be severely punished, and that under only a narrow set of circumstances is the killing of another human being lawful and justified. The contempt for the rules of this Court and the requirements of due process that defendants have displayed throughout this litigation is irreconcilable with the concept of an execution carried out within the bounds of fair and due process, thus rendering the behavior of the Defendants themselves in executing the plaintiffs the very type of "unlawful killing" that the death penalty is meant to deter. The Defendants should be sanctioned, such that no more executions are carried out until such time as they have given the plaintiffs the full discovery they are entitled to and that is needed in order for them to fully litigate their claims before this Court.

## II. THIS COURT SHOULD AWARD PLAINTIFFS ATTORNEY'S FEES AND COSTS FOR THE TIME SPENT LITIGATING DEFENDANTS' FRIVOLOUS MOTION AND FOR THE ADDITIONAL COSTS INCURRED AS A RESULT OF DEFENDANTS INDECISION.

It has long been well-established that a Court may sanction parties under its inherent power by assessing attorney's fees and costs associated with bad-faith and vexatious conduct against the offending party. *Chambers v. NASCO, Inc.*, 501 U.S. 32. In this case, plaintiffs are specifically requesting the following:

17

a.      That Defendants be ordered to pay fees associated with litigating Defendants' attempts to utilize M3 as an expert without disclosing highly relevant identifying information;

b.      That Defendants be ordered to pay fees and costs associated with Plaintiffs' repeated attempts to follow-up with and enforce compliance with their reasonable discovery requests, including the costs of litigating the instant motion;

c.      That Defendants be ordered to pay fees and costs associated with having to amend their pleadings and re-open and repeat the entire discovery process, including, but not limited to payment of the additional expert fees, deposition fees, and attorney's fees for time spent repeating work that has already been done, and litigating issues that are raised thereby.

<u>Conclusion</u>

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court sanction Defendants by entering an order precluding them from going forward with executions until such time as they have completed their discovery obligations under this lawsuit, and further requiring that they pay plaintiffs attorney's fees and costs resulting from their intentionally dilatory and obstructionist bad-faith conduct.

*Respectfully Submitted,*

18

/s/ Kathryn B. Parish
Kathryn B. Parish, MO61781
Sindel, Sindel and Noble, P.C.
8000 Maryland, Suite 350
Clayton, MO 63105
314-721-6040
FAX: 314-721-8545
Counsel for Plaintiffs Barnett, Ringo,
Middleton, and Zink

John William Simon
Constitutional Advocacy, LLC
7201 Delmar Blvd., Suite 201
St. Louis, Missouri   63130-4106
314-604-6982 FAX 314-754-9083
    Counsel for Plaintiffs Bucklew,
    Ringo, and M.A. Taylor

Joseph W. Luby
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri 64113
816-363-2795 FAX 816-363-2799
Counsel for Plaintiffs Winfield
    and Cole

Elizabeth Unger Carlyle
P.O. Box 30418
Kansas City, Missouri   64112
816-525-6540 FAX 866-764-1249
Counsel for Plaintiffs Barnett,
    Clayton, L. Taylor,
    and Zink

Cheryl Ann Pilate
Morgan Pilate LLC
926 Cherry Street
Kansas City, Missouri   64106
816-471-6694 FAX 816-472-3516
Counsel for Plaintiffs Bucklew and
    Smulls

Charles M. Rogers
Wyrsch Hobbs & Mirakian, P.C.
1000 Walnut, Suite 1600
Kansas City, Missouri 64106
816-221-0080 FAX 816-221-3280
Counsel for Plaintiff Smulls

Lowell D. Pearson
Husch Blackwell LLP
235 East High Street
Jefferson City, Missouri 65102-1251
573-761-1115 FAX 573-634-7854
Counsel for Plaintiff Clemons

Jennifer A. Herndon
224 Hwy 67 North, # 122
Florissant, Missouri 63031
314-831-5531 FAX 314-831-5645
Counsel for Plaintiffs Franklin,
    Ferguson, Goodwin,
    Nicklasson, Nunley,
    and Storey

Richard H. Sindel, Mo. 23406
Sindel Sindel & Noble, P.C
8000 Maryland, Suite 350
Clayton, Missouri 63105
314-721-6040
FAX 314-721-8545
Counsel for Plaintiffs Barnett,
    Middleton, Ringo, and Zink

19

Michael J. Gorla
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
314-621-1617   F (314) 621-7448
Counsel for Plaintiffs Ferguson,
    Goodwin, and Nunley

Eric W. Butts
555 Washington Ave., Suite 600
St. Louis, Missouri 63101
314-621-1617 FAX 314-621-7448
Counsel for Plaintiffs Christeson
and Rousan

Susan M. Hunt
819 Walnut Street
Kansas City, Missouri 64106
816-221-4588 FAX 816-220-0856
Counsel for Plaintiff Clayton

S. Paige Canfield
3889 Juniata
St. Louis, Missouri 63116
314-664-7635
canfieldlaw@yahoo.com
Counsel for Plaintiffs Franklin
    and Nicklasson

Gary E. Brotherton
Legal Writes, LLC
601 West Nifong Blvd.
Building 1, Suite C
Columbia, Missouri 65203
573-875-1571 FAX 573-875-1572
Counsel for Plaintiff L. Taylor

Phillip M. Horwitz
640 Cepi, Suite A
Chesterfield, Missouri 63005
636-536-9644 FAX 636-536-7729
Counsel for Plaintiffs Christeson
    and Rousan

Kevin L. Schriener
Law & Schriener, LLC
141 N. Meramec Ave. # 314
Clayton, Missouri 63105-3705
314-480-3389 FAX 314-863-7096
Counsel for Plaintiff Storey

Jessica E. Sutton
Death Penalty Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri 64113
816-363-2795 FAX 816-363-2799
Counsel for Plaintiff Cole

Gino F. Battisti
Foley & Mansfield, PLLP
1001 Highlands Plaza Dr. W.
Suite 400
St. Louis, Missouri 63110
314-925-5700 FAX 314-925-5701
Counsel for Plaintiffs Williams
    and Worthington

Kent E. Gipson
121 E. Gregory Boulevard
Kansas City, Missouri 64114
816-363-4400
kent.gipson@kentgipsonlaw.com
Counsel for Plaintiffs Edwards,
Williams, and Worthington

Jeremy S. Weis
Gaddy Weis LLC
926 Cherry Street
Kansas City, Missouri 64106

20

816-221-8989 FAX 816-472-3516
Counsel for Plaintiff Edwards

<u>Certificate of Service</u>

I hereby certify a true and correct copy of the foregoing was forwarded for

transmission via Electronic Case Filing (ECF) this 10th day of December 2013, to the

offices of:

    Susan D. Boresi, Esq.
    Michael Joseph Spillane, Esq.
    Stephen David Hawke, Esq.
    Assistant Attorneys General
    P.O. Box 899
    Jefferson City, Missouri   65102

    <u>/s/ Kathryn B. Parish</u>
    Attorney for Plaintiffs Barnett,
        Middleton, Ringo and Zink