# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| DAVID ZINK, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 2:12-CV-4209-NKL |
| | ) |
| GEORGE A. LOMBARDI, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

Plaintiff Allen Nicklasson is one of twenty-one Plaintiffs challenging the constitutionality of the current execution protocol of the Missouri Department of Corrections. The Missouri Supreme Court ordered that Nicklasson be executed on December 11, 2013. Presently pending is Nicklasson's Motion for Stay of Execution. [Doc. 184]. A similar request for stay was recently litigated by Joseph Franklin and was rejected by the Eighth Circuit and United States Supreme Court. Based largely on that precedent, the Court finds it is not permitted to exercise its discretion to grant a stay here. In so ruling, the Court recognizes the Catch-22 created for Mr. Nicklasson. A stay of execution is not appropriate because Mr. Nicklasson has failed to show a demonstrated risk of harm and can only offer speculative allegations. *See*, *Brewer*, *Baze*, and *Whitiker*. But, Mr. Nicklasson has had no opportunity to show a demonstrated risk of harm because the protocol in this case has changed so recently and frequently and because the identity of the pharmacist is secret and the testing of the actual drug to be used has only been

1

revealed in the last few days and only updated a few hours ago.  Nonetheless, comparable information was presented in Mr. Franklin's case and the Eighth Circuit and the U.S. Supreme Court still found that Mr. Franklin was not entitled to a stay.  This Court is bound by that ruling.

I.  **Background**

In the last year, the Missouri Department of Corrections (Department) has issued multiple execution protocols.  Plaintiffs have challenged each protocol, claiming it was unconstitutional or in violation of state law.  They first filed suit in the Circuit Court of Cole County, Missouri seeking relief, but the Defendants removed the dispute to federal court.

The current protocol, which uses pentobarbital, was not issued until October 18, 2013. The Department first announced on October 22 that a compounding pharmacy would provide the pentobarbital.  The Department has kept secret the name of the pharmacy.  Only a few days before Mr. Nicklasson's scheduled execution, the Department revealed the actual contents of the drug to be used to kill Mr. Nicklasson, and only updated the report the few hours ago.  Because the Department has only recently changed its protocol and has kept secret the name of the pharmacy and the specific characteristics of the drug to be used, Plaintiffs have had no opportunity to conduct discovery to determine the risks of the new protocol..  However, in the little time Plaintiffs have had to research the Department's new protocol, their experts have opined that there are numerous risks associated with the use of secretly compounded pentobarbital, including risks of contamination and super- and sub-potentcy affecting the

2

effectiveness of the drug. This evidence was also presented in support of Mr. Franklin's Motion for a Stay of Execution, but the Eighth Circuit found that a stay was not permitted, citing to *Brewer v. Landrigan*, 131 S.Ct. 445 (2010), *Baze v. Rees*, 553 U.S. 35, 47-48 (2008), and *Whitaker v. Livingston*, 732 F.3d 465, 468-69 (5th Cir. 2013) – all cases emphasizing that speculation alone as to whether a drug will cause pain and suffering is insufficient to prove use of the drug will cause needless suffering.

In the early morning hours of November 20, Mr. Franklin filed a renewed motion for stay of execution with this Court. [Doc. 167]. Before the Court could respond to Mr. Franklin's renewed motion, Franklin was executed, and his renewed motion was denied as moot. [Doc. 170]. In doing so, Defendants violated their own procedures which requires a prisoner to remain in their cell until all active legal requests for stays have been resolved.

**II. Jurisdiction**

Defendants reassert that this Court lacks jurisdiction because Defendants' changed their protocol making all of Mr. Nicklasson's claims in his original lawsuit moot. Defendants further contend Mr. Nicklasson's amended complaint was filed only after the case became moot, and therefore, the amendment could not vest the Court with jurisdiction.

However, this Court has already ruled it retains jurisdiction under Article III. *See* [Doc. 163, pp. 2-5]; [Doc. 181]. More importantly, Defendants presented jurisdictional arguments to the Eighth Circuit in their appeal of the Franklin stay order, and the Eighth

Circuit vacated the stay on the merits, not on the basis that this Court lacked jurisdiction to issue the stay in the first place.

### III. Discussion

Mr. Nicklasson contends a stay is appropriate because the Department's protocol violates the Eighth Amendment's prohibition on cruel and unusual punishment, ex post facto laws, state and federal pharmacy and drug laws, and the Equal Protection Clause of the United States Constitution.

An inmate seeking time to challenge the manner in which the State plans to execute him must show a "significant possibility of success on the merits." *Hill v. McDonough*, 547 U.S. 573, 584 (2004); *Nooner v. Norris*, 491 F.3d 804, 808 (8th Cir. 2007). The United States Supreme Court has made it clear that a stay of execution may not be granted on grounds such as those alleged here unless the condemned prisoner establishes that the protocol at issue creates a demonstrated risk of severe pain. *Baze*, 553 U.S. 35, 61 (2008). Speculation as to the risks of a particular drug is not enough. *Landrigan*, 131 S.Ct. at 445 (holding that "speculation cannot substitute for evidence that the use of the drug is *sure or very likely* to cause serious illness and needless suffering."). This is the case even when a prisoner claims he cannot establish a "demonstrated risk" because he has not had time to do so. *See Whitaker*, 732 F.3d at 468 ("It is indeed not unreasonable to assume that if a prisoner has the right to be free from a demonstrated risk of severe pain when compared to a known and available alternative, he ought to have the opportunity to prove the risk of pain and the availability of alternatives. Even so, plaintiffs must point to *some* likelihood that such pain will be severe . . . . It is

4

unacceptable to claim that some unspecified amount of time is required, just in case they might be able to show that there might be some risk of potentially excessive pain."). *Id.* In other words, "unknown unknowns" about the dangerous propensity of a drug used for lethal injection "are insufficient to demonstrate a risk of harm; something more is needed to meet the difficult preliminary-injunction standard." *Id.* In vacating this Court's stay in the Franklin case, the Eighth Circuit effectively ruled that the testimony of Franklin's two experts was insufficient because it was too speculative, even though those experts opined that the use of a secret compounding pharmacy that used grey market drugs posed a significant risk of severe pain,

### A. Eighth Amendment Cruel and Unusual Punishment Claim

To the extent Mr. Nicklasson reasserts Mr. Franklin's claim that the Department's protocol creates a substantial risk of harm in violation of the Eighth Amendment, this claim must fail. This Court granted Mr. Franklin's motion for stay of execution on Eighth Amendment grounds. The Eighth Circuit, in vacating the stay, held Mr. "Franklin [had] not met his burden of presenting sufficient evidence to warrant interference with the judgment of the Missouri courts nor [had] Franklin proffered sufficient evidence to show a likelihood of success on the merits to support a stay of execution." Eighth Circuit Case No. 13-3505; [Doc. 168]. The Supreme Court of the United States also summarily denied Franklin's petition for a stay of execution. [Doc. 171]. Mr. Nicklasson has presented no new, material evidence in support of his motion for stay. He has presented evidence that the pentobarbital to be used is expired, and that it therefore could be contaminate and, if so, could cause severe pain, he has not shown a demonstrated risk of severe pain from its

5

use. This evidence is similar to the evidence that was rejected by the Eighth Circuit and the U.S. Supreme Court as speculative. Accordingly, this Court must deny the stay even though Plaintiffs have been given no meaningful opportunity to meet the high burden of proof required by law.

**B. Ex Post Facto Claim**

Mr. Nicklasson next argues the Department's new protocol increases his punishment in violation of ex post facto laws. Article I, section 10, clause 1 of the United States Constitution prohibits states from enacting ex post facto laws. *Garner v. Jones*, 529 U.S. 244, 249 (2000). "One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. *Id.* To succeed on an ex post facto claim, a prisoner must show "that a law creates 'a significant risk' of increased punishment. *Williams v. Hobbs*, 658 F.3d 842, 848 (8th Cir. 2011) (citing *Garner*, 529 U.S. at 255). "Such a showing must be more than a speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes." *Id.*

While the Court recognizes that the standard for an Eighth Amendment claim and an ex post facto claim are not exactly the same, the quality of Mr. Nicklasson's expert evidence is the same as the expert evidence presented in Mr. Franklin's case. And the Eighth Circuit, by implication, found that evidence to be too speculative to satisfy the high standard for granting a stay of an execution. There is no logical reason to think Mr. Nicklasson's evidence is insufficient to establish a significant likelihood of success on an 8th Amendment claim but is sufficiently concrete to show a likelihood of success on an ex

6

post facto claim. Therefore, he has failed to satisfy the evidentiary standards required by the higher courts.

### C. State and Federal Pharmacy and Drug Law Claims

Mr. Nicklasson next claims the Department's protocol violates federal and state law in three ways. First, Mr. Nicklasson contend the protocol violates 20 C.S.R. § 2220-2.400(9), which prohibits the compounding of a drug that is a copy of a commercially available, FDA-approved drug or a drug commercially available in the marketplace. Second, Mr. Nicklasson contends the protocol violates the federal Food, Drug, and Cosmetic Act (FDAC) because it calls for a prescribing doctor to issue a prescription for the lethal drug where there is no legitimate medical purpose for that drug. Third, Mr. Nicklasson contends the protocol violates Missouri's death penalty statute, § 546.720.2, by designating the pharmacist providing the drug as an "Execution Team Member." By so designating the pharmacist, the Department seeks to shield the identity of the pharmacist, whose identity would otherwise be public pursuant to Missouri's Sunshine law.

All but Mr. Nicklasson's FDAC claims are state law claims. As such, the Supreme Court of Missouri is in the best position to decide the merits of those claims. These claims were presented to the Supreme Court of Missouri in Mr. Franklin's motion for stay of execution, but the Supreme Court of Missouri denied Mr. Franklin's stay. Though this Court is unsure as to whether Mr. Franklin's claims were considered on the merits, one would expect that in the context of a situation as grave as the death penalty, if

7

a valid state law claim existed, the Supreme Court of Missouri would have considered it before denying Mr. Franklin's motion.

Furthermore, this Court independently finds that it is unlikely that Mr. Nicklasson will succeed on the merits of his state law claims. It appears highly likely that Mr. Nicklasson will be able to show a violation of 20 C.S.R. § 2220-2.400(9) which prohibits compounding drugs which are commercially available. Pentobarbital is a commercially available drug under the name of Nembutal, therefore compounding that drug violates the law. However, Mr. Nicklasson has provided no evidence that Defendants have violated this regulation. It is the pharmacist who violated the law by compounding the pentobarbital. Defendants merely acquired the illegally compounded pentobarbital. Further, even if the pharmacist could be named as a party at this point, Mr. Nicklasson has failed to show a substantial likelihood of success on this claim. Mr. Nicklasson must show a violation of law which *causes* him injury. He cannot do this because the Eighth Circuit has effectively held that his evidence of risk of harm is speculative and insufficient to satisfy the high standard required to stay an execution.

Likewise, though Mr. Nicklasson argues that the secrecy surrounding the pharmacist, the prescribing physician, and the testing laboratory, is a violation of Missouri's death penalty statute, Mr. Nicklasson's proof of harm from these violations is only speculative, as found by the higher courts. Therefore, they are not grounds for a stay even if he is able to show that the Department is violating state law in the manner alleged.

Mr. Nicklasson also claims the Defendants' protocol violates the FDCA and CSA because there is no legitimate medical purpose for prescribing pentobarbital under these circumstances. As prescribed, the pentobarbital only kills. Federal law does not permit a controlled substance such as this to be prescribed, unless it is for a legitimate medical purpose. Section 21 C.F.R. § 1306.04(a).

Defendants correctly argue that neither the FDCA nor CSA provides a private right of action to enforce the FDCA and the CSA. Mr. Nicklasson concedes this point, and claims he is not seeking to enforce the FDCA or CSA, but rather, he is using a violation of these federal regulations as an element of a state law claim under Missouri's Administrative Procedure Act. Missouri's APA allows an aggrieved person to challenge an agency's decision on the grounds that the decision is contrary to either federal or state law. Mo. Rev. Stat. § 536.140.2. But, Mr. Nicklasson has failed to establish a likelihood that the "medically legitimate purpose" requirement of the FDAC and CSA was intended to control a state's interest in carrying out executions by the administration of lethal drugs. *See Oregon v. Ashcroft*, 368 F.3d 1118, 1125 (9th Cir. 2004) (remarking that "[u]nless Congress' authorization is unmistakably clear, the Attorney General may not exercise control over an area of law traditionally reserved for state authority, such as regulation of medical care" and holding Congress provided no indication that it intended to authorize the Attorney General to regulate the practice of physician assisted suicide), *aff'd* 126 S.Ct. 904 (2006). Accordingly, Mr. Nicklasson has failed to establish a substantial likelihood that he will prevail on his Missouri Administrative Procedure Act claim.

9

### D. Equal Protection Clause Claim

Mr. Nicklasson next claims Defendants violated the Equal Protection Clause by deviating from the "Chronological Sequence of Events" portion of the protocol. Mr. Nicklasson argues Defendants' decision to execute Mr. Franklin while Plaintiffs' Renewed Motion for Stay was still pending before this Court was a violation of the execution protocol, which prohibits moving a prisoner from his holding cell while there is pending legal activity to halt an execution. Mr. Nicklasson argues this violation demonstrates Defendants' disregard of their own protocol and creates the risk that "otherwise similarly situated prisoners will [not] be executed in the same manner" in violation of the Equal Protection Clause. The Court finds this argument unpersuasive. Because Defendants have violated a portion of their protocol on one occasion does not mean Defendants are likely to do it again. Mr. Nicklasson has provided nothing more than speculation that at some point in the future, a condemned prisoner may be executed in a manner different than another prisoner. Without more, proof of Defendants' one time violation is not sufficient to create a significant likelihood of success on his equal protection claim.

Because Mr. Nicklasson has failed to show a likelihood of success on the merits, the Court need not discuss the relative harm to the parties.

### IV. Conclusion

Mr. Nicklasson has failed to show a significant likelihood of success on the merits of his claims sufficient to warrant a stay of execution. Accordingly, Mr. Nicklasson's Motion for Stay of Execution is DENIED.

s/Nanette K. Laughrey
                                                                    NANETTE K. LAUGHREY
                                                                    United States District Judge

Dated: December 11, 2013
Jefferson City, Missouri