|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) | No. 13-3699 |
|  | ) |  |
| In re | ) | District Court No. |
| GEORGE LOMBARDI, et al., | ) | No. 2:12-CV-4209 NKL |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**REPLY SUGGESTIONS IN SUPPORT OF PETITION FOR IMMEDIATE WRIT OF PROHIBITION OR MANDAMUS**

**I.      The inmates' statutory arguments are without merit.**

The inmates make two statutory arguments asserting why they do not believe the state secrets privilege applies in this case. First, the inmates allege the common law state secrets privilege should not apply, because the Director of the Missouri Department of Corrections defined Missouri's execution team in a manner the inmates believe is broader than is contemplated by § 546.720 Rev. Stat. Mo., the statute that directs the Director to select an execution team (Suggestions in Opposition at 2-3). But the inmates cannot explain why the physician and pharmacist are not integral parts of the execution team. Second, the inmates allege asserting the state secrets privilege is inconsistent

with § 610.11.1 Rev. Stat. Mo. a section of Missouri's Sunshine Law that state's public policy favors openness of meetings, actions, votes and records of public bodies unless otherwise provided by law (Suggestions in Opposition at 3-4). But the inmates ignore the fact that what they have persuaded the district court to order be disclosed is properly closed under not just § 546.720 Re. Stat. Mo., but under other parts of the Sunshine Law.

**A.   The language of § 546.720 Rev. Stat. Mo. does not defeat the claim of privilege.**

The inmates read the language of the statute, which defines the execution team as persons who provide direct support for the administration of lethal chemicals, to exclude the physician who prescribes the chemicals, and the pharmacist who compounds the chemicals. It is difficult to think of persons who more directly support the administration of the chemicals. The Missouri General Assembly requires that the Director select the members of the execution team and that the identities of those individuals remain secret. (Document 189-7) Section 546.720.2, Mo. Rev. Stat. Cum. Supp. 2012. The legislature also proscribes discovery of material that could reveal the identities of that

execution team. (Document 189-7) Section 546.720.2, Mo. Rev. Stat. Cum. Supp. 2012. The legislature determined this privacy interest was so compelling that it created a private cause of action for execution team members whose identities have been made public. (Document 189-7) Section 546.720.3, Mo. Rev. Stat. Cum. Supp. 2012. The legislature authorized both actual and punitive damages. *Id*. When considered together, these provisions show a clear intent by the legislature to protect the identities of the execution team in the broadest possible terms. Certainly the physician and the pharmacist fall within those broad terms.

More basically, the inmates' argument fails because the root of the state secrets privilege is in the invocation of the privilege by the Director of the Department of Corrections and his supporting affidavit, rather than in the statute alone. The United States Supreme Court outlined the method by which the government could invoke the state secret privilege in *United States v. Reynolds*, 345 U.S. 1, 5 (1953). To invoke the privilege the government must assert it. *Id*. The head of the department with control over the matter must invoke the privilege after personal consideration. *Id*. The court must then determine whether the

3

privilege is appropriate without forcing disclosure of the thing the privilege has been invoked to protect. *Id.*

The Director of the Missouri Department of Corrections explicitly declared the identity of the execution team members, and the identity of the laboratory that tests the chemical, to be state secrets and explicitly invoked the federal common law privilege protecting state secrets from discovery (Document 189-1). The Director declared that disclosure of the identities of members of the execution team or the testing laboratory would prevent the Department of Corrections from obtaining and testing the chemicals necessary for the Department to carry out its legal obligations, and would expose persons that assist the state to harassment, intimidation, and harm (Document 189 at 2-3). "Running a prison is an inordinately difficult undertaking that requires expertise, planning and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Because prison administration is committed to those branches, separation-of-powers principles counsel a policy of judicial restraint, and federal

4

Case 2:12-cv-04209-BP   Document 219   Filed 12/18/13   Page 4 of 13

courts should give even more deference when a state penal system is involved. *Id.* at 85.

Federal courts have upheld this privilege when invoked by a state's department of corrections. *Taylor v. Nix*, 451 F.Supp.2d 1351 (N.D.Ga. 2006); *Pack v. Beyer*, 157 F.R.D. 226 (D.N.J. 1994). In *Taylor*, the plaintiff sought documents maintained by the Georgia Board of Probation and Parole. *Taylor v. Nix*, 451 F.Supp.2d at 1352. Defendants asserted the state secrets privilege and cited a Georgia law that prohibited disclosure of information received by the Board in performing its duty. *Id.* The federal court found that the state legislature had expressly conferred privileged status on the information maintained by the Board, and that the state had a compelling interest in preserving the information under the state secrets privilege. *Id.* at 1354.

In a case that did not involve *statutory* confidentiality, inmates sued New Jersey prison officials who segregated inmates from other prisoners due to their affiliation with a dangerous criminal organization. *Pack v. Beyer*, 157 F.R.D. at 226. Inmates sought documents about their segregation from the general population, and

prison officials asserted the state secrets privilege to protect the documents. *Id*. The federal court balanced the need of the inmates to prove their case against the need for security of information and danger to the public interest. *Id*. at 232.

One of the Director's concerns in this case is for the personal and professional safety and well-being of the members of the execution team who provide direct support by prescribing, and compounding lethal chemicals and testing those chemicals (Document 189-1 at 3). Additionally, the Director notes that identifying these members of the execution team would prevent the Department from acquiring and testing proper chemicals, and it would prevent the Department from employing and contracting with individuals needed to perform the Department's lawful statutory obligations. (Document 189-1 at 4). Moreover, the Director states that revealing the identities of execution team members jeopardizes public safety and the security of the correctional institutions. (Document 189-1 at 4). The Director cites to other state's departments of corrections problems in carrying out their lawful obligations after chemical manufacturers and suppliers were harassed and intimidated, as support for this proposition. (Document

189-1 at 2). The state secrets privilege applies here, as it did in *Taylor* and *Pack*.

**B.  The inmates' argument about Missouri's Sunshine Law does not defeat the claim of privilege.**

The inmates argue that a statutory provision about providing access to meetings, records, deliberations and votes of public bodies through Missouri's Sunshine Law defeats the Director's claim of privilege (Suggestions in Opposition at 3-4). The inmates are mixing apples and oranges. If the inmates could have obtained the information they seek through Missouri Sunshine Law requests, or legal actions enforcing such requests, they presumably would have done so by now. Additionally, § 610.21(14) defines records protected from disclosure by law as closed records under the Missouri Sunshine Law, and § 217.075 (3) Rev. Stat. Mo. makes documents relating to institutional security closed records under the sunshine law (See Document 189-1 at 4, affidavit stating disclosing this information would jeopardize institutional security and safety).

## II. The inmates' argument concerning lack of irreparable harm from disclosure is without merit.

The inmates allege no irreparable harm will result from the disclosure of the information they seek (Suggestions in Opposition at 4-6). The Director's affidavit, which states that disclosure could interfere with or prevent lawful executions, result in potential harm, harassment, or intimidation to execution team members, and impact public safety and institutional security, refutes the inmates' claim (Document 189-1 at 1-4). The Director's opinion on this matter is entitled to great deference. *Turner*, 482 U.S. at 84-85.

## III. The inmates do not suffer unfair prejudice.

The inmates allege that this Court should not enforce the privilege because they would like information on the pharmacy and laboratory to use in support of their attacks on their own executions (Suggestions in Opposition at 6-9). The inmates' principal claim is that their executions with compounded pentobarbital will be cruel and unusual punishment. To succeed they must show the drug used is "*sure or very likely* to cause serious illness and needless suffering." *Brewer v. Landrigan*, 131 S.Ct. 445 (2010) (quoting *Baze v. Rees*, 553 U.S. 35, 350 (2008) emphasis in

*Brewer*). In light of the fact that Missouri carried out two executions in three weeks, without even the allegation that the executions were anything but rapid and painless, the plaintiffs cannot meet this standard. This would not change if the plaintiffs were to root around in the pasts of the physician, the pharmacist, and the laboratory in hopes of finding something with which to attack them.

The district court noted the plaintiffs' other claims raised in Plaintiff Nicklasson's motion for execution lack legal merit, without reference to what could allegedly be found by digging into the background of the physician, pharmacist, and laboratory (Document 196 at 7-10). This Court would not irreparably harm the plaintiffs by enforcing the state secrets privilege in this case.

## IV. Enforcing the privilege is in the public interest.

The inmates argue that this Court should not enforce the privilege because of the public policy in favor of open government, and because enforcing the policy through a writ would allegedly disrupt their underlying lawsuit in violation of public policy (Suggestions in Opposition at 10). Both these arguments are without merit. Unless the plaintiffs plan to publish the discovery they allege they intend to keep

9
Case 2:12-cv-04209-BP   Document 219   Filed 12/18/13   Page 9 of 13

confidential, an alleged policy in favor of revealing the information to the public is out of place as a reason for disclosing the material to the plaintiffs. The argument that granting a writ is by its nature contrary to public policy also fails. There is no public policy against granting a writ where appropriate, as in this case, which raises important issues of national significance.

The real public policy in this case is "the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 583 (2006). It would violate that policy to allow the inmates to sweep aside the state secrets privilege in a manner that has the potential to grind the process of lawful executions to a halt by generating fear in those who have chosen to assist the State in this lawful activity.

## V. Conclusion

This Court should grant the writ of prohibition or mandamus preventing enforcement of the orders in documents 203, 204, and 205.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

/s/Michael J. Spillane

Michael Spillane
Assistant Attorney General
Missouri Bar No. 40704
P.O. Box 899
Jefferson City, MO 65102
Telephone: (573)751-7406
Facsimile: (573)751-2096

**CERTIFICATE OF SERVICE**
I hereby certify that a true and correct copy of the foregoing was electronically filed on December 17, 2013. This petition will be served on the district by electronic filing. This Court's electronic filing system should serve counsel for the plaintiffs, who are electronic filers. These include:

Elizabeth Unger Carlyle
PO Box 30418
Kansas City, MO 64112

John William Simon
7201 Delmar Blvd, Ste 201
St. Louis, MO 63130

Richard H. Sindel
Kathryn Parish
8000 Maryland, Ste 350
St. Louis, MO 63105

Joseph Luby
6155 Oak Street, Ste C
Kansas City, MO 64113

Gino F. Battisti
1001 Highlands Plaza Drive West, Ste 400
St. Louis, MO 63110

Kent E. Gipson
121 East Gregory Blvd
Kansas City, MO 64114

Gary E. Brotherton
601 W. Nifong Blvd
Building 1, Suite C
Columbia, MO 65203

Jennifer Herndon
224 Hwy 67 North #122
Florissant, MO 63031

Charles M. Rogers
1000 Walnut Street, Ste 1000
Kansas City, MO 64106

Cheryl Ann Pilate
926 Cherry Street
Kansas City, MO 64106

Rebecca L. Kurz
PO Box 9300
Mission, KS 66201

Eric W. Butts
Michael J. Gorla
555 Washington Ave, Ste 600
St. Louis, MO  63101

S. Paige Canfield
3889 Juniata Street
St. Louis, MO 63116

Lowell D. Pearson
235 East High Street
PO Box 1251
Jefferson City, MO 65102

Susan M. Hunt
1600 Genessee, Ste 806
Kansas City, MO  64106

/s/Michael J. Spillane

Michael J. Spillane
Assistant Attorney General