IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DAVID ZINK, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 12-04209-CV-C-BP |
| ) | |
| GEORGE A. LOMBARDI, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter comes before the Court on Plaintiff Michael Taylor's Motion for Stay of Execution Pending Ruling on Certiorari Petition, (Doc. 343), and Motion for Stay of Execution Based on No Lawful Means of Proceeding, (Doc. 353). Taylor is one of 18 death row inmates in this case challenging the constitutionality of the execution protocol issued by the Missouri Department of Corrections. On January 24, 2014, the Missouri Supreme Court ordered that Taylor be executed on February 26, 2014. For the reasons below, the Motions are **DENIED**.

**I.  Background**

The background of this case has been outlined in the Court's previous Orders on stays of executions, (*see* Docs. 163, 196, 308), and only the information relevant to Taylor's pending motions is presented here.

On January 24, 2013, the Eighth Circuit issued an opinion granting Defendants' petition for writ of mandamus and vacating the Court's Orders requiring disclosure of the identities of: (1) the physician who prescribes the chemical used in Missouri executions; (2) the pharmacist who compounds the chemical; and (3) the laboratory that tests the chemical for potency, purity, and sterility. *In re George A. Lombardi*, No. 13-3699, 2014 WL 288937 (8th Cir. Jan. 24, 2014);

(*see also* Docs. 203; 204; 205.) Relying on the Supreme Court's decision in *Baze v. Rees*, 553 U.S. 35 (2008), the Eighth Circuit found Plaintiffs failed to state a claim under the Eighth Amendment because they had not pled a known and available alternative to the current execution method; and therefore, it was a "clear abuse of discretion for the district court to allow the claim to proceed and to order on that basis discovery of sensitive information[.]" *Id.* at *7. Similarly, the Eighth Circuit found that Plaintiffs failed to properly plead their Ex Post Facto claims, as the punishment has remained the same and Plaintiffs had fair notice of it. *Id.* The Eighth Circuit also concluded that the identities of the physician, pharmacist, and laboratory "are plainly not relevant" to Plaintiffs' remaining claims, as "the merits of these claims do not depend on [those identities]." *Id.* at *8. Plaintiffs' petition for a rehearing of this ruling was denied. (Doc. 311.)

Plaintiffs have now filed a petition for writ of certiorari in the United States Supreme Court, challenging the Eighth Circuit's ruling in *In re Lombardi*. On February 4, 2014, the Supreme Court requested further response from Plaintiffs on that petition. Taylor moves this Court to stay his execution until the Supreme Court rules on the pending petition. This petition is the basis for Taylor's first Motion for Stay, (Doc. 343).

Relying on Mo. Rev. Stat. § 546.720,[1] neither the State nor Defendants have disclosed the identity of the pharmacy that provides drugs used in Missouri executions. However, Plaintiffs believe that their research and media reports establish that the Apothecary Shoppe, LLC in Oklahoma is the pharmacy that provides pentobarbital for use in Missouri executions. Based on that belief, Taylor filed an action in the Northern District of Oklahoma on February 11, 2014, seeking an injunction against the Apothecary Shoppe, LLC. The Oklahoma court entered

---

[1] Mo. Rev. Stat. § 546.720 addresses the death penalty, manner of executions, and members of the execution team. The statute provides that the identities of members of the execution team shall be kept confidential. Currently, the execution team includes individuals who prescribe, compound, prepare, or otherwise supply the chemicals for use in the lethal injection procedure, such as the pharmacy.

2

a temporary restraining order enjoining the pharmacy from issuing compounded pentobarbital to the Missouri Department of Corrections for use in Taylor's execution. *See Taylor v. Apothecary Shoppe, LLC*, No. 4:14-cv-063-TCK-TLW, Doc. 8, (N.D. Okla. Feb. 12, 2014). On February 17, Taylor moved to dissolve the injunction and dismiss the case because the parties had reached a settlement. Though there are no publicly filed court documents explaining or setting forth the terms of the settlement, media outlets reported the suit was dismissed because the Apothecary Shoppe, LLC agreed not to provide Missouri with drugs intended for use in Taylor's execution. *See* Tim Talley, *Oklahoma Pharmacy Won't Provide Drug for Missouri Execution*, Kansas City Star, Feb. 17, 2014. The case was closed on February 18.

On February 19, Defendants stated that Missouri had arranged a supply of pentobarbital from a pharmacy other than Apothecary Shoppe, LLC. (Doc. 360, p. 2.) The identity of this pharmacy is unknown to Plaintiffs. (*Id.*) The State's use of a different pharmacy to obtain pentobarbital for Taylor's execution forms the basis for Taylor's second Motion for Stay, (Doc. 353).

## II. Taylor's First Motion for Stay of Execution

In order to obtain a stay of execution based on a pending petition for writ of certiorari, there must be: (1) a reasonable probability that four members of the Supreme Court would consider the underlying issue sufficiently meritorious to grant certiorari; (2) a significant possibility of reversal of the lower court's decision; and (3) a likelihood that irreparable harm will result absent a stay. *Moore v. Texas*, 535 U.S. 1110, 1112 (2002) (citing *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983)).

### A. Reasonable Probability Certiorari Will Be Granted

3

Here, Taylor contends that the Supreme Court's request for a "further response" creates a reasonable probability that certiorari will be granted. *See Zink v. Lombardi*, No. 13-8435 (Sup. Ct. filed Jan. 28, 2014). Plaintiffs state that when a call for response is issued, "it is a strong sign that the Court is interested in hearing argument in the case." (Doc. 343, p. 5 (citing D. Thompson, *et al.*, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures*, 16 Geo. Mason L. Rev. 237, 250.) However, only a single Justice's vote is required for a request for further response to be issued. D. Thompson, *et al.*, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures*, 16 Geo. Mason L. Rev. 237, 248-49. Even then, after requesting a further response, the probability that the Supreme Court would grant certiorari in a case such as Plaintiffs' is only 8.6%. *Id.* at 250. A less-than-ten-percent chance is not a reasonable probability that Plaintiffs' petition for writ of certiorari will be granted. Additionally, Plaintiff Smulls made the same arguments regarding the issues in *In re Lombardi* in his motion to stay, and the Supreme Court denied that motion. Taylor's argument thus fails.

Therefore, Taylor has failed to show there is a reasonable probability that the Supreme Court will grant certiorari in Plaintiffs' case. Because Taylor has failed to show a reasonable probability that certiorari will be granted, the Court need not consider the remaining factors for issuing a stay of execution pending a petition for writ of certiorari.

### III.     Taylor's Second Motion for Stay of Execution

An inmate challenging the manner in which the State plans to execute him must show a "significant possibility of success on the merits." *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Nooner v. Norris*, 491 F.3d 804, 808 (8th Cir. 2007). "[B]efore granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the

4

parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004); *Nooner*, 491 F.3d at 808.

### A. Likelihood of Success on the Merits

Taylor's second motion argues that Defendants' use of an unknown pharmacy to provide pentobarbital is a change in the execution protocol that violates Taylor's right to due process. He contends that a stay is reasonable in order to conduct an inquiry into the practices of the pharmacy and obtain more complete information regarding the pentobarbital prepared by this pharmacy. However, Taylor cannot show a likelihood of success on the merits of this issue.

First, Taylor has not set forth any binding legal authority to suggest that, even if there was a change to the protocol, death row inmates have a due process right to review an execution protocol or be notified of a change to it. In fact, two circuits have held just the opposite. *See Beaty v. Brewer*, 791 F. Supp. 2d 678 (D. Ariz. May 25, 2011) *aff'd*, *Beaty v. Brewer*, 649 F.3d 1071 (9th Cir. 2011); *Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013).

In *Beaty v. Brewer*, the District of Arizona concluded that the plaintiff was not entitled to injunctive relief when the State changed the drug to be used in his execution less than 24 hours before he was set to be executed because he cited "no authority to support his allegations that the Due Process Clause provides a right to review protocol changes and attempt to challenge them." 791 F. Supp. 2d at 685-86 (citing *Clemons v. Crawford*, 585 F.3d 1119, 1129 n.9 (8th Cir. 2009) (noting the lack of authority indicating due process right to probe into the backgrounds of execution personnel) and *Powell v. Thomas*, 784 F. Supp. 2d 1270, 1282-83 (M.D. Ala. May 16, 2011) (finding no authority for the proposition that condemned inmate had a due process right to receive notice and an opportunity to be heard regarding substitution of pentobarbital)). The district court's ruling was affirmed by the Ninth Circuit, for the reasons articulated by the district

5

court. *See Beaty*, 649 F.3d at 1072. Similarly, in *Sepulvado v. Jindal*,[2] the Fifth Circuit concluded that the plaintiff was not entitled to injunctive relief when the State withheld details of its execution protocol. 729 F.3d 413. The court relied heavily on the decision in *Beaty*, and concluded that the plaintiff had presented no legal authority and "failed to identify an enforceable right that a preliminary injunction might safeguard." *Id.* at 420. Thus, the plaintiff did not show a likelihood of success on the merits.

Second, Taylor's due process argument relies on several cases that are distinguishable from his own. In *Arthur v. Thomas*, the execution protocol was changed, substituting pentobarbital for sodium thiopental. 674 F.3d 1257 (11th Cir. 2012). There, the Eleventh Circuit determined that the substitution of pentobarbital constituted a "significant change" in the protocol, and held that the plaintiff's Eighth Amendment claim could survive a *motion to dismiss*. *Id.* at 1262. The *Arthur* case did not involve a last-minute motion to stay an execution. Similarly, in *Morales v. Cate*, a new execution protocol instituted different regulations than its predecessor, which the court found created a "demonstrated risk of severe pain" for an Eighth Amendment claim. 2010 WL 3835655, *3 (N.D. Cal. Sept. 28, 2010). In *Moeller v. Weber*, the court allowed additional discovery because of the changes in the state's lethal injection protocol, but suggested that such a request would not be warranted in a "last-minute request to stay [the plaintiff's] execution." 2011 WL 288516, *2 (D.S.D. Jan. 25, 2011). None of these cases addressed a death row inmate's due process rights to review an execution protocol. Further, the remaining cases upon which Taylor relies are distinguishable, as they pertain to inadequate training of execution team personnel and failures to follow execution protocols. *Reynolds v. Strickland*, 583 F.3d 956 (6th Cir. 2009); *Cooey v. Kasich*, 801 F. Supp. 2d 623 (S.D. Ohio

---

[2] Plaintiffs note that a petition for writ of certiorari in the Supreme Court is pending in this case. However, as previously discussed, the probability that the Supreme Court will grant certiorari is low. Moreover, a pending petition is not grounds for this Court to disregard the holding in this case.

2011); *Chester v. Beard*, 657 F. Supp. 2d 534 (M.D. Pa. 2008); *Thornson v. Epps*, 2009 WL 1766806 (N.D. Miss. 2009).

Additionally, unlike the cases upon which Taylor relies, Missouri's execution protocol has remained unchanged since November 2013. Although Taylor asserts that changing the pharmacy changes the protocol, the portion of the protocol he relies upon simply defines the execution team to consist of "anyone selected by the department director who provides direct support for the administration of lethal chemicals, including individuals who prescribe, compound, prepare, or otherwise supply the chemicals for use in the lethal injection procedure." (Doc. 338-2.) By selecting an unknown pharmacy, Defendants may have changed the members of the execution team, but they have not altered the protocol in any way.

Moreover, the circumstances with respect to the identity of the pharmacy are now as they were when Plaintiff Franklin filed his motion for stay. When the Court entered the Order granting Franklin's motion for stay of execution, (Doc. 163), the compounding pharmacy was unknown. Based on the evidence before it, the Court concluded Franklin had shown a substantial risk that compounded pentobarbital from an unknown pharmacy would inflict unnecessary pain and, thus, he had shown a likelihood of success on the merits of his Eighth Amendment claim. (Doc. 163, pp. 5-12.) The Eighth Circuit reversed that decision, stating "Franklin has not met his burden of presenting sufficient evidence to warrant interference with the judgment of the Missouri courts nor has Franklin proffered sufficient evidence to show a likelihood of success on the merits to support a stay of execution." *Zink v. Lombardi*, No. 13-3505, Order (8th Cir. Nov. 19, 2013), vacating Doc. 163 (citing *Brewer v. Landrigan*, 131 S. Ct. 445 (2010), *Baze v. Rees*, 553 U.S. 35, 47-48 (2008), and *Whitaker v. Livingston*, 732 F.3d 465, 468-69 (5th Cir. 2013) (per curiam)). Plaintiffs set forth more evidence in Plaintiffs

7

Nicklasson's and Smulls' motions for stay, including the purported identity of the pharmacy in Smulls' case, but this Court, the Eighth Circuit, and the Supreme Court concluded stays were not warranted. (*See* Docs. 184, 196, 201, 285, 301, 308, 319, 336.) Here, the pharmacy is yet again unknown, as in Franklin's case. Additionally, Plaintiffs have not presented new evidence to the Court. Thus, Taylor's motions do not warrant a different ruling than in Franklin's, Nicklasson's, or Smulls' cases.

Therefore, Taylor cannot show a likelihood of success on the merits. Because Taylor has not shown a likelihood of success on the merits, the Court need not consider the remaining factors for issuing a stay of execution.

### B. Conclusion

Accordingly, Taylor's Motions for Stay of Execution, (Docs. 343 and 353), are **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE: February 24, 2014